IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES,<br><br>2138 Rayburn House Office Building<br>Washington, D.C. 20515,<br><br>    *Plaintiff*,<br><br>  v.<br><br>ELVIS CHAN, in his official capacity as Assistant Special Agent of the Federal Bureau of Investigation,<br><br>450 Golden Gate Ave.<br>San Francisco, CA 94102,<br><br>    *Defendant*. | Case No. 1:24-cv-344 |

# Exhibit B

JIM JORDAN, Ohio
CHAIRMAN

JERROLD NADLER, New York
RANKING MEMBER

ONE HUNDRED EIGHTEENTH CONGRESS

# Congress of the United States
## House of Representatives
COMMITTEE ON THE JUDICIARY
2138 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6216
(202) 225-6906
judiciary.house.gov

March 10, 2023

Dr. Marc Tessier-Lavigne
President
Stanford University
450 Serra Mall
Stanford, CA 94305

Dear Dr. Tessier-Lavigne:

      The Committee on the Judiciary is conducting oversight of how and the extent to which the Executive Branch has coerced and colluded with companies and other intermediaries to censor speech.[1] Certain third parties, including organizations like yours, may have played a role in this censorship regime by advising on so-called "misinformation" and other types of content—sometimes with direct or indirect support or approval from the federal government.[2] Whether directly or indirectly, a government-approved or -facilitated censorship regime is a grave threat to the First Amendment and American civil liberties. Accordingly, as part of the Committee's constitutional oversight obligations, we write to request relevant information and documents.

      We are interested in understanding the interactions between the Stanford Internet Observatory ("SIO") and the federal government. SIO describes itself as "a cross-disciplinary program of research, teaching and policy engagement for the study of abuse in current information technologies, with a focus on social media."[3] In addition to being one of the "core conveners" of the Election Integrity Partnership ("EIP"),[4] SIO created another project aimed at "attempt[ing] to mimic the EIP for COVID."[5] From publicly available information, SIO and the

---

[1] *See* Ken Klippenstein & Lee Fang, *Truth Cops: Leaked Documents Outline DHS's Plans to Police Disinformation*, THE INTERCEPT (Oct. 31, 2022); Editorial Board, *The White House and Twitter Censorship*, WALL ST. J. (Aug. 12, 2022); Editorial Board, *How the Feds Coordinate With Facebook on Censorship*, WALL ST. J. (Sept. 9, 2022).
[2] *See, e.g.*, Gabe Kaminsky, *Disinformation Inc: State Department bankrolls group secretly blacklisting conservative media*, WASH. EXAMINER (Feb. 9, 2023); Matt Taibbi, @mtaibbi, *1.THREAD: Twitter Files #15 MOVE OVER, JAYSON BLAIR: TWITTER FILES EXPOSE NEXT GREAT MEDIA FRAUD*, TWITTER (Jan. 27, 2023, 12:49PM), https://twitter.com/mtaibbi/status/1619029772977455105.
[3] *About the Internet Observatory*, STANFORD INTERNET OBSERVATORY, https://cyber.fsi.stanford.edu/io/about (last visited Mar. 6, 2023).
[4] *The Election Integrity Partnership in 2022: Our Work Ahead*, ELECTION INTEGRITY PARTNERSHIP (July 31, 2022), https://www.eipartnership.net/blog/about-eip-2022.
[5] Scully Dep. at 134:11.

Dr. Tessier-Lavigne
March 10, 2023
Page 2

Virality Project appear to be deeply intertwined with government officials.[6] The entanglement of Executive Branch agencies, third-party organizations, and technology companies to moderate speech-related content online raises questions about the extent to which these actions affected the civil liberties of American citizens.

To assist the Committee in its oversight, we ask that you please provide the following documents and information:

1. All documents and communications, from January 1, 2015 to the present, between or among any employee, contractor, or agent of your organization and the Executive Branch of the United States Government referring or relating to the moderation, deletion, suppression, restriction, demonetization, or reduced circulation of content, or attribution of content to the source or participant in a foreign malign or state-sponsored influence operation.

2. All documents and communications, from January 1, 2015 to the present, between or among any employee, contractor, or agent of your organization and any technology company, including social media companies, referring or relating to the moderation, deletion, suppression, restriction, demonetization, or reduced circulation of content, or attribution of content to the source or participant in a foreign malign or state-sponsored influence operation.

3. A list of employees, contractors, or agents of your organization, along with their current and prior titles, who, from January 1, 2015 to the present, have communicated with the Executive Branch of the United States Government regarding the moderation, deletion, suppression, restriction, demonetization, or reduced circulation of content, or regarding attribution of content to the source or participant in a foreign malign or state-sponsored influence operation.

4. A list of employees, contractors, or agents for your organization, along with their current and prior titles, who, from January 1, 2015 to the present, have communicated with any technology company, including social media companies, regarding the moderation, deletion, suppression, restriction, demonetization, or reduced circulation of content, or regarding attribution of content to the source or participant in a foreign malign or state-sponsored influence operation.

5. A list of all grants, contracts, or any funds received, from January 1, 2015 to the present, from the United States Government, as well as any underlying documentation that reflects those grants, contracts, or funds, relating in any way to your organization's efforts concerning the moderation, deletion, suppression, restriction, demonetization, or reduced circulation of content, or attribution of content to the source or participant in a foreign malign or state-sponsored influence operation.

---

[6] Scully Dep. 52:10-13, 135:6-12.

Dr. Tessier-Lavigne
March 10, 2023
Page 3

      Please produce all documents and information as soon as possible but not later than 5:00 p.m. on March 24, 2023. In addition, please treat these discovery obligations as ongoing and applicable to any information generated after receipt of this letter.

      Furthermore, this letter serves as a formal request to preserve all existing and future records and materials relating to the topics addressed in this letter. You should construe this preservation notice as an instruction to take all reasonable steps to prevent the destruction or alteration, whether intentionally or negligently, of all documents, communications, and other information, including electronic information and metadata, that are or may be responsive to this congressional inquiry. This instruction includes all electronic messages sent using your official and personal accounts or devices, including records created using text messages, phone-based message applications, or encryption software.

      Pursuant to the Rules of the House of Representatives, the Committee on the Judiciary has jurisdiction to conduct oversight of matters concerning "civil liberties" to inform potential legislative reforms.[7] In addition, H. Res. 12 authorized the Committee's Select Subcommittee on the Weaponization of the Federal Government to investigate "issues related to the violation of the civil liberties of citizens of the United States."[8]

      If you have any questions about this matter, please contact Committee staff at (202) 225-6906. Thank you for your prompt attention to this matter.

      Sincerely,

      Jim Jordan
      Chairman

cc:    The Honorable Jerrold L. Nadler, Ranking Member

---

[7] Rules of the House of Representatives R. X (2023).
[8] H. Res. 12 § 1(b)(1).