IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES,<br><br>2138 Rayburn House Office Building<br>Washington, D.C. 20515,<br><br>        *Plaintiff*,<br><br>  v.<br><br>ELVIS CHAN, in his official capacity as Assistant Special Agent of the Federal Bureau of Investigation,<br><br>450 Golden Gate Ave.<br>San Francisco, CA 94102,<br><br>        *Defendant*. | Case No. 1:24-cv-344 |

# Exhibit E

JIM JORDAN, Ohio
CHAIRMAN

JERROLD NADLER, New York
RANKING MEMBER

ONE HUNDRED EIGHTEENTH CONGRESS

# Congress of the United States
## House of Representatives
COMMITTEE ON THE JUDICIARY
2138 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6216
(202) 225-6906
judiciary.house.gov

September 20, 2023

The Honorable Christopher A. Wray
Director
Federal Bureau of Investigation
U.S. Department of Justice
935 Pennsylvania Ave, NW
Washington, DC 20535

Dear Director Wray:

      This letter responds to the letter from the Federal Bureau of Investigation, dated September 19, 2023, concerning the Committee's subpoena to FBI Assistant Special Agent in Charge Elvis Chan as part of the Committee's investigation into how and to what extent the Executive Branch has coerced and colluded with companies and other intermediaries to censor speech.[1] The FBI's letter purportedly "corrects the record," but it misstates several key facts and misrepresents the Committee's established protocol for conducting transcribed interviews. We are compelled to write to correct these inaccuracies.

      First, contrary to the assertion in the FBI's letter, the Committee first identified Mr. Chan as a potential witness for the Committee's oversight in the 118th Congress in January 2023—not March 2023 as the letter incorrectly states.[2] In fact, the FBI's awareness of our interest in interviewing Mr. Chan dates back to November 2022, when the Committee identified by name the initial employees it would seek to interview when the 118th Congress began in January 2023.[3] After the commencement of the 118th Congress, the Committee repeatedly requested over

---

[1] Letter from Mr. Christopher Dunham to Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary (Sept. 19, 2023).
[2] *Cf.* Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary, to Christopher A. Wray, Fed. Bureau of Investigation (Jan. 17, 2023) ("In addition, in our letter of November 18, 2022, we provided you with a preliminary list of FBI employees [including Elvis Chan] from whom we require testimony to advance our oversight. We asked that you direct your staff to begin scheduling dates for the Committee to receive this testimony."); Letter from Mr. Christopher Dunham to Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary (Sept. 19, 2023) ("The Committee first identified Mr. Chan as someone it wished to speak with on March 3, 2023.").
[3] Letter from Rep. Jim Jordan, Ranking Member, H. Comm. on the Judiciary, to Christopher A. Wray, Fed. Bureau of Investigation (Nov. 18, 2022).

The Honorable Christopher A. Wray
September 20, 2023
Page 2

the course of several months that the FBI schedule Mr. Chan's interview.[4] Despite these repeated requests, the Justice Department and the FBI did not agree until August 30—eight months into the 118th Congress—that Mr. Chan would appear voluntarily for an interview.[5] The FBI and the Department agreed to a voluntary transcribed interview only after being informed that the Chairman had authorized a deposition subpoena for Mr. Chan.[6] The interview was scheduled for September 15.

Second, contrary to the assertions in the FBI's letter, the Committee has been clear and consistent with the FBI and the Department about the Committee's protocols for conducting transcribed interviews.[7] The Committee specifically communicated these protocols—including that a witness before the Committee in a transcribed interview could appear with either agency counsel or personal counsel, but not both—as early as January 2023.[8] Every other transcribed interview of FBI employees, totaling 12 interviews at present, has proceeded under these established protocols.

Third, the FBI's asserted sequence of events leading to Mr. Chan's nonappearance for his scheduled transcribed interview is incorrect. The FBI was aware of the Committee's protocol on August 30 when it agreed to schedule the transcribed interview for September 15. However, the first time that anyone from either the Justice Department or the FBI notified the Committee that Mr. Chan had retained personal counsel and would seek special treatment by allowing a personal counsel and agency counsel was late on September 12.[9] The next day, on September 13, Committee staff reached out to Mr. Chan's personal attorney and reiterated the Committee's protocols for conducting transcribed interviews.[10] At that time, Mr. Chan's personal attorney indicated that he would discuss the protocols with Mr. Chan.[11] The following morning, on September 14, Committee staff informed Mr. Chan's personal attorney that the Committee was prepared to issue a subpoena if necessary, to which Mr. Chan's attorney replied that it would not be necessary and that he understood the Committee's protocol.[12]

