IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES,<br><br>2138 Rayburn House Office Building<br>Washington, D.C. 20515,<br><br>            *Plaintiff*,<br><br>      v.<br><br>ELVIS CHAN, in his official capacity as Assistant Special Agent of the Federal Bureau of Investigation,<br><br>450 Golden Gate Ave.<br>San Francisco, CA 94102,<br><br>            *Defendant*. | Case No. 1:24-cv-344 |

# Exhibit L

JIM JORDAN, Ohio
CHAIRMAN

JERROLD NADLER, New York
RANKING MEMBER

ONE HUNDRED EIGHTEENTH CONGRESS

# Congress of the United States
## House of Representatives
COMMITTEE ON THE JUDICIARY
2138 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6216
(202) 225-6906
judiciary.house.gov

October 3, 2023

Mr. Lawrence Berger, Esq.
Outside Counsel to FLEOA Members
Mahon & Berger, Esqs.
70 Glen Street, Suite 249
Glen Cove, NY 11542

Re:     Deposition Subpoena to Elvis Chan

Dear Mr. Berger:

This letter responds to your correspondence dated September 29, 2023, and transmitted on October 2, 2023, concerning the Committee's subpoena issued to your client, Federal Bureau of Investigation Assistant Special Agent in Charge Elvis Chan, following his failure to appear for a transcribed interview on September 15, 2023.[1] We write to correct the record regarding the circumstances surrounding Mr. Chan's failure to appear for his transcribed interview and to establish the Committee's basis for proceeding with the scheduled deposition. We look forward to Mr. Chan appearing, accompanied by personal counsel, for his deposition on October 5, 2023.

Pursuant to the Rules of the House of Representatives, the Committee has jurisdiction to conduct oversight of the Department of Justice, the Federal Bureau of Investigation, and matters concerning "civil liberties" to inform potential legislative reforms.[2] In addition, House Resolution 12 authorized the Committee's Select Subcommittee on the Weaponization of the Federal Government to investigate "issues related to the violation of the civil liberties of citizens of the United States."[3] Consistent with this authorization from the House, we are conducting oversight of how and to what extent the Executive Branch has coerced and colluded with companies and other intermediaries to censor speech.[4] To develop effective legislation, such as the possible enactment of new statutory limits on the Executive Branch's ability to work with

---

[1] Letter from Mr. Lawrence Berger to Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary (Sept. 29, 2023) (emailed to the Committee October 2, 2023).
[2] Rules of the House of Representatives R. X (2023).
[3] H. Res. 12 § 1(b)(1).
[4] *See* Ryan Tracy, *Facebook Bowed to White House Pressure, Removed Covid Posts*, WALL ST. J. (July 28, 2023); Rep. Jim Jordan (@Jim_Jordan), TWITTER (July 27, 2023, 12:03 PM), https://twitter.com/Jim_Jordan/status/1684595375875760128.

Mr. Lawrence Berger, Esq.
October 3, 2023
Page 2

social media platforms and other companies to restrict the circulation of content and deplatform users, the Committee must first understand the nature of this collusion and coercion.

As the primary liaison between the Federal Bureau of Investigation's (FBI) Foreign Influence Task Force and social media companies, Mr. Chan is uniquely positioned to aid the Committee's oversight.[5] In addition, the public release of internal Twitter communications between December 2022 and March 2023 (i.e., the Twitter Files) further revealed and confirmed Mr. Chan's role in the government's online censorship efforts.[6] The Committee has also received documents as a part of its oversight that call into question the veracity of statements made by Mr. Chan during his sworn deposition in *Missouri v. Biden*.[7]

I.  **The Committee has worked in good faith to obtain Mr. Chan's testimony and has sought to accommodate Mr. Chan regarding his testimony.**

We first write to clarify the sequence of events that led to Mr. Chan's failure to appear for his transcribed interview. At the outset of the 118th Congress, the Committee renewed its existing request, dating to November 2022, that the FBI make Mr. Chan available for a transcribed interview.[8] Over the course of the next many months, the Committee repeatedly asked that the FBI schedule Mr. Chan's transcribed interview.[9] Despite these repeated requests, the Justice Department and the FBI did not agree until August 30 that Mr. Chan would appear voluntarily for an interview.[10] The Department, FBI, and Mr. Chan agreed to a voluntary transcribed interview only after being informed that the Chairman had authorized a deposition subpoena for Mr. Chan.[11] The interview was scheduled to occur on September 15, 2023.

