IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES,<br><br>2138 Rayburn House Office Building<br>Washington, D.C. 20515,<br><br>   *Plaintiff*,<br><br> v.<br><br>ELVIS CHAN, in his official capacity as Assistant Special Agent of the Federal Bureau of Investigation,<br><br>450 Golden Gate Ave.<br>San Francisco, CA 94102,<br><br>   *Defendant*. | Case No. 1:24-cv-344 |

# Exhibit N



**U.S. Department of Justice**
Federal Bureau of Investigation

*Office of Congressional Affairs*

*Office of the Assistant Director*                   935 Pennsylvania Avenue, NW
                                                     Washington, DC 20535-0001

September 19, 2023

The Honorable Jim Jordan
Chairman
Committee on the Judiciary
U.S. House of Representatives
Washington, D.C.  20515

Dear Chairman Jordan:

     This letter responds to the Committee on the Judiciary's (Committee's) subpoena of September 15, 2023, for deposition testimony from Assistant Special Agent in Charge Elvis Chan.  It also corrects the record as characterized in the letter accompanying the subpoena.  Finally, it conveys that the Department of Justice (Department) and Federal Bureau of Investigation (FBI)—including Mr. Chan—are prepared to work through the Committee's unfortunate and unnecessary escalation by making him available for a transcribed interview on a future date, just as before: voluntarily, accompanied by agency and personal counsel.

     On August 30, the Department and the FBI agreed to schedule Mr. Chan to participate in a voluntary transcribed interview on September 15, 2023.  This accommodation was made through cooperation between counsel for the Committee and agency counsel for the Department and FBI.  The Committee was aware of and raised no concerns about the fact that agency counsel would accompany Mr. Chan to the interview.  When informed that Mr. Chan would also bring his personal counsel, the Committee responded the day before Mr. Chan's interview, when he had already traveled across the country and prepared, with a subpoena threat for a deposition on September 21, 2023—a date on which we informed the Committee that Mr. Chan would be out of the country for previously planned official travel.  We reiterated to the Committee that Mr. Chan had stated that he wanted to be accompanied by both personal and agency counsel, as is appropriate in these circumstances, and that he would appear as requested.

     On September 15, 2023, Mr. Chan appeared as agreed at the Rayburn House Office Building to provide the testimony requested by the Committee.  He was accompanied by counsel for the Department and FBI, and by his personal counsel.  For that reason alone, the Committee declined to proceed with the interview the Committee says is important for its investigation and that was offered voluntarily.  Instead, the Committee issued a subpoena later that day to compel Mr. Chan, who lives and works in California, to return six days later accompanied only by his personal lawyer.

     The Committee's refusal to accept the testimony it requested, and its insistence on serving an unnecessary subpoena to a career FBI agent for the sole purpose of excluding lawyers he asked to accompany him, reflects an unfortunate escalation.  It only delays the provision of

The Honorable Jim Jordan
Page Two

information the Committee purportedly seeks.  We urge the Committee to return to normal order and proceed in a manner that furthers the Committee's ability to obtain information from Mr. Chan while respecting the interests and legal rights of the witness, the FBI, and the Executive Branch.

### The FBI's Strong Record of Accommodation

The Committee first identified Mr. Chan as someone it wished to speak with on March 3, 2023, when it included his name as one of 16 individuals the Committee asked the FBI to "make . . . available for transcribed interviews."  In the intervening months, the FBI has made nine of those individuals available (plus others the Committee has since requested) for 15 voluntary interviews.  In all cases, counsel for the FBI and Department worked with counsel for the Committee to discuss prioritization, scope, and scheduling; and in all cases, government counsel joined our employees when they appeared.  These voluntary appearances by FBI officials, accompanied in each instance by agency counsel, have enabled the Committee to obtain information on a range of topics while avoiding unnecessary conflict.

