## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COMMITTEE ON THE JUDICIARY,
UNITED STATES HOUSE OF
REPRESENTATIVES,

2138 Rayburn House Office Building
Washington, D.C. 20515,

*Plaintiff*,

v.

ELVIS CHAN, in his official capacity as
Assistant Special Agent of the Federal
Bureau of Investigation,

450 Golden Gate Ave.
San Francisco, CA 94102,

*Defendant*.

Case No. 1:24-cv-344

# Exhibit O

**MAHON & BERGER ESQS.**
Attorneys at Law

*Lawrence Berger, Esq.*
*Kathleen Mahon, Esq. (Deceased)*
*Luciano Cerasi, Esq., Of Counsel*
*Georgia Deplas, Esq.*

September 29, 2023

The Honorable Jim Jordan
Congress of the United States House of Representatives
Committee on the Judiciary
2138 Rayburn House Office Building
Washington, D.C. 20515-6216

Re:     FBI Assistant Special Agent in Charge (ASAC) Elvis Chan

Dear Representative Jordan:

As the Committee on the Judiciary (Committee) is aware, I am the private attorney for ASAC

Chan and, on his behalf, acknowledge receipt of a subpoena, dated September 21, 2023, issued by the

House of Representatives of the Congress of the United States, seeking to compel testimony from ASAC

Chan "touching matters of inquiry committed" to the Committee.  In the letter transmitting the

Subpoena to my office, of even date with the Subpoena, the stated purpose for compelling ASAC Chan's

testimony, in lieu of a voluntary appearance for a "deposition," or transcribed interview before

Committee staff, is an unwarranted claim that ASAC Chan failed "to appear for [his] scheduled

transcribed interview on September 15, 2023."

I take this opportunity to clarify the record in this proceeding concerning ASAC Chan's choice of

counsel, in order to avoid any misunderstanding between the Committee and ASAC Chan.  ASAC Chan

did not fail to appear for his scheduled voluntary transcribed interview on September 15, 2023, but

rather was present in the Rayburn House Office Building, ready, willing and able to participate in the

interview accompanied by myself as his private counsel, who owes duties to ASAC Chan himself, and

agency counsel, who represent the interests of the FBI and the Department of Justice (DOJ), that is, the

Executive Branch.  Although ASAC Chan was present at the appointed place and time for the scheduled

*70 Glen Street Suite 395*
*Glen Cove, NY 11542*
████ *@LBFedLaw.com*

516-████
Fax: 516-████

interview, it was apparent to me, as well as ASAC Chan and agency counsel that the Committee insisted that agency counsel could not attend ASAC Chan's deposition if he desired private counsel to attend. Alternatively, the Committee informed ASAC Chan that if he desired agency counsel to attend, his private counsel would be barred from the deposition.  This imposed choice of counsel was properly unacceptable to ASAC Chan, and his decision not to attend the deposition was based exclusively on this unjustified restriction.  The act of restricting ASAC Chan from choosing counsel of his choice to accompany him to the deposition, appears to be an unjustified encroachment by the Committee on the privileges and prerogatives of the Executive Branch.

On behalf of ASAC Chan, in connection with the deposition now scheduled for October 5, 2023, he unequivocally states that he will appear (quite voluntarily) **only** with the assistance of **both** private counsel **and** agency counsel.

As I understand the issue, does the Committee have oversight authority to compel an agency witness to appear at a staff deposition and answer questions without the assistance of agency counsel? It is not entirely clear to me or to ASAC Chan exactly what oversight authority is invoked by the Committee to bar agency counsel from the proceeding if private counsel attends.  The Committee vaguely cites "House" protocols which "include that a witness for a transcribed interview has a choice of being represented by either agency counsel or personal counsel, but not both."  (See September 15, 2023 letter to ASAC Chan from Chairman Jordan, p. 2).  However, there is no further particularization in this record of the actual protocol at issue, where published, if at all, and its text.  One can only conclude that the protocol is discretionary on the part of the Committee Chairman, with no particularized substantive parameters preventing the arbitrary exercise of discretion.

2

It would appear to be constitutionally infirm to bar agency counsel from accompanying ASAC Chan who is called to testify on matters within the scope of official business.  ASAC Chan, while testifying about his official activities may be asked to disclose confidential information.  Yet both myself as private counsel as well as ASAC Chan may lack the expertise necessary to protect privileged information wholly on our own.

To be clear, it is not my obligation as private counsel to recognize all situations raising issues of executive privilege, classified information, and other information protected from disclosure.  My obligation as private counsel is to protect the personal interests of ASAC Chan, not the interests of the Executive Branch.  Agency counsel, "by contrast, is charged with protecting the Executive Branch's interests during a deposition – ensuring that the information the employee provides to Congress is accurate, complete, and within the proper scope, and that privileged information is not disclosed.  The Committee's rule prohibiting agency counsel from accompanying an agency employee to a deposition would effectively, and unconstitutionally, require that employee to report directly to Congress on behalf of the Executive Branch, without an adequate opportunity for review by an authorized representative of the Executive Branch."  *See generally "Memorandum Opinion for the Attorney General and the Counsel to the President,"* dated May 13, 2019, p. 13 (Captioned: "Attempted Exclusion of Agency Counsel from Congressional Depositions of Agency Employees"), and the authorities cited within attached as Exhibit A (Attorney General Memorandum).  *See also United States et rel Touhy v. Ragen*, 340 U.S. 462, 467-468 (1951) (upholding "a refusal by a subordinate of the Department of Justice to submit papers to the court in response to its subpoena *duces tecum* on the ground that the subordinate is prohibited from making such submission" by a valid order by Attorney General).

3

The Supreme Court emphasized in *Touhy* that the "head of an agency may properly bar subordinate officials from disclosing privileged agency information, and departments have accordingly enacted so-called *Touhy* regulations to ensure that privileged information is appropriately protected by agency officials in civil discovery.  See, e.g., 28 C.F.R. § 16.21-16.29 (Department of Justice *Touhy* regulations).  Just as agency counsel may properly participate in ensuring appropriate disclosures in depositions in civil litigation, agency counsel may properly do so in Congressional depositions." Attorney General Memorandum, p. 17, n. 4 attached as Exhibit A.

