**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES, <br><br> 2138 Rayburn House Office Building <br> Washington, D.C. 20515, <br><br> *Plaintiff*, <br><br> v. <br><br> ELVIS CHAN, in his official capacity as Assistant Special Agent of the Federal Bureau of Investigation, <br><br> 450 Golden Gate Ave. <br> San Francisco, CA 94102, <br><br> *Defendant*. | Case No. 1:24-cv-344 |

# Exhibit R

JIM JORDAN, Ohio
CHAIRMAN

JERROLD NADLER, New York
RANKING MEMBER

ONE HUNDRED EIGHTEENTH CONGRESS

# Congress of the United States
## House of Representatives
### COMMITTEE ON THE JUDICIARY

2138 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515–6216

(202) 225–6906
judiciary.house.gov

October 4, 2023

The Honorable Merrick B. Garland
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

      Re:     Deposition Subpoena to Elvis Chan

Dear Attorney General Garland:

      This letter responds to the Department of Justice's (DOJ) October 3, 2023, letter concerning the Committee's subpoena to Federal Bureau of Investigation (FBI) Assistant Special Agent in Charge Elvis Chan following his failure to appear for a transcribed interview on September 15, 2023 as part of the Committee's investigation into how and to what extent the Executive Branch has coerced and colluded with companies and other intermediaries to censor speech.[1] We write to reiterate the Committee's basis for proceeding with the deposition and to apprise you of both the Committee's and the House of Representative's authority to set its own rules—including rules and practices regarding depositions and transcribed interviews.

      Your letter states that the Committee's practice—i.e., permitting government witnesses to appear with agency counsel or personal counsel, but not both—is "not codified in any Committee rule, nor is it grounded in any rule or regulation of the House."[2] That is false. The Constitution affords the House of Representatives the authority to determine its own rules and procedures.[3] In turn, the Rules of the House authorize committee chairmen to compel "the attendance and testimony of [] witnesses."[4] Consistent with this authority, the Judiciary Committee has developed certain practices for conducting voluntary transcribed interviews. Although a moot point now that Mr. Chan is compelled to appear and provide testimony pursuant to a subpoena, the practice established by the Committee for voluntary transcribed interviews—which contains language identical to the House's rules for conducting a deposition

---

[1] Letter from Mr. Carlos Felipe Uriarte to Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary (Oct. 3, 2023).
[2] Letter from Mr. Carlos Felipe Uriarte to Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary (Oct. 3, 2023), at 2.
[3] U.S. Const. Art. I, § 5, cl. 2.
[4] Rules of the House of Reps., R. XI, cl. 2(m)(1)(B).

The Honorable Merrick B. Garland
October 4, 2023
Page 2

pursuant to a subpoena—includes that a witness for a transcribed interview has the choice of being represented by either agency counsel or personal counsel, but not both.

The House has also directly addressed the authority of committees to conduct depositions pursuant to subpoena.[5] As adopted by the House, House Resolution 5 specifically states that witnesses "may be accompanied at a deposition by two designated personal *nongovernmental attorneys* to advise them of their rights."[6] In addition, paragraph 3 of the "Regulations for the use of Deposition Authority," which was issued by the Committee on Rules pursuant to section 3(k)(3) of House Resolution 5 and printed in the *Congressional Record*, states:

> 3. Witnesses may be accompanied at a deposition by two designated personal, nongovernmental attorneys to advise them of their rights. Only members, committee staff designated by the chair or ranking minority member, an official reporter, the witness, and the witness's two designated attorneys are permitted to attend. ***Other persons, including government agency personnel, may not attend.***[7]

The Committee adopted these deposition procedures in the Committee's Rules of Procedure, passed unanimously at the beginning of the 118th Congress.[8] In particular, Rule XI ("Depositions"), incorporating H. Res. 5, states that:

> (3) PERSONS PERMITTED TO ATTEND DEPOSITIONS.—Deponents may be accompanied at a deposition by two designated personal, nongovernmental attorneys to advise them of their rights. Only members, committee staff designated by the chair or ranking minority member, an official reporter, the witness, and the witness's two designated attorneys are permitted to attend. ***Other persons, including government agency personnel, may not attend***.[9]

The rationale for this rule is well-founded. As you have recognized, agency counsel does not represent the witness's personal interests. Rather, agency counsel represents the *agency*'s interests. Accordingly, agency counsel may pressure the witness explicitly or implicitly to not disclose certain information relevant to the Committee's investigation.[10] The inclusion of agency

---

[5] H. Res. 5, §3(k).

