# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES,<br><br>2138 Rayburn House Office Building<br>Washington, D.C. 20515,<br><br>   *Plaintiff*,<br><br> v.<br><br>ELVIS CHAN, in his official capacity as Assistant Special Agent of the Federal Bureau of Investigation,<br><br>450 Golden Gate Ave.<br>San Francisco, CA 94102,<br><br>   *Defendant*. | Case No. 1:24-cv-344 |

# Exhibit S

```
 1
 2
 3
 4
 5     COMMITTEE ON THE JUDICIARY,
 6     U.S. HOUSE OF REPRESENTATIVES,
 7     WASHINGTON, D.C.
 8
 9
10
11
12
13     DEPOSITION OF:    ELVIS CHAN
14
15
16
17
18                                  Thursday, October 5, 2023
19
20                                  Washington, D.C.
21
22
23         The deposition in the above matter was held in room 2237, Rayburn House Office
24     Building, commencing at 10:12 a.m.
25
```

1   <u>Appearances:</u>

2

3

4

5   For the COMMITTEE ON THE JUDICIARY:

6

7   SAM BOCK, RESEARCH ASSISTANT

8   STEVE CASTOR, GENERAL COUNSEL

9   TOM FERGUSON, SENIOR ADVISOR

10  JOSH HODGES, SENIOR STAFF

11  CAROLINE NABITY, CHIEF COUNSEL FOR OVERSIGHT

12  ALEX WILKERSON, RESEARCH ASSISTANT

13  LUKE ZARO, COUNSEL

14  CHRISTINA CALCE, MINORITY CHIEF OVERSIGHT COUNSEL

15  JUAN CARLOS MORA, MINORITY STAFF ASSISTANT

16  KAREN SHINSKIE, MINORITY OVERSIGHT COUNSEL

17  ROMA VENKATESWARAN, MINORITY PROFESSIONAL STAFF MEMBER

18

19

20

21

22

23

24

25

1           Mr. Castor.   Good morning.   This was supposed to be a deposition of Federal

2   Bureau of Investigation Assistant Special Agent in Charge Elvis Chan.

3           Chairman Jordan requested this deposition as part of the committee's oversight of

4   how and to what extent the executive branch has coerced and colluded with companies

5   and other intermediaries to censor speech.

6           Mr. Chan is not here.   The time is 10:12.   The deposition was scheduled to start

7   at 10 a.m.

8           I'm going to make part of the record the subpoena issued for Mr. Chan on

9   September 15, 2023, for a deposition that was originally scheduled on September 21,

10  2023.   We agreed to move that date, via letter, on September 21, 2023, to

11  accommodate Mr. Chan, who was traveling for work internationally.

12          So, on September 21st, we sent another subpoena, Mr. Jordan did, dated -- or the

13  return date was October 5, 2023.   I'll make the two letters and subpoenas exhibit 1.

14                          [Chan Exhibit No. 1

15                          Was marked for identification.]

16          Mr. Castor.   We'll mark exhibit 2 a copy of the notice sent out by the Judiciary

17  Committee's clerk on September 27th noticing today's deposition for 10 a.m. this

18  morning, Thursday, October 5th.   Mark that as exhibit 2.

19                          [Chan Exhibit No. 2

20                          Was marked for identification.

21          Mr. Castor.   I'm going to walk through the timeline of the committee's efforts to

22  speak with Mr. Chan.

23          On November 18th of 2022, Mr. Jordan, then the ranking member, first requested

24  testimony of Mr. Chan.

25          On January 17, 2023, after Mr. Jordan became the chairman of the committee, we

1   wrote to the FBI asking again for Mr. Chan's testimony, along with other key witnesses
2   the committee had been seeking.
3       On March 3, 2023, the committee reiterated its request that Mr. Chan appear
4   voluntarily for a transcribed interview.
5       On May 22nd of this year, committee staff again reiterated our request to
6   schedule a transcribed interview with Mr. Chan on a telephone call with FBI personnel.
7       On June 21st, July 5th, August 8th, and August 17th of this year, committee staff
8   again communicated with FBI personnel in an attempt to schedule Mr. Chan's voluntary
9   transcribed interview.
10      On August 30th of this year, the committee alerted the FBI that the chairman had
11  authorized a subpoena for Mr. Chan's testimony at a deposition.    It was only then that
12  FBI and DOJ agreed to schedule Mr. Chan for a voluntary transcribed interview.    That
13  was originally scheduled for September 15th.
14      On September 14th, the day before the scheduled transcribed interview, we were
15  informed by Mr. Chan's personal counsel, Larry Berger, that Mr. Chan will not appear on a
16  voluntary basis to the committee's transcribed interview unless he was permitted to bring
17  personal counsel and agency counsel.
18      At 4:34 on September 14th, committee staff emailed DOJ and FBI, communicating
19  again that the committee's practice is to allow the witness to pick either personal counsel
20  or agency counsel, but not both.
21      At 7:37 that evening, committee staff emailed Mr. Berger, DOJ, and FBI, stating:
22  Mr. Chan can have either agency counsel or personal counsel accompany him at a
23  transcribed interview, not both.    It's Mr. Chan's choice.
24      At 7:57 that evening, Mr. Berger emailed committee staff to state that Mr. Chan
25  will appear with personal counsel.    Berger did not make any objections to the

