**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

COMMITTEE ON THE JUDICIARY,
UNITED STATES HOUSE OF
REPRESENTATIVES,

2138 Rayburn House Office Building
Washington, D.C. 20515,

               *Plaintiff*,

     v.

ELVIS CHAN, in his official capacity as
Assistant Special Agent of the Federal
Bureau of Investigation,

450 Golden Gate Ave.
San Francisco, CA 94102,

               *Defendant*.

Case No. 1:24-cv-344

# Exhibit T

IV

100TH CONGRESS
1ST SESSION

# H. RES. 12

Creating a Select Committee to Investigate Covert Arms Transactions with Iran.

---

## IN THE HOUSE OF REPRESENTATIVES

JANUARY 6, 1987

Mr. FOLEY (for himself, Mr. MICHEL, Mr. HAMILTON, and Mr. CHENEY) submitted the following resolution; which was referred to the Committee on Rules

JANUARY 7, 1987

The Committee on Rules discharged; considered and agreed to

---

# RESOLUTION

Creating a Select Committee to Investigate Covert Arms Transactions with Iran.

1  *Resolved,* That (1) There is hereby created a Select

2  Committee to Investigate Covert Arms Transactions with

3  Iran, to be composed of fifteen Members of the House to be

4  appointed by the Speaker, one of whom he shall designate as

5  chairman, and one of whom he shall designate as vice chair-

6  man. Any vacancy occurring in the membership of the select

7  committee shall be filled in the same manner in which the

8  original appointment was made. The select committee is au-

9  thorized and directed to conduct a full and complete investi-

1  gation and study, and to make such findings and recommen-
2  dations to the House as the select committee deems appropri-
3  ate, including those concerning the amendment of existing
4  legislation or the enactment of new legislation, regarding the
5  following matters:

6      (a) Direct or indirect sale or transfer of arms, tech-
7      nology or intelligence information to Iran or Iraq in-
8      volving United States Government officers, employees,
9      consultants, agents, or persons acting in concert with
10     them, or occurring with their approval, condonation,
11     acquiescence, or knowledge; the relation of such sale
12     or transfer to efforts to obtain the release of hostages
13     and to United States policy regarding dealings with na-
14     tions supporting terrorism; the United States' relation-
15     ship with the Iran-Iraq war, including the impact of
16     such sale or transfer; and such sale or transfer either
17     made to any other country for which such action is
18     against the expressed policy of the United States, or
19     generating proceeds used or disposed of apart from de-
20     posit in the Treasury.

21     (b) Diversion or intended diversion of the funds real-
22     ized in connection with the sale or transfer in para-
23     graph (a), for financing assistance to anti-Government
24     forces in Nicaragua or any other disposition apart from
25     deposit in the Treasury; and other assistance to such

3

1       forces from any sources when, in the judgment of the
2       select committee, information about such other assist-
3       ance may aid in understanding the nature, mechanisms,
4       extent, legality, and significance of assistance financed
5       or intended to be financed by such sale or transfer;
6       "assistance" includes provision of supplies, soliciting of
7       third-party funds, training, advising, planning, procur-
8       ing, or encouraging, or by the United States Govern-
9       ment   providing   diplomatic,   military,   paramilitary,
10      covert, or intelligence support or monitoring.

11          (c) In connection with the matters described in this
12      section, the violation of any law, agreement, promise
13      or understanding regarding reporting to, and informing
14      of, the Congress, or the circumvention or violation of
15      any Act of Congress or administrative order, regula-
16      tion, or procedure, including those governing covert ac-
17      tions, restricting arms sales, regulating appropriations,
18      withholding authority from departments and agencies,
19      and protecting the United States from conspiracy to
20      violate the laws, unauthorized disposition of things of
21      value, fraud, false statements, and obstruction of pro-
22      ceedings.

23          (d) Operational activities and the conduct of foreign
24      and national security policy by the staff of the National
25      Security Council or other White House personnel, in-

4

1    cluding the involvement of such staff or other executive

2    branch personnel or persons acting in concert with

3    them, or the use of any funds under the control of such

4    staff or persons, in political advocacy or campaigns or

5    efforts to influence public opinion or legislation relating

6    to the subjects described in this section including as-

7    sistance to anti-Government forces in Nicaragua; and

8    the participation, coordination, and awareness, or lack

9    thereof, regarding such activities and conduct by the

10   Departments of State and Defense, the Department of

11   Justice in both its advisory and law enforcement func-

12   tions, the intelligence community, and other govern-

13   mental entities.