---

[4] *See, e.g.*, Telephone Call between Committee Staff and FBI Personnel (May 22, 2023); Email from Committee Staff to FBI and DOJ Personnel (Jun. 21, 2023, 3:53 PM); Email from Committee Staff to FBI and DOJ Personnel (Jul. 5, 2023, 12:22 PM); Email from Committee Staff to FBI and DOJ Personnel (Aug. 8, 2023, 5:05 PM); Email from Committee Staff to FBI and DOJ Personnel (Aug. 17, 2023, 1:08 PM); Meeting between Committee Staff and FBI Personnel (Aug. 22, 2023).
[5] Email from FBI Personnel to Committee Staff (August 30, 2023, 4:00 PM).
[6] *See* Email from FBI Personnel to Committee Staff (Aug. 29, 2023, 5:49 PM).
[7] Relatedly, the FBI's statement that "non-governmental witnesses have routinely appeared for voluntary transcribed interviews before the Committee this Congress with more than two attorneys" is inaccurate.
[8] *See, e.g.*, Email from Committee Staff to FBI personnel (Jan. 31, 2023, 11:51 AM). This is not the first time the Department has tried to violate the Committee's protocols. On April 18, 2023, after being repeatedly informed of the Committee's protocols, a legislative affairs staffer from the Justice Department tried to obstruct the Committee's transcribed interview that day by insisting that he be allowed to be physically present for the transcribed interview. The legislative affairs staffer was asked to leave, and after he complied, the interview proceeded as scheduled.
[9] Telephone Call between Committee Staff and FBI Personnel (Sept. 12, 2023, 4:45 PM).
[10] Telephone Call between Committee Staff and Larry Berger (Sept. 13, 2023, 11:31 AM).
[11] *Id.*
[12] Telephone Call between Committee Staff and Larry Berger (Sept. 14, 2023, 10:28 AM).

The Honorable Christopher A. Wray
September 20, 2023
Page 3

Despite numerous communications with Mr. Chan's personal attorney in advance of the scheduled transcribed interview, the first time that Mr. Chan's personal attorney informed the Committee that Mr. Chan would not appear voluntarily under the Committee's protocol was the afternoon of September 14, less than a day before the scheduled start time of the transcribed interview.[13] After continual discussion late into the night on September 14 among Committee staff, the Department, the FBI, and Mr. Chan's personal attorney, Committee staff reiterated again at 7:37 p.m. the Committee's long-established protocol: "Mr. Chan can have either agency counsel or personal counsel accompany him at the transcribed interview—not both. It is Mr. Chan's choice."[14] In response, twenty minutes later, Mr. Chan's personal attorney responded that he would "be present on behalf of Mr. Chan tomorrow for the scheduled interview."[15] He did not register an objection to the Committee's protocol, nor did he state that counsel for the Department or the FBI would attempt to join Mr. Chan.[16] From this statement from Mr. Chan's personal attorney, the Committee was led to believe that Mr. Chan had chosen personal counsel to represent him at the transcribed interview.

Despite the representation from Mr. Chan's personal attorney, a Department legislative affairs staffer interjected with an unsolicited email at 10:07 p.m., writing: "we've spoken with Mr. Chan and his strong desire is to be represented by both personal and agency counsel tomorrow. We look forward to seeing you at 10am."[17] In response, at 11:13 p.m., Committee staff urged the Department to respect the wishes of Mr. Chan, as communicated by his personal attorney to the Committee, and to not try to violate the Committee's protocol:

> To confirm - that is not an option we are offering. Mr. Chan has requested personal counsel. We respectfully ask that you do not attempt to join. The Chairman has authorized a deposition subpoena for next Thursday (9/21) which he has instructed us to serve should there be any issue tomorrow morning.[18]

Following this request, the Committee did not receive any response from the FBI or the Department until 8:40 a.m. the next morning—less than 90 minutes before the scheduled start of the transcribed interview. At that time, the Department's legislative affairs staffer, not Mr. Chan's attorney, notified the Committee that counsel from the Department and the FBI would insist on appearing with Mr. Chan in conflict with the Committee's established protocols.[19]