At the time that the Department and FBI agreed to schedule Mr. Chan's interview, both entities were well aware of the Committee's practice for conducting transcribed interviews. The Committee had communicated this practice, including that a witness before the Committee could appear with either agency counsel or personal counsel, but not both—shortly after the 118th

---

[5] *Missouri v. Biden*, No. 3:22-cv-01213 (W.D. La. Jul. 4, 2023), Dkt. 144-2 (Deposition of Special Agent Elvis Chan), 38:13-39:22.
[6] *See, e.g.*, Alexa Schwerha, *FBI Official Admits Agency Colluded Weekly With Facebook To Flag, Take Down Posts*, DAILY CALLER (Dec. 2, 2022); Joseph Clark, *'Twitter Files' Show FBI Offered Executives Top Secret Info to Guide 2020 Election Censorship*, WASH. TIMES (Dec. 19, 2022).
[7] *See, e.g.*, Rep. Jim Jordan (@Jim_Jordan), TWITTER (Aug. 7, 2023, 10:11 AM), https://twitter.com/Jim_Jordan/status/1688553339624042496.
[8] In fact, Mr. Chan was among the first FBI employees who the Committee identified as a potential witness during the 118th Congress. Letter from Rep. Jim Jordan, Ranking Member, H. Comm. on the Judiciary, to Christopher A. Wray, Fed. Bureau of Investigation (Nov. 18, 2022); *see also* Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary, to Christopher A. Wray, Fed. Bureau of Investigation (Jan. 17, 2023); Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary, to Christopher A. Wray, Fed. Bureau of Investigation (Mar. 3, 2023).
[9] *See, e.g.*, Telephone Call between Committee Staff and FBI Personnel (May 22, 2023); Email from Committee Staff to FBI and DOJ Personnel (Jun. 21, 2023, 3:53 PM); Email from Committee Staff to FBI and DOJ Personnel (Jul. 5, 2023, 12:22 PM); Email from Committee Staff to FBI and DOJ Personnel (Aug. 8, 2023, 5:05 PM); Email from Committee Staff to FBI and DOJ Personnel (Aug. 17, 2023, 1:08 PM); Meeting between Committee Staff and FBI Personnel (Aug. 22, 2023).
[10] Email from FBI Personnel to Committee Staff (August 30, 2023, 4:00 PM).
[11] *See* Email from FBI Personnel to Committee Staff (Aug. 29, 2023, 5:49 PM).

Mr. Lawrence Berger, Esq.
October 3, 2023
Page 3

Congress began in January 2023.[12] Every other transcribed interview conducted of FBI employees this Congress has proceeded under this practice without incident.

      Just days before the interview was scheduled to occur, late on the afternoon of September 12, the Department and FBI informed the Committee that Mr. Chan had obtained personal counsel and requested an exception be made to the Committee's practice so that Mr. Chan could appear with both personal counsel and agency counsel.[13] The Department and the FBI did not identify you as Mr. Chan's personal counsel at that time.[14]

      The next day, on September 13, after learning that you represented Mr. Chan, Committee staff reached out to you and reiterated the Committee's practice for conducting transcribed interviews.[15] At that time, you indicated that you would discuss the practice with Mr. Chan.[16] The following morning, on September 14, Committee staff informed you that the Committee was prepared to issue a subpoena if necessary, to which you replied that it would not be necessary and that you understood the Committee's practice.[17]