The Department and the FBI take our oversight obligations seriously, as evidenced by the significant good-faith efforts we have made to satisfy the wide range of oversight requests made of the FBI by the 118th Congress.  Since January, the FBI has received seventeen letters and four subpoenas from this Committee, spanning a multitude of subject matters.  This does not include additional letters from individual Committee Members, or requests from any of the other seven Congressional committees of jurisdiction over the FBI and our operations.

In response to these requests, the FBI has provided a significant amount of information to Congress in the form of document productions, briefings, and testimony.  Indeed, to date the FBI has provided this Committee alone with twenty written responses on thirteen different topics, accompanied by the production of over two thousand pages of classified and unclassified documents on ten separate topics.  The FBI has also testified at two Committee hearings, provided ten briefings by FBI leadership, and has authorized the transcribed interviews of well over a dozen current FBI officials.  These engagements reflect significant efforts by the FBI to balance among the Committee's requests, requests from other congressional committees, and the critical work of carrying out the FBI's mission.

### Participation of Personal and Agency Counsel at the Transcribed Interview

The Committee sought Mr. Chan's testimony as part of its investigation of the FBI's engagements with social media companies.  The FBI has demonstrated its commitment to good-faith cooperation in response to this inquiry, where the Department and FBI are actively producing documents and information in response to the Committee's requests.  This includes a narrative submission and document production on June 21, 2023, and another rolling document production on September 15, 2023.  The FBI has also made multiple witnesses available for transcribed interviews to discuss, *inter alia*, issues directly related to your social media inquiry: on July 17, a former Foreign Influence Task Force (FITF) Section Chief testified for nearly six hours on these precise topics, and on July 19, an Intelligence Analyst in Charge testified for nearly five hours regarding her work at FITF.  Moreover, the Committee has had access to a

transcript of Mr. Chan's nine-hour deposition in the *Missouri v. Biden* civil litigation concerning the very same topic about which the Committee seeks to question him.

It is in this spirit of cooperation that the FBI agreed to an extraordinary accommodation to make Mr. Chan available for a Committee interview.[1] At all times, the Department, FBI, Mr. Chan, and the Committee expected that he would be represented by agency counsel at his appearance. This is true for at least three reasons: first, the Committee's questions involve Mr. Chan's work as a Bureau employee; second, because the Committee directed its original request for Mr. Chan's testimony to the FBI and asked the FBI to make him available; and third, Committee, Department, and FBI counsel have worked for months to schedule voluntary interviews at which agency counsel have uniformly appeared.[2]

The Committee only changed course when it was told that Mr. Chan had asked to be accompanied by his personal counsel in addition to agency counsel. The Committee's assertion that Mr. Chan recently retained counsel because his interests have suddenly diverged from the FBI is false. In reality, Mr. Chan was accompanied by the same personal counsel, Lawrence Berger, along with an attorney from the Department's Civil Division, at Mr. Chan's November 29, 2022 deposition, as the Committee should be aware from the deposition transcript, produced to the Committee in June at DOJ-HJC-SM0000007. It is precisely because of Mr. Berger's prior involvement, as well as the Committee's transparent intention to use Mr. Chan's interview as a "perjury trap," that Mr. Chan insisted on having counsel to represent both the agency's and his personal interests.[3] The Committee's publicity of Mr. Chan, including its public allegations of false testimony, and the personal safety concerns Mr. Chan faces as a result of such publicity, also present potentially significant legal stakes. Given all of this, Mr. Chan's request for one personal lawyer to advise him on these matters is eminently reasonable.

When Mr. Chan informed the Department and FBI that he would be accompanied by one additional attorney—a personal attorney—we updated Committee staff accordingly. Rather than engage productively with Department or FBI counsel, the Committee then began communicating directly with Mr. Chan through a non-public email address—despite knowing that he was represented.[4] Two days went by during which agency counsel followed up with the Committee but received no response. Then, the day before the interview and after Mr. Chan had already

---

[1] Authorizing testimony from a non-supervisory employee is an extraordinary accommodation. *See, e.g.*, Letter from Assistant Attorney General Carlos Uriarte to Hon. Jim Jordan (Jan. 20, 2023); Letter from Acting Assistant Director Christopher Dunham to Hon. Jim Jordan (Mar. 9, 2023) at n.3; Letter from Assistant Attorney General Robert Raben, Office of Legislative Affairs, U.S. Department of Justice to Rep. John Linder, Chairman, Subcommittee on Rules and Organization, House Committee on Rules (Jan. 27, 2000).