Perhaps the issue of the outer boundaries of the Committee's authority to compel testimony of agency witnesses regarding official business without assistance of agency counsel, giving proper respect to the interests of the Executive Branch deserves a more comprehensive analysis.  Nevertheless, ASAC Chan intends to comply with the Committee's oversight process voluntarily, on October 5, 2023 or on another designated date, with the assistance of both private and agency counsel.

Thank you for your anticipated courtesies in this matter.

Respectfully submitted,

Lawrence Berger

4

# EXHIBIT A

(Slip Opinion)

# Attempted Exclusion of Agency Counsel from Congressional Depositions of Agency Employees

Congress may not constitutionally prohibit agency counsel from accompanying agency employees called to testify about matters that potentially involve information protected by executive privilege. Such a prohibition would impair the President's constitutional authority to control the disclosure of privileged information and to supervise the Executive Branch's communications with Congress.

Congressional subpoenas that purport to require agency employees to appear without agency counsel are legally invalid and are not subject to civil or criminal enforcement.

May 23, 2019

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL
AND THE COUNSEL TO THE PRESIDENT

On April 2, 2019, the House Committee on Oversight and Reform (the "Committee") issued subpoenas seeking to compel testimony in two separate investigations from two witnesses: John Gore, Principal Deputy Assistant Attorney General for the Department's Civil Rights Division, and Carl Kline, the former head of the White House Personnel Security Office. The Committee sought to question both witnesses about matters that potentially involved communications that were protected by executive privilege. Although the Committee's Rule 15(e) permitted the witnesses to be accompanied at the depositions by private counsel, who would owe duties to the witnesses themselves, the rule purported to bar the presence of agency counsel, who would represent the interests of the Executive Branch.[1] Despite some efforts at accommodation on both sides, the Committee continued to insist that agency counsel could not attend the witnesses' depositions. In response to your requests, we advised that a congressional committee may not constitutionally compel an executive branch witness to testify about potentially privileged matters while depriving the witness of the assistance of agency counsel. Based upon our advice, Mr. Gore and Mr. Kline were directed not to appear at their depo-

---

[1] Tracking the text of the Committee's rule, which excludes "counsel . . . for agencies," we speak in this opinion of "agency counsel," but our analysis applies equally to all counsel representing the interests of the Executive Branch, no matter whether the witness works for an "agency," as defined by statute. *See, e.g., Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 156 (1980) (holding that the Office of the President is not an "agency" for purposes of the Freedom of Information Act).

1

sitions without agency counsel. This memorandum explains the basis for our conclusions.

When this issue last arose, during the Obama Administration, this Office recognized "constitutional concerns" with the exclusion of agency counsel, because such a rule "could potentially undermine the Executive Branch's ability to protect its confidentiality interests in the course of the constitutionally mandated accommodation process, as well as the President's constitutional authority to consider and assert executive privilege where appropriate." *Authority of the Department of Health and Human Services to Pay for Private Counsel to Represent an Employee Before Congressional Committees*, 41 Op. O.L.C. __, *5 n.6 (Jan. 18, 2017) ("*Authority to Pay for Private Counsel*"). This Office, however, was asked to address only the retention of private counsel for a deposition and thus did not evaluate these constitutional concerns.

Faced squarely with the constitutional question here, we concluded that Congress may not compel an executive branch witness to appear without agency counsel and thereby compromise the President's constitutional authority to control the disclosure of privileged information and to supervise the Executive Branch's communications with congressional entities. The "Executive Branch's longstanding general practice has been for agency attorneys to accompany" agency employees who are questioned by congressional committees conducting oversight inquiries. *Id.* at *3. When an agency employee is asked to testify about matters within the scope of his official duties, he is necessarily asked to provide agency information. The agency must have the ability to protect relevant privileges and to ensure that any information provided on its behalf is accurate, complete, and properly limited in scope. Although private counsel may indirectly assist the employee in protecting privileged information, counsel's obligation is to protect the personal interests of the employee, not the interests of the Executive Branch. The Committee, therefore, could not constitutionally bar agency counsel from accompanying agency employees called to testify on matters within the scope of their official duties. In light of this constitutional infirmity, we advised that the Committee subpoenas purporting to require the witnesses to appear without agency counsel were legally invalid and not subject to civil or criminal enforcement.

## I.

Congress generally obtains the information necessary to perform its legislative functions by making requests and issuing subpoenas for docu-

ments and testimony through its organized committees. *See, e.g.*, *Barenblatt v. United States*, 360 U.S. 109, 116 (1959); *Watkins v. United States*, 354 U.S. 178, 187–88 (1957). Committees typically seek the information they need from the Executive Branch first by requesting documents and sometimes voluntary interviews. Following such requests, a committee may proceed with a hearing at which Members of Congress ask questions of the witness, and such a hearing is usually open to the public. When executive branch employees appear—either at a voluntary interview or a hearing—agency counsel or another agency representative traditionally accompany them. *See, e.g.*, *Representation of White House Employees*, 4B Op. O.L.C. 749, 754 (1980).

Congressional committees have only rarely attempted to collect information by compelling depositions conducted by committee staff. *See* Jay R. Shampansky, Cong. Research Serv., 95-949 A, *Staff Depositions in Congressional Investigations* 1–2 & n.3 (updated Dec. 3, 1999) ("*Staff Depositions*"). Historically, these efforts were confined to specific investigations that were limited in scope. *See, e.g.*, *Inquiry into the Matter of Billy Carter and Libya: Hearings Before the Subcomm. to Investigate the Activities of Individuals Representing the Interests of Foreign Governments of the S. Comm. on the Judiciary*, 96th Cong. 1708–10, 1718–27, 1742 (1980) (discussing issues related to Senate resolution authorizing depositions by staff members). Recently, however, committees have made increasing use of depositions, and the House of Representatives has adopted an order in the current Congress that permits depositions to go forward without the presence of any Member of Congress. *See* H. Res. 6, 116th Cong. § 103(a)(1) (2019).