[6] *Id.* (emphasis added).

[7] *Reg. 3*, REGULATIONS FOR THE USE OF DEPOSITION AUTHORITY, COMMITTEE ON RULES, U.S. HOUSE OF REPRESENTATIVES (118th Congress) (emphasis added).

[8] Rule XI, RULES OF PROCEDURE, COMMITTEE ON THE JUDICIARY, U.S. HOUSE OF REPRESENTATIVES (118th Congress) (adopted Feb. 1, 2023).

[9] *Id*. (citing H. Res. 5, §3(k)) (emphasis added).

[10] *See* Morton Rosenberg, WHEN CONGRESS COMES CALLING, A STUDY ON THE PRINCIPLES, PRACTICES, AND PRAGMATICS OF LEGISLATIVE INQUIRY (2017), at 38 ("Committees have no way to ascertain with any degree of certainty whether a witness truly requested, and in fact wants, to be accompanied by agency personnel. Where a potential conflict of interest situation appears to arise, a committee will seek to insulate a witness from the presence of agency personnel during a staff interview, deposition, or hearing testimony. For example, if the chairperson determines that a witness's agency-selected counsel raises a potential conflict of interest, or might chill the witness's candor, that counsel can be excluded from a hearing. The determination stems from the need to ensure effective oversight of agency activities while protecting witnesses from the possibility of abuse, threats, or coercion. In addition to the possibility that the mere presence of agency counsel would have a chilling effect on employees'

The Honorable Merrick B. Garland
October 4, 2023
Page 3

counsel in a deposition of a government witness can create conflicts for the witness and impede the Committee's oversight. This reality is especially true where, as here, the witness's individual interests and the agency's institutional interests diverge. The Committee has evidence that appears to contradict several statements that Mr. Chan made under oath in a civil deposition in *Missouri v. Biden*.[11] Because Mr. Chan was represented by agency counsel in that deposition, it is reasonable for the Committee to believe that Mr. Chan will be more veracious outside the presence of agency counsel.

Your letter contains references to authorities from the Executive Branch for why the Committee must allow agency counsel to be present for Mr. Chan's deposition along with personal counsel.[12] These authorities are not binding on Congress and are ultimately unpersuasive. Specifically, you cite concerns with whether Mr. Chan's personal counsel can properly "protect potentially privileged information, including law enforcement sensitive information."[13] Mr. Chan's personal counsel is an experienced litigator who has represented numerous federal law enforcement officers in matters before Congress. In addition, Mr. Chan is a senior national security official who currently holds a security clearance and accordingly has a personal obligation at all times not to disclose classified information. Setting aside whether the Executive Branch's election interference and censorship of disfavored views could ever actually include legitimate "law enforcement sensitive information," the Committee is confident that Mr. Chan's counsel can effectively advise his client as to the issues you identified.

Further, the Executive Branch has recognized Congress's ability to conduct interviews and depositions of government witnesses, current and former, accompanied solely by personal counsel. In such cases, the agency typically issues a letter of authorization to the witness's personal counsel detailing the scope of the authorized testimony and advising the personal counsel as to any matters of potential privilege.[14] While it is unclear whether Mr. Chan's personal counsel has pursued this option with the Justice Department or the FBI, it appears that in these cases an Executive Branch agency relies on a witness's personal counsel to identify and respond to matters affecting institutional interests pursuant to the letter of authorization. Neither

---

testimony, counsel for the executive branch have at times directly instructed agency witnesses not to answer a committee's questions."); *see also* House Judiciary Committee's Transcribed Interview of Laura Dehmlow (July 17, 2023), at 30-34, 37 (on file with the Comm.) (Agency counsel coaching Laura Dehmlow during the interview and instructing Dehmlow to not answer questions to which she knows the answer).

[11] Rep. Jim Jordan (@Jim_Jordan), Twitter (Aug. 7, 2023, 10:11 AM), https://twitter.com/Jim_Jordan/status/1688553339624042496.

[12] *See* Letter from Mr. Carlos Felipe Uriarte to Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary (Oct. 3, 2023), at 1-2.

[13] *Id.* at 2 & n.4.

[14] *See, e.g.*, Letter to Bradley Weinsheimer, Dep't of Justice, to Jeffrey A. Rosen (July 26, 2021); Transcribed interview of Catherine Duval, Internal Revenue Serv., by the H. Comm. on Oversight & Reform (July 31, 2014) ("I'd just like to put on the record Ms. Duval is appearing today pursuant to a testimonial authorization provided by the Internal Revenue Service. . . . She will not testify outside that authorization. And, if necessary, I will instruct her not to answer. But I am confident that with rephrasing or limitation of certain questions, we'll be able to get the information the committee requires while not going outside of the authorized testimony."); Transcribed interview of Thomas Kane, Internal Revenue Serv., by the H. Comm. on Oversight & Reform (July 17, 2014) ("As you know, he's in the government, and the government has provided authorization to him in order to appear today. They have provided an authorization and scope regarding his testimony.").