Case 1:24-cv-00344   Document 1-19   Filed 02/06/24   Page 6 of 12

5

1  committee's practice of conducting transcribed interviews with either personal counsel or
2  agency counsel, but not both.
3      At 10:07 p.m. that evening, after Mr. Berger stated that Mr. Chan would appear
4  with personal counsel the next day, DOJ staff interjected and asserted:   We've spoken
5  with Mr. Chan and his strong desire is to be represented by both personal and agency
6  counsel.   We look forward to seeing you at 10 a.m.
7      At 11:13, committee staff emailed Mr. Berger, DOJ, FBI again, communicating the
8  committee's practice, stating:   This is not an option we are offering.   Mr. Chan has
9  requested personal counsel.   We respectfully ask that you do not attempt to join.
10     On September 15th, the morning of the scheduled transcribed interview, Mr.
11 Chan did not appear.
12     Later, on September 15th, the committee issued a subpoena for Mr. Chan to
13 appear at the deposition, which we marked as exhibit 1, originally scheduled for
14 September 21st.   After Mr. Chan communicated with the committee that he's traveling
15 on business, we reissued the subpoena for today.
16     The committee's practice of permitting witnesses to attend with personal or
17 agency counsel is something that has been communicated since the beginning of the
18 Congress.
19     On January 31st, counsel to the committee communicated to the FBI:
20 Witnesses -- I'm quoting from an email from committee counsel:   "Witnesses appearing
21 for transcribed interviews can attend with personal or agency counsel but not both.   It's
22 up to the witness."   That was an email dated January 31st, and it was sent by me, the
23 committee's general counsel, to FBI, Megan Greer at the FBI's Office of General Counsel.
24     Off the record for a second.
25     [Discussion held off the record.]

1              [Chan Exhibit No. 3

2              Was marked for identification.]

3         Mr. Castor.  I'm going to mark as exhibit 3 the Judiciary Committee rules.  On

4    page 7 of the rules, Rule XI, with regard to depositions, Rule XI(k)(3):  "Persons

5    permitted to attend depositions.  Deponents may be accompanied at a deposition by

6    two designated personal, nongovernmental attorneys to advise them of their rights.

7    Only members, committee staff designated by the chair or ranking minority member, an

8    official reporter, the witness, and the witness's two designated attorneys are permitted

9    to attend.  Other persons, including government agency personnel, may not attend."

10        Ms. Calce, do you have --

11        Ms. Calce.  I do.  Thank you.

12             [Chan Exhibit No. 4

13             Was marked for identification.]

14        Ms. Calce.  I want to introduce as exhibit 4 an October 4, 2023, 7:35 p.m. email

15   from Larry Berger to committee counsel.  And we've redacted the names on this, but I'll

16   represent that it involved Mr. Castor and myself, among others.

17        This email reads:  "As you know" -- this is from Mr. Berger, who is Mr. Chan's

18   personal counsel.  It reads:  "Good evening.  As you know, I represent Assistant

19   Special Agent in Charge (ASAC) Elvis Chan.  This evening, a short time ago, I received a

20   letter from the Department of Justice informing me that ASAC Chan is directed not to

21   appear before the committee, tomorrow, October 5, for a deposition, without his firm

22   choice of counsel, which includes agency counsel.

23        Based on this unequivocal direction, as well as the belief of my client and I that

24   the committee's subpoena is unenforceable for reasons previously stated, please be

25   advised that ASAC Chan will not appear for a deposition tomorrow, October 5, before the

1   Committee, if the Committee continues to insist that agency counsel be precluded from
2   attending the deposition.
3       ASAC Chan stands, as he always has, ready, willing and able to attend the
4   deposition voluntarily, on October 5, or any other designated date, with his choice of
5   counsel, which includes agency counsel."
6                   [Chan Exhibit No. 5
7                   Was marked for identification.]
8       Ms. Calce.   I want to introduce as exhibit 5 a September 19, 2023, letter from the
9   Federal Bureau of Investigation to Chairman Jordan concerning the deposition subpoena
10  request.
11                  [Chan Exhibit No. 6
12                  Was marked for identification.]
13      Ms. Calce.   Introduce as exhibit 6 a September 29, 2023, letter from Mr. Berger
14  to Chairman Jordan on the same issue; and as exhibit 7 an October 3, 2023, letter from
15  Carlos Uriarte, Assistant Attorney General for the Office of Legislative Affairs, the
16  Department of Justice, to Chairman Jordan, again, concerning this deposition.
17                  [Chan Exhibit No. 7
18                  Was marked for identification.]
19      Ms. Calce.   Each one of these letters makes clear that Mr. Chan was voluntarily
20  willing to appear, but was not willing to do so without his choice of agency counsel.
21      We are not taking a position on the validity of the subpoena or not, but I do want
22  to state for the record that it is my understanding that Mr. Chan has always been willing
23  to appear voluntarily and that he has always been firm in his position that he would like
24  to be represented by both personal counsel and agency counsel.   There has been no
25  change in that position.