14      (e) Authorization and supervision or lack thereof of

15   the matters in this section by the President and other

16   White House personnel.

17      (f) The role of individuals and entities outside the

18   government, including foreign countries, entities, and

19   persons, in connection with the matters in this section,

20   including their own assistance, their parallel activities,

21   United States efforts to encourage or to prevent such

22   parallel activities, and the use of domestic and foreign

23   financial or other entities as intermediaries in the mat-

24   ters in this section.

1      (g) Inquiries regarding the matters in this section,

2      including actions based on those inquiries, by the At-

3      torney General, the Departments of Justice, State, and

4      Defense, the intelligence community, the White House,

5      and other governmental entities; actions of individuals

6      in destroying, concealing, or failing to provide any evi-

7      dence or information of possible value to those inquir-

8      ies; and the timing, adequacy, and any conflicts of in-

9      terest in those inquiries.

10      (h) The impact of the matters in this section on

11      public and international confidence in the United States

12      Government and on United States policy objectives,

13      both internationally and domestically, and the adequacy

14      of the steps taken to reduce such impact.

15      (i) All matters relating directly or indirectly to the

16      foregoing.

17      (2) One-third of the members of the select committee

18 shall constitute a quorum for the transaction of business other

19 than the reporting of a matter, which shall require a majority

20 of the committee to be actually present, except that the select

21 committee may designate a lesser number, but not less than

22 two, as a quorum for the purpose of holding hearings to take

23 testimony. When a quorum for any particular purpose is

24 present, general proxies may be counted for that purpose.

25 The select committee may sit while the House is reading a

6

1  measure for amendment under the five-minute rule. The rules

2  of the House shall govern the select committee where not

3  inconsistent with this resolution. The select committee shall

4  adopt additional written rules, which shall be public, to

5  govern its procedures, which shall not be inconsistent with

6  this resolution or the rules of the House. Such rules may

7  govern the conduct of the depositions, interviews, and hear-

8  ings of the select committee, including the persons present.

9      (3) The select committee is authorized to sit and act

10  during the present Congress at such times and places within

11  the United States, including any Commonwealth or posses-

12  sion thereof, or in any other country, whether the House is in

13  session, has recessed, or has adjourned; to require, by sub-

14  poena or otherwise, the attendance and testimony of such

15  witnesses, the furnishing of information by interrogatory, and

16  the production of such books, records, correspondence,

17  memoranda, papers, documents, calendars, recordings, data

18  compilations from which information can be obtained, tangi-

19  ble objects, and other things and information of any kind as it

20  deems necessary, including all intelligence materials however

21  classified, White House materials, and materials pertaining

22  to unvouchered expenditures or concerning communications

23  interceptions or surveillance; and to obtain evidence in other

24  appropriate countries with the cooperation of their govern-

25  ments. Unless otherwise determined by the select committee

1 the chairman, upon consultation with the ranking minority

2 member, or the select committee, shall authorize and issue

3 subpoenas. Subpoenas shall be issued under the seal of the

4 House and attested by the Clerk, and may be served by any

5 persons designated by the chairman or any member. Provi-

6 sions may be included in the rules and process of the select

7 committee to prevent the disclosure of committee demands

8 for information. The select committee may request investiga-

9 tions, reports, and other assistance from any agency of the

10 executive, legislative, and judicial branches of the Federal

11 Government.

12     (4) The chairman, or in his absence the vice chairman,

13 or in their absence a member designated by the chairman,

14 shall preside at all meetings and hearings of the select com-

15 mittee. All meetings and hearings of the committee shall be

16 conducted in open session, unless a majority of members of

17 the select committee voting, there being in attendance the

18 requisite number required for the purpose of hearings to take

19 testimony, vote to close a meeting or hearing. Pursuant to

20 rule XI(3)(f)(2), coverage of testimony of subpoenaed wit-

21 nesses will be limited at their request, unless a majority of

22 members of the select committee voting, there being in at-

23 tendance the requisite number required for the conduct of

24 business, vote otherwise.

8

1    (5) The chairman, upon consultation with the ranking

2  minority member, may employ and fix the compensation of

3  such clerks, experts, consultants, technicians, attorneys, in-

4  vestigators, and clerical and stenographic assistants as it con-

5  siders necessary to carry out the purposes of this resolution.

6  No more than three such staff may receive compensation cor-

7  responding to Executive Level IV. The select committee

8  shall be deemed a committee of the House for all purposes of

9  law, including rule XI(2)(n), and sections 6005, 1505, and

10  1621 of title 18, section 192 of title 2, 1754(b)(1)(B)(ii) of

11  title 22, and section 734(a) of title 31, United States Code.