Committee staff were in the interview room by 9:45 a.m. ready to proceed with Mr. Chan's transcribed interview. Within minutes after 10 a.m.—the time the interview was scheduled to begin—once it became clear that Mr. Chan would not appear, Committee staff spoke to Mr. Chan's personal attorney over the phone. Contrary to the FBI's assertion in its

---

[13] Email from Larry Berger to Committee Staff (Sept. 14, 2023, 12:03 PM).
[14] Email from Committee Staff to Larry Berger, DOJ Personnel, and FBI Personnel (Sept. 14, 2023, 7:37 PM).
[15] Email from Larry Berger to Committee Staff (Sept. 14, 2023, 7:57 PM) (copying DOJ Personnel and FBI Personnel).
[16] *Id.*
[17] Email from DOJ Personnel to Committee Staff (Sept. 14, 10:07 PM) (copying FBI Personnel and Larry Berger).
[18] Email from Committee Staff to Larry Berger, DOJ Personnel, and FBI Personnel (Sept. 14, 2023, 11:13 PM).
[19] Email from DOJ Personnel to Committee Staff (Sept. 15, 8:40 AM) (copying FBI Personnel and Larry Berger).

The Honorable Christopher A. Wray
September 20, 2023
Page 4

letter, Mr. Chan's personal attorney informed the Committee that neither he nor Mr. Chan were in the building.[20] The transcribed interview of Mr. Chan did not proceed as scheduled due to the insistence of the FBI and Department that the Committee afford Mr. Chan special treatment in violation of the Committee's established protocol.

Fourth, contrary to the FBI's assertion, it is not inappropriate for the Committee to interact directly with Mr. Chan before the Committee was aware of the identity of his personal counsel. As a general matter, every federal employee has an unfettered right to speak with Congress without interference from his or her employing agency. In this matter, the FBI and the Department informed the Committee that Mr. Chan had retained personal counsel only days before the scheduled interview, but did not inform the Committee of the identity of Mr. Chan's personal attorney. Accordingly, due to the time restrictions, the Committee contacted Mr. Chan for the sole purpose that he direct personal attorney to contact the Committee about the upcoming transcribed interview.[21] There is no merit to the FBI's attempt to threaten Committee staff by implying that there was anything improper, under the rules of professional responsibility or otherwise, regarding this communication. The Committee's practice, upon learning that a witness has obtained personal counsel, is to contact the witness's personal counsel and communicate through personal counsel.

Finally, the FBI's letter appears to misunderstand one of the most basic truths relevant to this matter: Agency counsel represent the agency and its institutional interests; Mr. Chan's counsel represents Mr. Chan and his personal interests. The Department's legislative affairs staffer has even recognized this fact, acknowledging to Committee staff that "agency counsel and personal counsel represent different interests."[22] Strangely, however, the Department legislative affairs staffer also added that "Mr. Chan should not be forced to choose between them," implying that somehow Mr. Chan does—or could—share in the Department's and FBI's *institutional* interests. As explained to the Department and the FBI repeatedly, the Committee permits government witnesses to rely on agency counsel—in lieu of personal counsel—as a courtesy to witnesses without personal counsel. However, once a witness, such as Mr. Chan, has obtained personal counsel, the rationale for this accommodation no longer applies. Indeed, once Mr. Chan retained personal counsel and once his attorney was apprised of the Committee's protocol, his counsel informed the Committee of Mr. Chan's desire to appear with his personal counsel and did not mention agency counsel. In fact, it is the Department, specifically staff from the Department's Office of Legislative Affairs, that repeatedly interjected to say that agency counsel would be attending the scheduled transcribed interview.

The Constitution affords the House of Representatives the authority to determine its own rules and procedures.[23] In turn, the Rules of the House authorize committee chairmen to enforce "order and decorum" in committee proceedings.[24] Consistent with this authority, House committees have developed, over both Democrat and Republican majorities, protocols for

---

[20] Telephone Call between Committee Staff and Larry Berger (Sept. 15, 2023, 10:12 AM).
[21] Email from Committee Staff to Elvis Chan (Sept. 13, 2023, 9:45 AM).
[22] Email from DOJ Personnel to Committee Staff (Sept. 13, 2023, 10:21 AM).
[23] U.S. Const. Art. I.
[24] Rules of the House of Reps., R. XI, cl. 2(k)(4).