      Despite several communications with you in advance of the transcribed interview, the first time that you informed the Committee that Mr. Chan would not appear voluntarily under the Committee's practice was the afternoon of September 14, less than a day before the scheduled start time of the transcribed interview.[18] After discussions continued on September 14 among Committee staff, the Department, the FBI, and you, Committee staff reiterated again at 7:37 p.m. the Committee's long-established practice that "Mr. Chan can have either agency counsel or personal counsel accompany him at the transcribed interview—not both. It is Mr. Chan's choice."[19] In response, twenty minutes later, you responded that you would "be present on behalf of Mr. Chan tomorrow for the scheduled interview."[20] You did not register an objection to the Committee's practice, nor did you state that counsel for the Department or the FBI would attempt to join Mr. Chan.[21] The Committee was thus led to believe that Mr. Chan had chosen personal counsel to represent him at the transcribed interview.

      Despite the representation in your email, a Department legislative affairs staffer interjected with an unsolicited email at 10:07 p.m., writing: "we've spoken with Mr. Chan and his strong desire is to be represented by both personal and agency counsel tomorrow. We look forward to seeing you at 10am."[22] Promptly thereafter, at 11:13 p.m., Committee staff again

---

[12] Email from Committee Staff to FBI personnel (Jan. 31, 2023, 11:51 AM).
[13] Telephone Call between Committee Staff and FBI Personnel (Sept. 12, 2023, 4:45 PM).
[14] *Id.*
[15] Telephone Call between Committee Staff and Lawrence Berger (Sept. 13, 2023, 11:31 AM).
[16] *Id.*
[17] Telephone Call between Committee Staff and Lawrence Berger (Sept. 14, 2023, 10:28 AM).
[18] Email from Lawrence Berger to Committee Staff (Sept. 14, 2023, 12:03 PM).
[19] Email from Committee Staff to Lawrence Berger, DOJ Personnel, and FBI Personnel (Sept. 14, 2023, 7:37 PM).
[20] Email from Lawrence Berger to Committee Staff (Sept. 14, 2023, 7:57 PM) (copying DOJ Personnel and FBI Personnel).
[21] *Id.*
[22] Email from DOJ Personnel to Committee Staff (Sept. 14, 10:07 PM) (copying FBI Personnel and Lawrence Berger).

reiterated the practice to the Department—practice under which every other transcribed interview has proceeded—and urged the Department to respect the wishes of Mr. Chan:

> To confirm - that is not an option we are offering. Mr. Chan has requested personal counsel. We respectfully ask that you do not attempt to join. The Chairman has authorized a deposition subpoena for next Thursday (9/21) which he has instructed us to serve should there be any issue tomorrow morning.[23]

Following this request, the Committee did not receive any response from the FBI or the Department until 8:40 a.m. the next morning—less than 90 minutes before the scheduled start of the transcribed interview. At that time, the Department's legislative affairs staffer, not you as Mr. Chan's attorney, notified the Committee that counsel from the Department and the FBI would insist on appearing with Mr. Chan in conflict with the Committee's practice.[24]

Committee staff were in the interview room by 9:45 a.m. ready to proceed with Mr. Chan's transcribed interview scheduled to begin at 10 a.m. Within minutes after 10 a.m., once it became clear that Mr. Chan would not appear, Committee staff spoke to you over the phone, during which you informed Committee staff that neither you nor Mr. Chan were in the building.[25] As a result of Mr. Chan's failure to appear, the Committee issued a subpoena for a deposition on September 21, 2023. Subsequently, as an accommodation to Mr. Chan's international travel commitments, the Committee agreed to postpone the date of the deposition to October 5, 2023.[26]

**II.     The stated reasons for Mr. Chan's failure to appear for his voluntary transcribed interview are baseless.**

We also write to respond to the reasons articulated in your recent letter as to why Mr. Chan was justified in failing to appear for his transcribed interview. We find these reasons to be unfounded and unpersuasive.