[2] Letter from Hon. Jim Jordan to Hon. Christopher A. Wray (Mar. 3, 2023).

[3] *See, e.g.*, Letter from Hon. Jim Jordan to ASAC Chan (Sept. 15, 2023) ("For example, through its investigation, the Committee has uncovered evidence that appears to contradict several statements in your deposition in *Missouri v. Biden*, particularly as they relate to your communications with social media platforms."). *See also*, Tweets from Rep. Jim Jordan ("Internal Facebook docs subpoenaed by @JudiciaryGOP and @Weaponization show Chan LIED under oath during his deposition in the ongoing lawsuit against the Biden Admin for censoring Americans") (Sept. 15, 2023); ("The Facebook Files Part 4. FBI lied about meeting with Big Tech regarding NY Post's Hunter Biden Laptop Story. Internal FB docs reveal that an FBI Special Agent made false statements in testimony about the FBI's role in the suppression of the Hunter Biden laptop story") (Aug. 7, 2023).

[4] In and of itself, Committee counsel's intentional direct contact with a represented party is troubling, including under professional responsibility rules. It should not happen again.

The Honorable Jim Jordan
Page Four

traveled across the country, the Committee informed us that it would not allow both agency and personal counsel to participate, and that the Committee had authorized a subpoena for Mr. Chan.

When the FBI and Department reiterated Mr. Chan's willingness, and our willingness, to proceed with the voluntary interview as scheduled, the Committee failed to provide any meaningful justification for denying Mr. Chan his counsel of choice. Still hopeful that the Committee would ultimately be most interested in obtaining information, and having already traveled across the country from San Francisco, Mr. Chan arrived at Rayburn House Office Building on September 15, accompanied by one Department lawyer, one FBI lawyer, and Mr. Berger. To be clear, the Department and FBI attorneys had been working directly with the Committee to arrange the appearance and their attendance was never questioned until the witness's desire for personal counsel to attend was raised. Rather than attempt to proceed with the interview, the Committee threatened to bar agency counsel from the room and call the Capitol Police. Even after this unnecessary escalation, Mr. Chan and his counsel remained on Capitol grounds in the hopes that his voluntary interview could still proceed.

The pretextual nature of the Committee's suggestion of a conflict between Mr. Chan and the FBI is evident from its lack of factual or legal support, from the long history of agency counsel attending transcribed interviews of agency witnesses in this Congress and many prior, and from the Committee's comfort with agency counsel attending this specific transcribed interview throughout our discussions until it received the update that Mr. Chan would also be accompanied by his personal counsel. Moreover, as the Committee was repeatedly informed, Mr. Chan himself has said he wants to proceed voluntarily with both agency counsel and personal counsel.

### The Committee's Approach Impedes the Accommodation Process

The Committee's only justification for its subpoena is to enforce the Committee's preference that government witnesses choose between representation by personal counsel and agency counsel at voluntary transcribed interviews. The letter accompanying the subpoena describes this preference as a "protocol," but there is no such protocol in House or Committee rules. The long-established practice of negotiating transcribed interviews as an alternative to compelled agency testimony facilitates compromise and the provision of information to Congress by the Executive Branch, and there is ample precedent for agency and personal counsel appearing at transcribed interviews together.