Although executive branch witnesses have sometimes appeared and testified at staff depositions, the Executive Branch has frequently objected to the taking of compelled testimony by congressional staff members. These objections have questioned whether committees may properly authorize staff to depose senior executive officials, whether Members of Congress must be present during a committee deposition, and whether the procedures for such depositions adequately protect the President's ability to protect privileged executive branch information. *See, e.g.*, H. Comm. on International Relations, 104th Cong., Final Report of the Select Subcommittee to Investigate the United States Role in Iranian Arms Transfers to Croatia and Bosnia 54–56 (Comm. Print 1997) (summarizing the White House's position that its officials would not "be allowed to sit for staff depositions, because to do so would intrude upon the President's 'deliberative process'"); *see also* Letter for Henry Waxman, Chairman, Commit-

3

tee on Oversight and Government Reform, U.S. House of Representatives, from Dinah Bear, General Counsel, Council on Environmental Quality at 1 (Mar. 12, 2007) ("Allowing Committee staff to depose Executive Branch representatives on the record would be an extraordinary formalization of the congressional oversight process and would give unelected staff powers and authorities historically exercised only by Members of Congress participating in a public hearing."); Letter for Henry A. Waxman, Chairman, Committee on Oversight and Government Reform, U.S. House of Representatives, from Stephanie Daigle, Associate Administrator, U.S. Environmental Protection Agency at 2 (Apr. 12, 2007) ("[T]he use of formal interviews by Committee counsel, transcribed by a court reporter, rather than the customary informal briefings, have the potential to be overly adversarial and to intimidate Agency staff."). No court has addressed whether Congress may use its oversight authority to compel witnesses to appear at staff depositions conducted outside the presence of any Member of Congress. Courts have recognized, however, that Congress's ability to "delegate the exercise of the subpoena power is not lightly to be inferred" because it is "capable of oppressive use." *Shelton v. United States*, 327 F.2d 601, 606 n.14 (D.C. Cir. 1963); *cf. United States v. Bryan*, 339 U.S. 323, 332 (1950) (concluding, in the context of a criminal contempt-of-Congress citation, that "respondent could rightfully have demanded attendance of a quorum of the Committee and declined to testify or to produce documents so long as a quorum was not present").

The question we address here arose out of the Committee's effort to compel two executive branch witnesses, Mr. Gore and Mr. Kline, to appear at depositions subject to the restrictions of Committee Rule 15(e). In relevant part, Rule 15(e) provides as follows:

> No one may be present at depositions except members, committee staff designated by the Chair of the Committee or the Ranking Minority Member of the Committee, an official reporter, the witness, and the witness's counsel. Observers or counsel for other persons, or for agencies under investigation, may not attend.

H. Comm. on Oversight & Reform, 116th Cong., Rule 15(e). In both instances, the Committee sought executive branch information, including matters that implicated executive privilege, but it asserted the authority to compel the witness to answer questions without the assistance of agency counsel. We summarize here the efforts at accommodation made by the Executive Branch and the Committee in connection with the disputes.

## A.

The Committee subpoenaed Mr. Gore to testify about privileged matters concerning the Secretary of Commerce's decision to include a citizenship question on the 2020 United States Census. On March 7, 2019, Mr. Gore voluntarily appeared before the Committee, with the assistance of Department counsel, for a transcribed interview on the same topic. Mr. Gore answered all of the Committee's questions, except for those that were determined by Department counsel to concern confidential deliberations within the Executive Branch. The Department's interest in protecting this subject matter was particularly acute because the Secretary of Commerce's decision was subject to active litigation, and those challenges were pending in the Supreme Court. *See Dep't of Commerce v. New York*, No. 18-966 (U.S.) (argued Apr. 23, 2019). Some of the information sought by the Committee had previously been held by a federal district court to be protected by the deliberative process privilege, as well as other privileges, in civil discovery.

On April 2, the Committee served Mr. Gore with a deposition subpoena in an effort to compel responses to the questions that he did not answer during his March 7 interview. Committee staff advised that Committee Rule 15(e) required the exclusion of the agency counsel who had previously represented Mr. Gore. On April 9, the Department explained that the Committee's effort to bar Department counsel would unconstitutionally infringe upon the prerogatives of the Executive Branch. *See* Letter for Elijah E. Cummings, Chairman, Committee on Oversight and Reform, U.S. House of Representatives, from Stephen E. Boyd, Assistant Attorney General, Office of Legislative Affairs at 2–3 (Apr. 9, 2019). Because the Committee sought information from Mr. Gore relating to his official duties, the Department explained that agency counsel must be present to ensure appropriate limits to Mr. Gore's questioning, to ensure the accuracy and completeness of information provided on behalf of the Department, and to ensure that a Department official was not pressed into revealing privileged information. *Id.* The Attorney General determined that Mr. Gore would not appear at the deposition without the assistance of Department counsel. *Id.* at 3.

On April 10, 2019, the Committee responded by disputing the Department's constitutional view, contending that Committee Rule 15(e) had been in place for more than a decade and reflected an appropriate exercise of Congress's authority to determine the rules of its own proceedings. *See* Letter for William P. Barr, Attorney General, from Elijah E. Cummings,

Chairman, Committee on Oversight and Reform, U.S. House of Repre-
sentatives at 2–3 (Apr. 10, 2019) ("April 10 Cummings Letter") (citing
U.S. Const. art. I, § 5, cl. 2). The Committee advised that Mr. Gore could
be accompanied by his private counsel, *id.* at 2, and offered to allow
Department counsel to wait in a separate room during the deposition, *id.*
at 3. The Committee stated that, if necessary, Mr. Gore could request a
break during the deposition to consult with Department counsel. *Id.*

On April 24, 2019, the Department reiterated its constitutional objec-
tion and explained that the Committee's proposed accommodation would
not satisfy the Department's need to have agency counsel assist Mr. Gore
at the deposition. *See* Letter for Elijah E. Cummings, Chairman, Commit-
tee on Oversight and Reform, U.S. House of Representatives, from Ste-
phen E. Boyd, Assistant Attorney General, Office of Legislative Affairs
at 1 (Apr. 24, 2019). Mr. Gore therefore did not appear on the noticed
deposition date.