The Honorable Merrick B. Garland
October 4, 2023
Page 4

the Department nor the FBI has offered a legitimate reason why such an authorization letter cannot be provided here, which would also help to alleviate the agency's stated concerns about Mr. Chan's appearance without agency counsel.

Your letter states that the Committee's subpoena "is without legal effect and cannot constitutionally be enforced" because the Committee refuses to yield to the Executive Branch's demands regarding the exact procedures to be used in the Committee's questioning of an agency employee.[15] Your letter mistakes capitulation for accommodation. Congressional oversight is a core legislative function necessary to inform potential legislative reforms.[16] The Executive Branch cannot dictate how Congress will carry out its core congressional functions. As discussed above and below, the Committee has identified and offered ways for agency counsel to offer guidance to Mr. Chan and his personal counsel, thus demonstrating that it is accommodating the Executive Branch's interests in this matter.

Moreover, there is no limiting principle to your assertion. Your letter appears to suggest that the Executive Branch has the constitutional authority to insert itself into congressional oversight whenever a government witness's testimony concerns "the agency employee's official duties."[17] However, whistleblowers and former government employees—including former FBI agents—have testified before the Committee in this Congress and prior ones regarding the witness's "official duties" without the presence of agency counsel.[18] Certainly, the Department cannot assert an unended authority to insert itself into Congress's fact-finding whenever they implicate "official duties."

Finally, the Committee has respected separation-of-powers considerations. The Committee notified the FBI prior to the start of the 118th Congress that the Committee would be requesting that Mr. Chan appear for an interview.[19] The Committee made numerous attempts to have Mr. Chan appear for a voluntary transcribed interview before being forced to use compulsory process.[20] The Committee postponed the date of Mr. Chan's deposition in order to accommodate his international travel commitments.[21] Yesterday, the Committee offered another accommodation to Mr. Chan's personal counsel to alleviate his stated concerns and allow the

---

[15] Letter from Mr. Carlos Felipe Uriarte to Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary (Oct. 3, 2023), at 1-2.

[16] *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020) (Congress has the "broad and indispensable" power "to secure needed information in order to legislate").

[17] *Id.*

[18] *See, e.g.*, House Judiciary Committee's Transcribed Interview of Jill Sanborn (Feb. 1, 2023); House Judiciary Committee's Transcribed Interview of Steven D'Antuono (June 7, 2023); House Judiciary Committee's Transcribed Interview of Eric Miller (Jul. 7, 2023); House Judiciary Committee's Transcribed Interview of Kevin Chambers (Jul. 21, 2023); House Judiciary Committee's Transcribed Interview of Timothy Thibault (Sept. 12, 2023).

[19] Letter from Rep. Jim Jordan, Ranking Member, H. Comm. on the Judiciary, to Christopher A. Wray, Fed. Bureau of Investigation (Nov. 18, 2022).

[20] *See, e.g.*, Telephone Call between Committee Staff and FBI Personnel (May 22, 2023); Email from Committee Staff to FBI and DOJ Personnel (Jun. 21, 2023, 3:53 PM); Email from Committee Staff to FBI and DOJ Personnel (Jul. 5, 2023, 12:22 PM); Email from Committee Staff to FBI and DOJ Personnel (Aug. 8, 2023, 5:05 PM); Email from Committee Staff to FBI and DOJ Personnel (Aug. 17, 2023, 1:08 PM); Meeting between Committee Staff and FBI Personnel (Aug. 22, 2023); Email from FBI Personnel to Committee Staff (August 30, 2023, 4:00 PM).

[21] Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary to Mr. Elvis Chan (Sept. 21, 2023).

The Honorable Merrick B. Garland
October 4, 2023
Page 5

interview to proceed.[22] This accommodation provided the procedures by which agency counsel may provide advice to Mr. Chan and his personal counsel. We will continue to engage with Mr. Chan through his personal counsel on this matter.

Sincerely,

Jim Jordan
Chairman

cc:     The Honorable Jerrold L. Nadler, Ranking Member

---

[22] Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary to Mr. Lawrence Berger, Esq. (Oct. 3, 2023), at 8.