1          I also want to note for the record -- there was a reference to the practice of the
2   committee.   It is my understanding that there is no past precedent for denying
3   witnesses the right to their choice of counsel in this committee.   I understand that may
4   be the practice in the Oversight Committee, but in the Judiciary Committee that has not
5   been precedent.
6          And I would also note that in this investigation, there have been situations in
7   which we've had witnesses from technology companies who have been permitted to
8   appear with counsel for both their companies and personal counsel as well.   So the
9   reference to practice that was made earlier does appear to be a practice of the 118th
10  Congress that Chairman Jordan has adopted.
11         I also want to note that it is my understanding that Mr. Chan did fly from San
12  Francisco to Washington, D.C., both on September 15, 2023, which was the original date
13  of the transcribed interview, was here and willing to voluntarily appear, and did also fly in
14  from San Francisco to Washington, D.C., today and is here and is willing to voluntarily
15  appear should the chairman be willing to permit him to appear with his choice of
16  representation.
17         We can go off the record -- or not.
18         Mr. Castor.   I'd just like to -- we have had FBI witnesses, for example, Jill
19  Sanborn, Steven D'Antuono that have appeared for transcribed interviews with personal
20  counsel.   Both of those witnesses asked for agency counsel as well, and after being
21  advised of the rule they selected personal counsel.   And both of those happened during
22  the 118th Congress.
23         I'm also going to make part of the record --
24         Ms. Calce.   Steve, can I respond to that quickly?
25         Mr. Castor.   I'm just going to make --

1          Ms. Calce.   Go ahead.

2          Mr. Castor.   -- some additional letters, correspondence part of the record.

3                        [Chan Exhibit No. 8

4                        Was marked for identification.]

5          Mr. Castor.   Exhibit No. 8 is a letter dated September 20th to the FBI Director

6   from the chairman.

7                        [Chan Exhibits Nos. 9 and 10

8                        Was marked for identification.]

9          Mr. Castor.   Exhibit No. 9, a letter earlier this week from the chairman to Larry

10  Berger on this very issue; exhibit 10, a letter from the chairman dated October 4th,

11  yesterday, to the Attorney General, stating our position on that.

12         Ms. Calce.   And if I can quickly respond, I would note for the record that both

13  Ms. Sanborn and Mr. D'Antuono were former FBI employees.   Mr. Chan is obviously a

14  current agency employee.

15         I would also note that Mr. Chan, again, it is my understanding that he has a

16  number of significant concerns about his personal safety related to the broader litigation

17  here, and his interests in this -- I think he believes very strongly that his interests compel

18  him to have personal counsel.

19         Mr. Castor.   Fair enough.   I mean, on October 4th we offered what we

20  considered a fair accommodation, offering Mr. Chan the ability to have Justice

21  Department agency counsel available to him immediately outside the room.   We offered

22  him the opportunity to stop the deposition at any point after any question, and he was

23  free to get up with his personal counsel, walk into the hallway, or we could have made a

24  separate room available for Mr. Berger to confer with Mr. Chan and agency counsel at

25  any time.

1       So we believe that that was a fair accommodation that would have allowed Mr.

2       Chan to consult with agency counsel without violating the rules of the House.   So we

3       were disappointed they didn't take us up on that accommodation.

4       I'd also note with regard to Ms. Sanborn and Mr. D'Antuono, the purpose of the

5       questioning of both of those officials related to their official duties with the FBI.   Both

6       asked for personal and agency counsel.   And when we communicated to them the basis

7       for that rule -- and the basis for the rule is we allow agency counsel in instances where a

8       witness may not be able to afford personal counsel or where a witness may not have

9       access to one.

10      And so, allowing agency counsel is an accommodation to begin with to allow these

11      question-and-answer sessions to proceed.

12      When a witness does have personal counsel, the presumption is that personal

13      counsel would attend and agency counsel would not.   And that's consistent with the

14      House rules for depositions and the committee's rule for depositions.

15      Ms. Calce.   And briefly, I'm not sure that I -- that we accept your premise that the

16      basis for the rule is monetary in nature.   These witnesses are testifying about events

17      that occurred when they were working in their professional capacities, so just put that on

18      the record.

19      I would also note that that accommodation offered to this witness to have agency

20      counsel outside the door I believe is the same accommodation that was offered to John

21      Gore in the prior administration.   And the prior administration also declined to consider

22      that a valid accommodation, or a sufficient accommodation I should say.

23      Mr. Castor.   I don't remember the circumstances of John Gore other than I

24      remember taking his deposition myself so -- or whether it was a transcribed interview.   I

25      don't know.   I'm not sure who was there in the room with Mr. Gore, but he appeared

1    and he answered our questions.   So --

2        Ms. <u>Calce.</u>   We don't have anything further.

3        Mr. <u>Castor.</u>   Thank you.

4        [Whereupon, at 10:32 a.m., the interview was concluded.]

5

6