12  The select committee may reimburse the members of its staff

13  for travel, subsistence, and other necessary expenses incurred

14  by them in the performance of the duties vested in the select

15  committee, other than expenses in connection with meetings

16  of the select committee held in the District of Columbia. Staff

17  of the House or joint committees, at the direction of their

18  Members, committee chairmen, or the Speaker, as appropri-

19  ate, and upon request of the select committee, may serve as

20  associate staff to the select committee for designated pur-

21  poses. Associate staff shall be deemed staff of the select com-

22  mittee to the extent necessary for those designated purposes.

23    (6) Unless otherwise determined by the select committee

24  the chairman, upon consultation with the ranking minority

25  member, or the select committee, may authorize the taking of

1  affidavits, and of depositions pursuant to notice or subpoena,

2  by a Member or by designated staff, under oath administered

3  by a Member or a person otherwise authorized by law to

4  administer oaths. Deposition and affidavit testimony shall be

5  deemed to have been taken in Washington, DC, before the

6  select committee once filed there with the clerk of the com-

7  mittee for the committee's use. Unless otherwise directed by

8  the committee, all depositions, affidavits, and other materials

9  received in the investigation shall be considered nonpublic

10  until received by the select committee, except that all such

11  material shall, unless otherwise directed by the committee, be

12  available for use by the Members of the select committee in

13  open session.

14      (7) Pursuant to sections 6103(f)(3) and 6104(a)(2) of title

15  26, United States Code, for the purpose of investigating the

16  subjects set forth in this resolution and since information nec-

17  essary for this investigation cannot reasonably be obtained

18  from any other source, the select committee shall be specially

19  authorized to inspect and receive for the tax years 1980–

20  1986 any tax return, return information, or other tax-related

21  material, held by the Secretary of the Treasury, related to

22  individuals and entities named by the select committee as

23  possible participants, beneficiaries, or intermediaries in the

24  transactions under investigation. As specified by section

10

1  6103(f)(3) of title 26, United States Code, such materials and

2  information shall be furnished in closed executive session.

3      (8) The select committee shall be authorized to respond

4  to any judicial or other process, or to make any applications

5  to court, upon consultation with the Speaker consistent with

6  rule L.

7      (9) The select committee may submit to standing com-

8  mittees, including the Permanent Select Committee on Intel-

9  ligence, specific matters within their jurisdiction, and may

10  request that such committees pursue such matters further.

11  Committees pursuing such requested inquiries may, in turn,

12  receive the continuing assistance, consistent with the select

13  committee's own jurisdiction, of the select committee's legal

14  process, personnel, and records. Committees which pursue or

15  have pursued inquiries, during the previous or current Con-

16  gress, within the subjects of the select committee investiga-

17  tion shall furnish the select committee with copies of all testi-

18  mony and documents.

19      (10) The select committee shall provide other commit-

20  tees and Members of the House with access to information

21  and proceedings, consistent with rule XLVIII(7)(c)(2): *Pro-*

22  *vided,* That the select committee may direct that particular

23  matters or classes of matter shall not be made available to

24  any person by its members, staff, or others, or may impose

25  any other restriction. The select committee may require its

11

1  staff to enter nondisclosure agreements, and its chairman, in

2  consultation with the ranking minority member, may require

3  others, such as counsel for witnesses, to do so. The Commit-

4  tee on Standards of Official Conduct may investigate any un-

5  authorized disclosure of such classified information by a

6  Member, officer, or employee of the House or other covered

7  person upon request of the select committee. If, at the con-

8  clusion of its investigation, the Committee on Standards of

9  Official Conduct determines that there has been a significant

10  unauthorized disclosure, it shall report its findings to the

11  House and recommend appropriate sanctions for the Member,

12  officer, employee, or other covered person consistent with

13  rule XLVIII(7)(e) and any committee restriction, including

14  nondisclosure agreements.

15      (11) Authorized expenses of the select committee for in-

16  vestigations and studies, including for the procurement of the

17  services of individual consultants or organizations thereof,

18  and for training of staff, shall be paid from the contingent

19  fund of the House upon vouchers signed by the chairman and

20  approved by the Speaker.

21      (12) The select committee shall report to the House the

22  final results of its investigation and study, together with such

23  recommendations for legislation or other matters as it deems

24  advisable, as soon as practicable during the present Con-

25  gress, and in no event later than October 30, 1987, unless

12

1   the House directs otherwise. Following the filing of its final

2   report, it shall have one month before the authority herein

3   shall expire in order to close its affairs, including provision of

4   assistance to committees pursuing remaining inquiries, trans-

5   mittal of records to other committees, and storage of its re-

6   maining records by the Clerk of the House, who may, as

7   directed by the select committee, store records in secure fa-

8   cilities of the intelligence community pursuant to agreement

9   retaining control of access by the House.

O