The Honorable Christopher A. Wray
September 20, 2023
Page 5

conducting voluntary transcribed interviews. The protocols established by the Committee for voluntary transcribed interviews, which mirror House rules for conducting a deposition pursuant to a subpoena, include that a witness for a transcribed interview has the choice of being represented by either agency counsel or personal counsel, but not both.

In fact, the inclusion of agency counsel in an interview of a government witness can create conflicts for the witness and hamper the Committee's investigation.[25] This fact is especially true where, as here, the individual's interests and the agency's interests diverge. As noted previously, through its investigation, the Committee has uncovered evidence that appears to contradict several statements in Mr. Chan's deposition in *Missouri v. Biden*, particularly as they relate to his communications with social media platforms.[26] During Mr. Chan's deposition in that litigation, as the FBI notes, Mr. Chan was accompanied by personal and agency counsel. It is reasonable to question whether Mr. Chan would have been more forthcoming and veracious in that setting if counsel for the Department was not present.

Nevertheless, the Committee does allow a government witness to rely on agency counsel if the witness does not wish to incur the expense of hiring a personal counsel. This is a courtesy extended for the benefit of the witness; it is not a courtesy that the Committee extends for the benefit of the agency. To the extent that Mr. Chan wishes to take advantage of this courtesy, he is free to do so consistent with the Committee's established protocols. On the other hand, if Mr. Chan does not wish to take advantage of this courtesy, and instead chooses to proceed with personal counsel, then the rationale for allowing agency counsel to participate in the interview disappears, and for the reasons set forth above, this matter would be a particularly poor case for the Committee to consider deviating from its protocols.

As noted in the Committee's letter to Mr. Chan accompanying the subpoena, the Supreme Court has recognized that Congress has a "broad and indispensable" power to conduct oversight, which "encompasses inquiries into the administration of existing laws, studies of proposed laws, and surveys in our social, economic or political system for the purpose of enabling Congress to remedy them."[27] Pursuant to the Rules of the House of Representatives, the Committee on the Judiciary has jurisdiction to conduct oversight of matters concerning "civil

---

[25] Morton Rosenberg, WHEN CONGRESS COMES CALLING, A STUDY ON THE PRINCIPLES, PRACTICES, AND PRAGMATICS OF LEGISLATIVE INQUIRY (2017), at 38 ("Committees have no way to ascertain with any degree of certainty whether a witness truly requested, and in fact wants, to be accompanied by agency personnel. Where a potential conflict of interest situation appears to arise, a committee will seek to insulate a witness from the presence of agency personnel during a staff interview, deposition, or hearing testimony. For example, if the chairperson determines that a witness's agency-selected counsel raises a potential conflict of interest, or might chill the witness's candor, that counsel can be excluded from a hearing. The determination stems from the need to ensure effective oversight of agency activities while protecting witnesses from the possibility of abuse, threats, or coercion. In addition to the possibility that the mere presence of agency counsel would have a chilling effect on employees' testimony, counsel for the executive branch have at times directly instructed agency witnesses not to answer a committee's questions."); *see also* House Judiciary Committee's Transcribed Interview of Laura Dehmlow (July 17, 2023), at 30-34, 37 (on file with the Comm.) (Agency counsel coaching Laura Dehmlow during the interview and instructing Dehmlow to not answer questions to which she knows the answer).

[26] Rep. Jim Jordan (@Jim_Jordan), TWITTER (Aug. 7, 2023, 10:11 AM), https://twitter.com/Jim_Jordan/status/1688553339624042496.

[27] *Trump v. Mazars*, 140 S. Ct. 2019, 2031 (2020) (internal quotation marks omitted).

The Honorable Christopher A. Wray
September 20, 2023
Page 6

liberties" to inform potential legislative reforms.[28] In addition, H. Res. 12 authorized the Committee's Select Subcommittee on the Weaponization of the Federal Government to investigate "issues related to the violation of the civil liberties of citizens of the United States."[29]

The Committee requires testimony from Mr. Chan to advance its oversight and inform potential legislative reforms. As an accommodation to Mr. Chan, however, based on the FBI's representation that he is conducting international travel, the Committee is willing to postpone the date of his deposition until October 5, 2023, when we understand that Mr. Chan will have returned. The Committee will be in communication with Mr. Chan's personal attorney directly about the deposition.

Sincerely,

*Jim Jordan*
Jim Jordan
Chairman

cc:     The Honorable Jerrold L. Nadler, Ranking Member

---

[28] Rules of the House of Representatives R. X (2023).
[29] H. Res. 12 § 1(b)(1).