**A.  The Committee afforded Mr. Chan his choice of counsel and has respected Mr. Chan's choice.**

Your letter asserts that Mr. Chan failed to appear for his transcribed interview on September 15, 2023, because the Committee "restrict[ed] ASAC Chan from choosing counsel of his choice to accompany him to the deposition."[27] This assertion is false. As the Committee communicated to you, the Department, and the FBI several times, it is expressly Mr. Chan's

---

[23] Email from Committee Staff to Lawrence Berger, DOJ Personnel, and FBI Personnel (Sept. 14, 2023, 11:13 PM).
[24] Email from DOJ Personnel to Committee Staff (Sept. 15, 8:40 AM) (copying FBI Personnel and Lawrence Berger).
[25] Telephone Call between Committee Staff and Lawrence Berger (Sept. 15, 2023, 10:12 AM).
[26] Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judic., to Elvis Chan (Sept. 21, 2023).
[27] Letter from Mr. Lawrence Berger to Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary (Sept. 29, 2023) (emailed to the Committee October 2, 2023). On this point, however, your letter contradicts itself. While you first claim that Mr. Chan "did not fail to appear for this scheduled voluntary transcribed interview on September 15, 2023," you later concede that it was Mr. Chan's "decision not to attend" the interview. *Id.*

Mr. Lawrence Berger, Esq.
October 3, 2023
Page 5

choice as to whether he would be accompanied by personal counsel or agency counsel at the transcribed interview. Mr. Chan chose to be represented by you as his personal counsel, and the Committee honored his choice.

Your assertion appears to rely on a misunderstanding of why the Committee has at times permitted agency counsel to accompany government witnesses to a voluntary transcribed interview. As you acknowledged in your letter, agency counsel represents the interests of the agency *as an institution* and personal counsel represents the interests of the witness *as an individual*.[28] However, at times, the Committee will permit a government witness to rely on agency counsel—in lieu of personal counsel—as a courtesy to witnesses without personal counsel to alleviate the witness from the financial burden and difficulties of obtaining their own personal counsel. Once a witness has chosen to retain personal counsel, the rationale for this accommodation no longer applies.

Quite simply, once Mr. Chan chose to be accompanied by personal counsel, there was no legitimate basis for allowing agency counsel to also be present to represent Mr. Chan's personal interests. You seem to acknowledge this fact; however, you still object to Mr. Chan's supposed "imposed choice of counsel," implying that somehow Mr. Chan does—or could—share in the Department's and FBI's *institutional* interests.[29] This statement misses the point. The role of an attorney accompanying a witness in a transcribed interview should be to represent the interests of the witness and not the interests of the agency for which the witness works.

### B. The Committee is empowered by the Constitution and Rules of the House to determine who may attend transcribed interviews and depositions.

Your letter questions whether "the Committee [has] oversight authority to compel an agency witness to appear at a staff deposition and answer questions without the assistance of agency counsel."[30] The answer is unequivocally yes.

The Constitution affords the House of Representatives the authority to determine its own rules and procedures.[31] In turn, the Rules of the House authorize committee chairmen to enforce "order and decorum" in committee proceedings.[32] Consistent with this authority, the Judiciary Committee has developed certain practices for conducting voluntary transcribed interviews. Although a moot point now that Mr. Chan is compelled to appear and provide testimony pursuant to a subpoena, the practice established by the Committee for voluntary transcribed interviews—which contain language identical to the House's rules for conducting a deposition

---

[28] Letter from Lawrence Berger to Chairman Jordan (Sept. 29, 2023), at 1. As you acknowledged, you owe "duties to ASAC Chan himself" and agency counsel represents "the interests of the FBI and the Department of Justice (DOJ)." *Id.*
[29] *Id.*, at 2.
[30] Letter from Mr. Lawrence Berger to Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary (Sept. 29, 2023) (emailed to the Committee October 2, 2023), at 2.
[31] U.S. Const. Art. I, § 5, cl. 2.
[32] Rules of the House of Reps., R. XI, cl. 2(k)(4).

Mr. Lawrence Berger, Esq.
October 3, 2023
Page 6

pursuant to a subpoena—include that a witness for a transcribed interview has the choice of being represented by either agency counsel or personal counsel, but not both.