The FBI and Department are aware of no precedent for issuing a subpoena to compel a witness to attend a deposition solely to force a choice between personal and agency counsel. The Committee indicates that "these protocols . . . mirror House rules for conducting a deposition pursuant to a subpoena," but a transcribed interview is not a deposition and there is no House rule or any other written "protocol" under which the Committee purports to be acting. Forcing a government witness to choose between personal and agency counsel is also not consistent with our experience with this Congress or any prior Congress. Certainly, the Department and FBI have never agreed to such a "protocol." This is for good reason: by design, transcribed interviews are more informal proceedings that facilitate information sharing while avoiding unnecessary conflict between the Executive Branch and Congress. They originated in the House Committee on Oversight and Government Reform, whose initial procedures expressly permitted

The Honorable Jim Jordan
Page Five

attendance by both personal and agency counsel.[5] Since their inception, transcribed interviews in this and other committees have routinely included personal and agency counsel.[6] By enabling voluntary testimony by agency witnesses accompanied by agency and in some cases personal counsel, transcribed interviews further the constitutionally mandated accommodation process. The Committee's contrary approach will impede the accommodation process.

Forcing Mr. Chan to choose between government and personal counsel acts to punish him for taking the reasonable step in these circumstances of seeking the counsel of an attorney and does nothing to advance the Committee's legislative interests. The Committee has not, and cannot, articulate how forcing Mr. Chan to choose furthers its investigation, or how this subpoena is justified by any informational need of the Committee.

### Facilitating Accommodation

The Committee now has subpoenaed Mr. Chan to return to D.C. later this week, on a date that counsel made clear before the subpoena was issued Mr. Chan is unavailable due to official international travel. The subpoena will not change the need for appropriate legal representation or the scope of his testimony. As you know, a subpoena that purports to compel testimony on matters within the scope of an agency employees' official duties, including potentially privileged information, without the presence of agency counsel is without legal effect and cannot constitutionally be enforced.[7] Notwithstanding the Committee's needless escalation and the legal standing of its subpoena, however, the FBI is still willing to negotiate in good faith to arrange a voluntary appearance by Mr. Chan, who remains available to testify voluntarily under appropriate conditions. This includes the presence of agency and personal counsel and a date after September 29, including on October 5 or October 12, when Mr. Chan will no longer be on official travel.

To date, fourteen current FBI officials have elected to be accompanied by agency counsel at their transcribed interviews before the Committee. Over time, and in each case, the FBI and

---

[5] Procedures During Transcribed Interviews, H. Comm. on Oversight and Gov. Reform (110th Cong.), *available at* https://drive.google.com/file/d/11Jlgvs1QIa-MJwh2uFq7brYPbi2wA5Ox/view.

[6] *See, e.g.*, Interview of Lisa Page, H. Comm. on the Judiciary (July 13, 2018), *available at* https://s3.documentcloud.org/documents/5766407/Lisa-Page-Interview-Day-1.pdf; Interview of James A. Baker, H. Comm. on the Judiciary & H. Comm. on Government Reform and Oversight (Oct. 3, 2018), *available at* https://s3.documentcloud.org/documents/5805759/Baker-Transcript.pdf; Interview of Supervisory Special Agent 1, S. Comm. on the Judiciary (Aug. 27, 2020), *available at* https://www.judiciary.senate.gov/imo/media/doc/Supervisory%20Special%20Agent%201%20Redacted%20FINAL.pdf; Interview of Case Agent 1, S. Comm. on the Judiciary (Sept. 25, 2020), *available at* https://www.judiciary.senate.gov/imo/media/doc/Case%20Agent%201%20redacted%20transcript%20FINAL.pdf; Interview of General Walter Piatt, H. Select Comm. To Investigate Jan. 6 (Nov 3, 2021), *available at* https://perma.cc/GNB7-M77H; Interview of Chris Krebs, H. Comm. To Investigate Jan. 6 (Dec. 9, 2021*), available at:* https://perma.cc/DL2B-Z49Z; Interview of Christopher Charles Miller, H. Select Comm. To Investigate Jan. 6, (Jan. 14, 2022), *available at* https://perma.cc/74D8-SS8Z; Interview of Dr. Robert Kadlec, H. Comm. On Oversight and Reform, Select Subcomm. on the Coronavirus Crisis (May 19, 2022), *available at* https://coronavirus-democrats-oversight.house.gov/sites/democrats.coronavirus.house.gov/files/2022.05.19%20SSCC%20Transcribed%20Interview%20of%20Dr%20Kadlec%20-%20Redacted.pdf.