### B.

The Committee subpoenaed Mr. Kline to testify concerning the activi-
ties of the White House Personnel Security Office in adjudicating security
clearances during his time as head of the Office. On March 20, 2019, the
current White House Chief Security Officer, with representation by the
Office of Counsel to the President ("Counsel's Office"), briefed the
Committee's staff on the White House security clearance process for
nearly 90 minutes and answered questions from a Member of Congress
and staff. On April 1, 2019, the White House offered to have Mr. Kline
appear voluntarily before the Committee for a transcribed interview.

Instead, the Committee subpoenaed Mr. Kline on April 2, 2019. The
Committee indicated that Committee Rule 15(e) would bar any repre-
sentative from the Counsel's Office from attending Mr. Kline's deposi-
tion. On April 18, 2019, the Counsel's Office advised the Committee that
a representative from that office must attend to represent the White
House's interests in any deposition of Mr. Kline. *See* Letter for Elijah E.
Cummings, Chairman, Committee on Oversight and Reform, U.S. House
of Representatives, from Michael M. Purpura, Deputy Counsel to the
President at 2 (Apr. 18, 2019). The Counsel's Office relied on the views
concerning the exclusion of agency counsel that were articulated by the
Department in its April 9, 2019 letter to the Committee. *Id.* The Counsel's
Office explained that the President has the authority to raise privilege

concerns at any point during a deposition, and that this could occur only if an attorney from the Counsel's Office accompanied Mr. Kline. *Id.*

On April 22, 2019, the Committee responded, stating, as it had in correspondence concerning Mr. Gore, that its rules were justified based upon Congress's constitutional authority to determine the rules of its proceedings. *See* U.S. Const. art. I, § 5, cl. 2. The Committee asserted that Committee Rule 15(e) had been enforced under multiple chairmen. *See* Letter for Pat Cipollone, Counsel to the President, from Elijah E. Cummings, Chairman, Committee on Oversight and Reform, U.S. House of Representatives at 3 (Apr. 22, 2019) ("April 22 Cummings Letter"). The Committee advised that Mr. Kline could be accompanied by his private counsel, and, as with Mr. Gore, offered to permit attorneys from the Counsel's Office to wait outside the deposition room in case Mr. Kline requested to consult with them during the deposition. *Id.*

In an April 22, 2019 reply, the Counsel's Office explained that, in light of the Committee's decision to apply Rule 15(e), the Acting Chief of Staff to the President had directed Mr. Kline not to attend the deposition for the reasons stated in the April 18, 2019 letter. *See* Letter for Elijah Cummings, Chairman, Committee on Oversight and Reform, U.S. House of Representatives, from Michael M. Purpura, Deputy Counsel to the President at 1 (Apr. 22, 2019). The Committee and the Counsel's Office subsequently agreed to a voluntary transcribed interview of Mr. Kline with the participation of the Counsel's Office. Mr. Kline was interviewed on May 1, 2019. He answered some of the Committee's questions, but at the direction of the representative from the Counsel's Office, he did not address particular matters implicating privileged information.

## II.

Under our constitutional separation of powers, both Congress and the Executive Branch must respect the legitimate prerogatives of the other branch. *See, e.g.*, *INS v. Chadha*, 462 U.S. 919, 951 (1983) ("The hydraulic pressure inherent within each of the separate Branches to exceed the outer limits of its power, even to accomplish desirable objectives, must be resisted."); *United States v. Am. Tel. & Tel. Co.*, 567 F.2d 121, 127, 130–31 (D.C. Cir. 1977) ("[E]ach branch should take cognizance of an implicit constitutional mandate to seek optimal accommodation through a realistic evaluation of the needs of the conflicting branches in the particular fact situation."). Here, the Committee sought to apply Committee Rule 15(e) to compel executive branch officials to testify about poten-

tially privileged matters while barring agency counsel from the room. We concluded that the Committee could not constitutionally compel such an appearance for two reasons. First, the exclusion of agency counsel impairs the President's ability to exercise his constitutional authority to control privileged information of the Executive Branch. Second, the exclusion undermines the President's ability to exercise his constitutional authority to supervise the Executive Branch's interactions with Congress.

## A.

Committee Rule 15(e) unconstitutionally interferes with the President's right to control the disclosure of privileged information. Both the Supreme Court and this Office have long recognized the President's "constitutional authority to protect national security and other privileged information" in the exercise of the President's Article II powers. *Authority of Agency Officials to Prohibit Employees from Providing Information to Congress*, 28 Op. O.L.C. 79, 80 (2004) ("*Authority of Agency Officials*"); *see Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988) (the President's "authority to classify and control access to information bearing on national security . . . flows primarily from this constitutional investment of power in the President [as Commander in Chief] and exists quite apart from any explicit congressional grant"); *United States v. Nixon*, 418 U.S. 683, 705–06 (1974) ("Certain powers and privileges flow from the nature of enumerated powers; the protection of the confidentiality of Presidential communications has similar constitutional underpinnings."). That authority is "not limited to classified information, but extend[s] to *all* . . . information protected by [executive] privilege," including presidential and attorney-client communications, attorney work product, deliberative process information, law enforcement files, and national security and foreign affairs information. *Authority of Agency Officials*, 28 Op. O.L.C. at 81 (emphasis added).[2] Protection of such information is "fundamental to the operation of Government and inextri-

---

[2] Although some of these components, such as deliberative process information, parallel aspects of common law privileges, each falls within the doctrine of executive privilege. *See, e.g., Whistleblower Protections for Classified Disclosures*, 22 Op. O.L.C. 92, 101–102 n.34 (1998); *Assertion of Executive Privilege Regarding White House Counsel's Office Documents*, 20 Op. O.L.C. 2, 3 (1996) (opinion of Attorney General Janet Reno) (observing that "[e]xecutive privilege applies" to certain White House documents "because of their deliberative nature, and because they fall within the scope of the attorney-client privilege and the work-product doctrine").

cably rooted in the separation of powers under the Constitution." *Nixon*, 418 U.S. at 708. It ensures that "high Government officials and those who advise and assist them in the performance of their manifold duties" can engage in full and candid decisionmaking, *id.* at 705, 708, and it is necessary to protect sensitive security and other information that could be used to the public's detriment.