The House has also directly addressed the authority of committees to conduct depositions pursuant to subpoena.[33] As adopted by the House, House Resolution 5 specifically states that witnesses "may be accompanied at a deposition by two designated personal *nongovernmental attorneys* to advise them of their rights."[34] In addition, paragraph 3 of the "Regulations for the use of Deposition Authority," which was issued by the Committee on Rules pursuant to section 3(k)(3) of House Resolution 5 and printed in the *Congressional Record*, states:

> 3. Witnesses may be accompanied at a deposition by two designated personal, nongovernmental attorneys to advise them of their rights. Only members, committee staff designated by the chair or ranking minority member, an official reporter, the witness, and the witness's two designated attorneys are permitted to attend. ***Other persons, including government agency personnel, may not attend.***[35]

The Committee adopted these deposition procedures in the Committee's Rules of Procedure, passed unanimously at the beginning of the 118th Congress.[36] In particular, Rule XI ("Depositions"), incorporating H. Res. 5, states that:

> (3) PERSONS PERMITTED TO ATTEND DEPOSITIONS.—Deponents may be accompanied at a deposition by two designated personal, nongovernmental attorneys to advise them of their rights. Only members, committee staff designated by the chair or ranking minority member, an official reporter, the witness, and the witness's two designated attorneys are permitted to attend. ***Other persons, including government agency personnel, may not attend***.[37]

The rationale for this rule is well-documented. As you have recognized, agency counsel does not represent the witness's personal interests. Rather, agency counsel represents the *agency*'s interests. Accordingly, agency counsel may pressure the witness explicitly or implicitly to not disclose certain information relevant to the Committee's investigation.[38] The

---

[33] H. Res. 5, §3(k).
[34] *Id.* (emphasis added).
[35] *Reg. 3*, REGULATIONS FOR THE USE OF DEPOSITION AUTHORITY, COMMITTEE ON RULES, U.S. HOUSE OF REPRESENTATIVES (118th Congress) (emphasis added).
[36] Rule XI, RULES OF PROCEDURE, COMMITTEE ON THE JUDICIARY, U.S. HOUSE OF REPRESENTATIVES (118th Congress) (adopted Feb. 1, 2023).
[37] *Id.* (citing H. Res. 5, §3(k)) (emphasis added).
[38] *See* Morton Rosenberg, WHEN CONGRESS COMES CALLING, A STUDY ON THE PRINCIPLES, PRACTICES, AND PRAGMATICS OF LEGISLATIVE INQUIRY (2017), at 38 ("Committees have no way to ascertain with any degree of certainty whether a witness truly requested, and in fact wants, to be accompanied by agency personnel. Where a potential conflict of interest situation appears to arise, a committee will seek to insulate a witness from the presence of agency personnel during a staff interview, deposition, or hearing testimony. For example, if the chairperson determines that a witness's agency-selected counsel raises a potential conflict of interest, or might chill the witness's candor, that counsel can be excluded from a hearing. The determination stems from the need to ensure effective oversight of agency activities while protecting witnesses from the possibility of abuse, threats, or coercion. In addition to the possibility that the mere presence of agency counsel would have a chilling effect on employees'

Mr. Lawrence Berger, Esq.
October 3, 2023
Page 7

inclusion of agency counsel in a deposition of a government witness can create conflicts for the witness and impede the Committee's oversight. This reality is especially true where, as here, the witness's individual interests and the agency's institutional interests diverge. The Committee has evidence that appears to contradict several statements that Mr. Chan made under oath in a civil deposition in *Missouri v. Biden*.[39] Because Mr. Chan was represented by agency counsel in that deposition, it is reasonable for the Committee to believe that Mr. Chan will be more veracious outside the presence of agency counsel.

### C. The Executive Branch authorities you cite are not binding and unpersuasive.

Finally, your letter appeals to authorities authored by the Executive Branch for why the Committee must allow agency counsel to be present for Mr. Chan's deposition along with personal counsel.[40] These authorities, of course, are not binding on Congress and are ultimately unpersuasive. Specifically, you cite concerns with identifying and addressing "executive privilege, classified information, and other information protected by disclosure."[41] You are an experienced litigator who has represented numerous federal law enforcement officers in matters before Congress. In addition, Mr. Chan is a senior national security official who currently holds a security clearance and accordingly has a personal obligation at all times not to disclose classified information. The Committee is confident that you could effectively advise your client as to the issues you identified.