[7] *Attempted Exclusion of Agency Counsel from Congressional Depositions of Agency Employees*, 43 Op. O.L.C. __, at *2, *19 (May 23, 2019).

The Honorable Jim Jordan
Page Six

Department have worked with the Committee to negotiate conditions and reach accommodations about schedule, scope, timing, and modalities. Where either side has expressed strong interest in certain conditions, we have worked together to negotiate a reasonable resolution.

For example, in a genuine effort to facilitate these interviews, which we understand to be a key priority of the Committee, we agreed to accommodate on a case-by-case basis the Committee's newly announced preference that witnesses be accompanied by only two attorneys, with the express position that we may need to revisit the issue if the circumstances warranted.[8] Thus, when Mr. Chan asked to add his personal counsel to the list of individuals attending his transcribed interview, the FBI and Department contacted the Committee to discuss an accommodation.

We hope and expect to continue this record of accommodation into the future. Where the Committee can express a reasonable basis for a transcribed interview condition, the FBI and Department will work to accommodate it. We will also insist on certain well-established conditions for our participation in light of our own reasonable interests, such as the participation of agency counsel, the option to include personal counsel, safeguards to protect employee privacy and sensitive information, and the opportunity to review transcripts for accuracy and sensitivity before their contents are released. By working together to proceed under reasonable conditions, the Committee can advance its legislative oversight interests while respecting the FBI and Department's corresponding interests. Moreover, finding ways to make progress is essential to correct the signal the Committee has sent that good-faith efforts to accommodate will be met by unnecessary escalation and publicity.

As described above, in accordance with the constitutionally mandated and mutually applicable accommodation process, the FBI has been working in this and numerous oversight contexts to accommodate congressional information needs in a manner consistent with the constitutional and statutory responsibilities of the Executive Branch. As President Reagan explained in his 1982 directive regarding congressional requests for information, "the tradition of accommodation should continue as the primary means of resolving conflicts between the Branches."[9] The Constitution 'contemplates such accommodation' and requires each Branch to engage in a 'realistic evaluation of [one another's] needs.'"[10] Throughout the accommodation process, the FBI has endeavored to explain to the Committee our responsibilities to protect Executive Branch authorities and confidentiality interests so you may also meet your respective obligations to engage in a "realistic evaluation of" Executive Branch needs so that we work together to achieve an appropriate "optimal accommodation."[11] We hope that by doing so here,

---

[8] There is no basis in House or Committee rules for the Committee's expressed preference that witnesses appearing at voluntary transcribed interviews be accompanied by only two attorneys. Although the FBI and Department have abided by this preference as a matter of comity, we do not agree that such arbitrary limits are acceptable, particularly given the large number of congressional counsel, professional staff, and interns who have routinely attended the Committee's transcribed interviews this Congress. We also understand that non-governmental witnesses have routinely appeared for voluntary transcribed interviews before the Committee this Congress with more than two attorneys.

[9] *See Memorandum for Heads of Executive Agencies: Procedures Governing Responses to Congressional Requests for Information* (Nov. 4, 1982)

[10] *See United States v. AT&T*, 567 F.2d 121, 127, 130 (D.C. Cir. 1997).

[11] *See id.* at 127.

The Honorable Jim Jordan
Page Seven

we will be able to resolve this issue in a manner that will allow the interview of Mr. Chan to proceed on a voluntary basis—just as we have with every other Department witness who has appeared before the Committee during this Congress.

Sincerely,

Christopher Dunham
Acting Assistant Director

cc:     The Honorable Jerrold L. Nadler
        Ranking Member