The President may protect such privileged information from disclosure in the Executive's responses to congressional oversight proceedings. *See Senate Select Comm. on Presidential Campaign Activities v. Nixon*, 498 F.2d 725, 731 (D.C. Cir. 1974). As we have explained, "[i]n the congressional oversight context, as in all others, the decision whether and under what circumstances to disclose classified information" or other forms of privileged information "must be made by someone who is acting on the official authority of the President and who is ultimately responsible to the President." *Whistleblower Protections for Classified Disclosures*, 22 Op. O.L.C. 92, 100 (1998) ("*Whistleblower Protections*"). Thus, "'Congress may not vest lower-ranking personnel in the Executive branch with a "right" to furnish national security or other privileged information to a member of Congress without receiving official authorization to do so.'" *Authority of Agency Officials*, 28 Op. O.L.C. at 80 (quoting March 9, 1998 Statement of Administration Policy on S. 1668, 105th Cong.); *see Constitutionality of the Direct Reporting Requirement in Section 802(e)(1) of the Implementing Recommendations of the 9/11 Commission Act of 2007*, 32 Op. O.L.C. 27, 43 (2008) ("*Direct Reporting Requirement*") ("We have long concluded that statutory provisions that purport to authorize Executive Branch officers to communicate directly with Congress without appropriate supervision . . . infringe upon the President's constitutional authority to protect against the unauthorized disclosure of constitutionally privileged information."). Because "statutes may not override the constitutional doctrine of executive privilege," they may not "prohibit the supervision of the disclosure of any privileged information, be it classified, deliberative process or other privileged material." *Authority of Agency Officials*, 28 Op. O.L.C. at 81. It necessarily follows that congressional committees' rules of procedure may not be used to override privilege or the Executive's ability to supervise the disclosure of privileged information.

The foregoing principles governed our analysis here. In order to control the disclosure of privileged information, the President must have the discretion to designate a representative of the government to protect this interest at congressional depositions of agency employees. When employ-

ees testify about information created or received during their employment, they are disclosing the Executive Branch's information. The same thing is true for former employees.[3] Yet, in many cases, agency employees will have only limited experience with executive privilege and may not have the necessary legal expertise to determine whether a question implicates a protected privilege. Moreover, the employees' personal interests in avoiding a conflict with the committee may not track the longer-term interests of the Executive Branch. Without an agency representative at the deposition to evaluate which questions implicate executive privilege, an employee may be pressed—wittingly or unwittingly—into revealing protected information such as internal deliberations, attorney-client communications, or national security information. *See Nixon*, 418 U.S. at 705–06; *Senate Select Comm.*, 498 F.2d at 731. Or the agency employee may be pressed into responding to inquiries that are beyond the scope of Congress's oversight authority. *See Barenblatt*, 360 U.S. at 111–12 ("Congress may only investigate into those areas in which it may potentially legislate or appropriate [and] cannot inquire into matters which are within the exclusive province of one of the other branches of the Government.").

Even if the President has not yet asserted a particular privilege, excluding agency counsel would diminish the President's ability to decide whether a privilege should be asserted. The Executive Branch cannot foresee every question or topic that may arise during a deposition, but if questions seeking privileged information are asked, agency counsel, if present, can ensure that the employee does not impermissibly disclose privileged information. *See* Memorandum for Rudolph W. Giuliani, Associate Attorney General, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Congressional Demand for Deposition of Counsel to the President Fred F. Fielding* at 2 (July 23, 1982) ("A witness before a Congressional committee may be asked—under threat of contempt—a wide range of unanticipated questions about highly sensitive deliberations and thought processes. He therefore may be unable to confine his remarks only to those which do not impair the deliberative process."). The President, through his subordinates, must be able to intervene *before* that information is disclosed, lest the effectiveness of the

---

[3] *See, e.g., Assertion of Executive Privilege Concerning the Dismissal and Replacement of U.S. Attorneys*, 31 Op. O.L.C. 1 (2007) (opinion of Acting Attorney General Paul D. Clement) (concluding that the President may assert executive privilege with respect to testimony by two former White House officials).

privilege be diminished. *See* Memorandum for Peter J. Wallison, Counsel to the President, from Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel at 2 (Sept. 8, 1986) (agency counsel attending congressional interviews can advise "about the sensitivity of particular information and, if need be, to terminate the interview to avoid disclosure of privileged information"). Accordingly, Committee Rule 15(e) unduly interferes with the President's supervision of the disclosure of privileged information by barring agency counsel from the deposition of an agency employee concerning official activities.