The Executive Branch has recognized Congress's ability to conduct interviews and depositions of government witnesses, current and former, accompanied solely by personal counsel. In such cases, the agency typically issues a letter of authorization to the witness's personal counsel detailing the scope of the authorized testimony and advising the personal counsel as to any matters of potential privilege.[42] While it is unclear whether you have pursued this option with the Justice Department or the FBI, it appears that in these cases an Executive Branch agency relies on a witness's personal counsel to identify and respond to matters affecting institutional interests. Neither the Department nor the FBI has offered a legitimate reason why

---

testimony, counsel for the executive branch have at times directly instructed agency witnesses not to answer a committee's questions."); *see also* House Judiciary Committee's Transcribed Interview of Laura Dehmlow (July 17, 2023), at 30-34, 37 (on file with the Comm.) (Agency counsel coaching Laura Dehmlow during the interview and instructing Dehmlow to not answer questions to which she knows the answer).

[39] Rep. Jim Jordan (@Jim_Jordan), TWITTER (Aug. 7, 2023, 10:11 AM), https://twitter.com/Jim_Jordan/status/1688553339624042496.

[40] *See* Letter from Mr. Lawrence Berger to Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary (Sept. 29, 2023) (emailed to the Committee October 2, 2023), at 3-4.

[41] *Id.*

[42] *See, e.g.*, Letter to Bradley Weinsheimer, Dep't of Justice, to Jeffrey A. Rosen (July 26, 2021); Transcribed interview of Catherine Duval, Internal Revenue Serv., by the H. Comm. on Oversight & Reform (July 31, 2014) ("I'd just like to put on the record Ms. Duval is appearing today pursuant to a testimonial authorization provided by the Internal Revenue Service. . . . She will not testify outside that authorization. And, if necessary, I will instruct her not to answer. But I am confident that with rephrasing or limitation of certain questions, we'll be able to get the information the committee requires while not going outside of the authorized testimony."); Transcribed interview of Thomas Kane, Internal Revenue Serv., by the H. Comm. on Oversight & Reform (July 17, 2014) ("As you know, he's in the government, and the government has provided authorization to him in order to appear today. They have provided an authorization and scope regarding his testimony.").

Mr. Lawrence Berger, Esq.
October 3, 2023
Page 8

such an authorization letter cannot be provided here, which would also help to alleviate your stated concerns about proceeding without agency counsel.

### III. In the interest of obtaining Mr. Chan's testimony without further undue delay, the Committee is prepared to offer an extraordinary accommodation.

The Committee has determined that it requires Mr. Chan's testimony to advance its oversight and inform potential legislative reforms. To ensure that the Committee's oversight is not needlessly delayed, the Committee, as an extraordinary accommodation, is willing to allow agency counsel to remain physically present just outside the Committee room in which the interview will occur and will permit a recess at any time to consult with agency counsel about any matters that may arise during the deposition. The Committee believes that this accommodation will allow you and Mr. Chan to consult with agency counsel as necessary and alleviates the concerns you have articulated about proceeding without agency counsel.

\*   \*   \*

We appreciate your representation that Mr. Chan will appear "quite voluntarily" for his deposition on October 5, 2023. To be clear, Mr. Chan is under subpoena for his testimony. As such, the Committee will proceed pursuant to the House's deposition rules and the deposition authority in Committee rules, both of which permit only Mr. Chan's personal counsel to accompany him. We hope that Mr. Chan will choose to accept our offer of accommodation so that the Committee's oversight may proceed without obstruction. If Mr. Chan again fails to appear, the Committee will consider additional measures to enforce compliance with the subpoena.

Sincerely,

Jim Jordan
Chairman

cc:     The Honorable Jerrold L. Nadler, Ranking Member