These concerns were readily apparent in connection with the subpoenas of Mr. Gore and Mr. Kline. In both instances, the Committee sought information about communications among senior executive branch officials regarding official decisions. There was no doubt that the depositions would implicate matters in which the Executive Branch had constitutionally based confidentiality interests. Indeed, in Mr. Gore's March 7 interview, the Committee repeatedly asked him questions concerning potentially privileged matters—some of which a federal court had already held were protected by privilege in civil discovery. *See New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 548 n.19 (S.D.N.Y. 2019) (summarizing discovery orders). And the Committee then noticed the deposition precisely to compel answers to such questions. *See* April 10 Cummings Letter at 3 ("The Department is well aware of the scope of the deposition, based on the issues raised at Mr. Gore's March 7 interview and the list of 18 [previously unanswered] questions provided by Committee staff."). In Mr. Kline's May 1 interview, the witness was similarly instructed not to answer a number of questions implicating the Executive Branch's confidentiality interests. Prohibiting agency counsel from attending the depositions would have substantially impaired the Executive Branch's ability to continue to protect such privileged information and to make similar confidentiality determinations in response to new questions. The Committee's demands that the witnesses address questions already deemed unanswerable by agency counsel indicated that the exclusion of agency counsel would have been intended, in no small part, to circumvent executive branch mechanisms for preserving confidentiality.

## B.

Committee Rule 15(e) also interferes with the President's authority to supervise the Executive Branch's interactions with Congress. The Constitution vests "[t]he executive Power" in the President, U.S. Const.

11

art. II, § 1, cl. 1, and requires him to "take Care that the Laws be faithfully executed," *id.* § 3. This power and responsibility grant the President the "constitutional authority to supervise and control the activity of subordinate officials within the executive branch." *The Legal Significance of Presidential Signing Statements*, 17 Op. O.L.C. 131, 132 (1993) (citing *Franklin v. Massachusetts*, 505 U.S. 788, 800 (1992)); *see also Constitutionality of Statute Requiring Executive Agency to Report Directly to Congress*, 6 Op. O.L.C. 632, 637 (1982) ("*Constitutionality of Reporting Statute*"). As we have previously explained, "'the right of the President to protect his control over the Executive Branch [is] based on the fundamental principle that the President's relationship with his subordinates must be free from certain types of interference from the coordinate branches of government in order to permit the President effectively to carry out his constitutionally assigned responsibilities.'" *Authority of HUD's Chief Financial Officer to Submit Final Reports on Violations of Appropriations Laws*, 28 Op. O.L.C. 248, 252 (2004) ("*Authority of HUD's CFO*") (quoting *Constitutionality of Reporting Statute*, 6 Op. O.L.C. at 638–39).

The President's authority to supervise his subordinates in the Executive Branch includes the power to control communications with, and information provided to, Congress on behalf of the Executive Branch. *See Direct Reporting Requirement*, 32 Op. O.L.C. at 31, 39; *Authority of Agency Officials*, 28 Op. O.L.C. at 80–81; *cf. United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 467–68 (1951) (upholding "a refusal by a subordinate of the Department of Justice to submit papers to the court in response to its subpoena *duces tecum* on the ground that the subordinate [wa]s prohibited from making such submission by" a valid order of the Attorney General). At a minimum, this responsibility includes the power to know about, and assert authority over, the disclosures his subordinates make to Congress regarding their official duties.

Congressional efforts to prevent the President from supervising the Executive Branch's interactions with Congress interfere with the President's ability to perform his constitutional responsibilities. We have long recognized that statutes, "if construed or enforced to permit Executive Branch officers to communicate directly with Congress without appropriate supervision by the President or his subordinates, would violate the constitutional separation of powers and, specifically, the President's Article II authority to supervise Executive Branch personnel." *Direct Reporting Requirement*, 32 Op. O.L.C. at 31–32, 39 (citing *Authority of the Special Counsel of the Merit Systems Protection Board to Litigate and Submit Legislation to Congress*, 8 Op. O.L.C. 30, 31 (1984); *Authority of HUD's*

*CFO*, 28 Op. O.L.C. at 252–53; *Authority of Agency Officials*, 28 Op. O.L.C. at 80–82). It is on this basis that the Department has consistently resisted congressional attempts to require, by statute, that executive branch officials submit information to Congress in the form of reports without prior opportunity for review by their superiors. *See, e.g., id.* at 34–39 ("[S]tatutory reporting requirements cannot constitutionally be applied to interfere with presidential supervision and control of the communications that Executive Branch officers . . . send to Congress."); *Authority of HUD's CFO*, 28 Op. O.L.C. at 252–53; *Access to Classified Information*, 20 Op. O.L.C. 402, 403–05 (1996); *Inspector General Legislation*, 1 Op. O.L.C. 16, 18 (1977).

Information sought in congressional depositions is no different. An agency employee testifying about official activities may be asked to disclose confidential information, yet the employee may lack the expertise necessary to protect privileged information on his own. Nor will an employee's private counsel always adequately protect such information. Private counsel may not have the expertise to recognize all situations raising issues of executive privilege, and in any event, recognizing such situations and protecting privileged information is not private counsel's job. Private counsel's obligation is to protect the personal interests of the employee, not the interests of the Executive Branch. An agency representative, by contrast, is charged with protecting the Executive Branch's interests during the deposition—ensuring that the information the employee provides to Congress is accurate, complete, and within the proper scope, and that privileged information is not disclosed. The Committee's rule prohibiting agency counsel from accompanying an agency employee to a deposition would effectively, and unconstitutionally, require that employee to report directly to Congress on behalf of the Executive Branch, without an adequate opportunity for review by an authorized representative of the Executive Branch.

## C.

Having concluded that the Committee could not constitutionally bar agency counsel from accompanying Mr. Gore or Mr. Kline to depositions, we further advised that the subpoenas that required them to appear without agency counsel, over the Executive Branch's objections, exceeded the Committee's lawful authority and therefore lacked legal effect. The Committee could not constitutionally compel Mr. Gore or Mr. Kline to appear under such circumstances, and thus the subpoenas could not be

enforced by civil or criminal means or through any inherent contempt power of Congress.

This conclusion is consistent with our treatment of referrals to the Department of contempt-of-Congress citations for criminal prosecution under 2 U.S.C. §§ 192 and 194. We have opined that "the criminal contempt of Congress statute does not apply to the President or presidential subordinates who assert executive privilege." *Application of 28 U.S.C. § 458 to Presidential Appointments of Federal Judges*, 19 Op. O.L.C. 350, 356 (1995); *see also Whether the Department of Justice May Prosecute White House Officials for Contempt of Congress*, 32 Op. O.L.C. 65, 65–69 (2008) (concluding that the Department cannot take "prosecutorial action, with respect to current or former White House officials who . . . declined to appear to testify, in response to subpoenas from a congressional committee, based on the President's assertion of executive privilege"); *Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*, 8 Op. O.L.C. 101, 101–102 (1984) ("*Prosecution for Contempt*") (finding that "the contempt of Congress statute was not intended to apply and could not constitutionally be applied to an Executive Branch official" who followed presidential instructions to "assert[] the President's claim of executive privilege"). Nor may Congress "utilize its inherent 'civil' contempt powers to arrest, bring to trial, and punish an executive official who assert[s] a Presidential claim of executive privilege." *Prosecution for Contempt*, 8 Op. O.L.C. at 140 n.42. The fundamental constitutional principles underlying executive privilege would be vitiated if any executive branch employee following a direction to invoke the privilege could be prosecuted for doing so.

Similarly, we believe it would be unconstitutional to enforce a subpoena against an agency employee who declined to appear before Congress, at the agency's direction, because the committee would not permit an agency representative to accompany him. As discussed above, having an agency representative present at a deposition of an agency employee may be necessary for the President to exercise his authority to supervise the disclosure of privileged information, as well as to ensure that the testimony provided is accurate, complete, and properly limited in scope. Therefore, agency employees, like Mr. Gore and Mr. Kline, who follow an agency instruction not to appear without the presence of an agency representative are acting lawfully to protect the constitutional interests of the Executive Branch.

### III.

In reaching this conclusion, we considered the contrary arguments advanced by the Committee in its April 10 and April 22 letters. The Committee's principal argument was that prohibiting agency counsel from attending depositions of agency employees poses no constitutional concern because Congress has the authority to "determine the Rules of its Proceedings." U.S. Const. art. I, § 5, cl. 2; *see* April 10 Cummings Letter at 2–3; April 22 Cummings Letter at 3. But congressional rulemaking authority "only empowers Congress to bind itself." *Chadha*, 462 U.S. at 955 n.21 (positing that the Constitution's provision of several powers like procedural rulemaking where each House of Congress can act alone reveals "the Framers' intent that Congress not act in any legally binding manner outside a closely circumscribed legislative arena, except in specific and enumerated instances"). Such rulemaking authority does not grant Congress the power to compel testimony from agency officials under circumstances that interfere with the legitimate prerogatives of the Executive Branch.

Congress's authority to make rules governing its own procedures does not mean that the constitutional authorities of a co-equal branch of government are checked at the door. *See Barenblatt*, 360 U.S. at 112 (noting that when engaging in oversight, Congress "must exercise its powers subject to the limitations placed by the Constitution on governmental action"). To the contrary, Congress "may not by its rules ignore constitutional restraints." *United States v. Ballin*, 144 U.S. 1, 5 (1892). Congress may not, by statute, override the President's constitutional authority to control the disclosure of privileged information and to supervise executive branch employees. *See Direct Reporting Requirement*, 32 Op. O.L.C. at 43–44; *Whistleblower Protections*, 22 Op. O.L.C. at 100. It necessarily follows that a committee may not accomplish the same result by adopting a rule governing its own proceedings.

The Committee also justified Committee Rule 15(e) on the ground that it has been in place for a decade. *See* April 10 Cummings Letter at 3; April 22 Cummings Letter at 3. But congressional committee use of depositions is a relatively recent innovation, and historically such "[d]epositions have been used in a relatively small number of major congressional investigations." *Staff Depositions* at 1. Moreover, committees proposing the use of depositions have previously faced objections that they may improperly "'circumvent the traditional committee process'" of hearings and staff interviews and may "compromise the rights of

15

deponents." *Id.* at 2; *see supra* pp. 3–4. Accordingly, the Committee's limited previous use of depositions from which agency counsel were excluded does not reflect a "long settled and established practice," much less one that has been met by acquiescence from the Executive Branch. *NLRB v. Noel Canning*, 573 U.S. 513, 524 (2014) (internal quotation marks and brackets omitted).

In addition, the Committee claimed that Rule 15(e) serves the purpose of "ensur[ing] that the Committee is able to depose witnesses in further-ance of its investigations without having in the room representatives of the agency under investigation." April 10 Cummings Letter at 2; April 22 Cummings Letter at 3. But that assertion does no more than restate the rule's effect, without advancing any legitimate rationale for excluding the agency's representatives, much less one sufficient to alter the constitu-tional calculus. The Committee here did not seek information concerning the private affairs of agency employees or articulate any particularized interest in excluding agency counsel. In fact, agency counsel appeared at the staff interviews of both Mr. Gore and Mr. Kline. In view of the Presi-dent's clear and well-established interests in protecting privileged infor-mation and supervising the Executive Branch's interactions with Con-gress, the Committee offered no countervailing explanation for why it would be necessary to exclude any agency representative from these two depositions.

Indeed, the Committee has not explained why, as a general matter, the House needs to exclude agency counsel from depositions of agency offi-cials. Agency representatives routinely accompany and support agency employees during congressional hearings and staff interviews. *See Au-thority to Pay for Private Counsel*, 41 Op. O.L.C. at *3 ("When congres-sional committees seek to question employees of an Executive Branch agency in the course of a congressional oversight inquiry of the agency, the Executive Branch's longstanding general practice has been for agency attorneys to accompany the witnesses."); *Reimbursing Justice Department Employees for Fees Incurred in Using Private Counsel Representation at Congressional Depositions*, 14 Op. O.L.C. 132, 133 (1990) ("[W]hen Department employees are asked in their official capacities to give oral testimony for a congressional investigation (whether at a hearing, inter-view or deposition), a Department counsel or other representative will normally accompany the witness."); *Representation of White House Employees*, 4B Op. O.L.C. at 754 ("[L]egitimate governmental interests" are "[o]rdinarily . . . monitored by agency counsel who accompany execu-tive branch employees called to testify before congressional commit-

tees."). There is no basis for believing that this routine practice diminishes the Committee's ability to acquire any information it may legitimately seek.[4]

In defending the exclusion of agency counsel, the Committee pointed out that the witnesses may bring their private counsel to the depositions. April 10 Cummings Letter at 2; April 22 Cummings Letter at 3. But allowing agency employees to be accompanied by private counsel is no substitute for the presence of agency counsel. In addition to imposing unnecessary burdens on agency employees by requiring the retention of private counsel, the practice does not adequately protect the agency's interests. As explained above, the President must be able to supervise who discloses executive branch information and under what conditions. An employee's private counsel, however, represents the interests of the employee, not the agency, and "the attorney owes a fiduciary duty and a duty of confidentiality to the employee, not the agency." *Authority to Pay for Private Counsel*, 41 Op. O.L.C. at \*5; *see also Representation of White House Employees*, 4B Op. O.L.C. at 754 ("[A]ny counsel directed to represent governmental interests must be controlled by the Government, and private counsel retained by employees to represent personal interests should not be permitted to assert governmental interests or privileges."). Even if the private counsel may sometimes assist the agency employee in protecting agency information, the Committee cannot require the Executive Branch to rely upon the private counsel to make such judgments. Private counsel is not likely to know as well as agency counsel when a line of questioning, especially an unanticipated one, might intrude upon the Executive Branch's constitutionally protected interests.

Finally, we concluded that the Committee's proposed accommodation—to make a separate room available for agency counsel at the two depositions—was insufficient to remedy these constitutional concerns. *See* April 10 Cummings Letter at 3; April 22 Cummings Letter at 3. That

---

[4] In a similar vein, agency employees are routinely represented by agency counsel in connection with depositions in civil litigation and, where appropriate, agency counsel will instruct agency employees not to answer questions that implicate privilege. Further, as the Supreme Court recognized in *Touhy*, 340 U.S. 462, the head of an agency may properly bar subordinate officials from disclosing privileged agency information, and departments have accordingly enacted so-called *Touhy* regulations to ensure that privileged information is appropriately protected by agency officials in civil discovery. *See, e.g.*, 28 C.F.R. §§ 16.21–16.29 (Department of Justice *Touhy* regulations). Just as agency counsel may properly participate in ensuring appropriate disclosures in depositions in civil litigation, agency counsel may properly do so in congressional depositions.

17

practice would put the onus on the agency employee and his private counsel to divine whether the agency would have privilege concerns about each question, and then "request a break during the deposition to consult with" agency counsel. April 10 Cummings Letter at 3; *see* April 22 Cummings Letter at 3. Because this practice would leave such judgments entirely up to the employee and his private counsel, as well as depend on the discretion of the Committee's staff to grant the requested break, it would not adequately ensure that the agency could make the necessary decisions to protect privileged information during the course of the deposition. It also would prevent the Executive Branch from ensuring that the testimony provided was accurate, complete, and properly limited in scope.

We recognize that there is at least one circumstance—an appearance before a grand jury—where a witness's attorney must remain in a separate room during questioning. *See* Fed. R. Crim. P. 6(d)(1); *United States v. Mandujano*, 425 U.S. 564, 581 (1976). However, grand juries can hardly provide a model for congressional depositions, because they operate under conditions of extreme secrecy, and there is a long-established practice of excluding *all* attorneys for witnesses before the grand jury. *See, e.g., In re Black*, 47 F.2d 542, 543 (2d Cir. 1931); *Latham v. United States*, 226 F. 420, 422 (5th Cir. 1915). Committee Rule 15(e) not only lacks the historical pedigree of grand-jury proceedings, but the information collected in congressional depositions is not inherently confidential. Indeed, the Committee does not even have a categorical objection to allowing witnesses to be accompanied by counsel. Rather, the rule permits witnesses to be accompanied by counsel of their choice, provided that counsel does not represent the agency as well. This targeted exclusion underscores the separation of powers problems.[5]

---

[5] Indeed, the federal courts have recognized that "[t]here is a clear difference between Congress's legislative tasks and the responsibility of a grand jury." *Senate Select Comm.*, 498 F.2d at 732; *see also Nixon*, 418 U.S. at 712 n.19 (distinguishing the "constitutional need for relevant evidence in criminal trials," on the one hand, from "the need for relevant evidence in civil litigation" and "congressional demands for information," on the other). Congressional depositions appear more akin to depositions in civil litigation, rather than grand juries, and in civil litigation it is well established that attorneys "representing the deponent" and attorneys representing "any party to the litigation" have "the right to be present" at a deposition. Jay E. Grenig & Jeffrey S. Kinsler, *Handbook of Federal Civil Discovery and Disclosure* § 5:29 (4th ed. 2018).

*Attempted Exclusion of Agency Counsel from Congressional Depositions*

## IV.

For the foregoing reasons, we concluded that the Committee's prohibition on agency counsel's attendance at depositions impermissibly infringed on the President's constitutional authority to protect information within the scope of executive privilege and to supervise the Executive Branch's communications with Congress. Although the Executive Branch must facilitate legitimate congressional oversight, the constitutionally mandated accommodation process runs both ways. *See Am. Tel. & Tel. Co.*, 567 F.2d at 127, 130–31. Just as the Executive must provide Congress with information necessary to perform its legislative functions, Congress through its oversight processes may not override the Executive Branch's constitutional prerogatives. *See Barenblatt*, 360 U.S. at 112. Here, the constitutional balance requires that agency representatives be permitted to assist agency officials in connection with providing deposition testimony, including on matters that implicate privileged information. Thus, we advised that the subpoenas purporting to compel Mr. Gore and Mr. Kline to appear without agency counsel exceeded the Committee's authority and were without legal effect.

STEVEN A. ENGEL
*Assistant Attorney General*
*Office of Legal Counsel*
