**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES,<br><br>2138 Rayburn House Office Building<br>Washington, D.C. 20515,<br><br>      *Plaintiff*,<br><br>  v.<br><br>ELVIS CHAN, in his official capacity as Assistant Special Agent of the Federal Bureau of Investigation,<br><br>450 Golden Gate Ave.<br>San Francisco, CA 94102,<br><br>      *Defendant*. | Case No. 1:24-cv-344 |

# Exhibit V

| 100th Congress 1st Session | COMMITTEE PRINT |
| --- | --- |

# R U L E S

*of the*

# SELECT COMMITTEE TO INVESTIGATE COVERT ARMS TRANSACTIONS WITH IRAN

Adopted January 21, 1987 as amended April 29, 1987



Printed for the use of the Select Committee to Investigate Covert Arms Transactions with Iran

U.S. GOVERNMENT PRINTING OFFICE

72-871    WASHINGTON : 1987

For sale by the Superintendent of Documents, Congressional Sales Office
U.S. Government Printing Office, Washington, DC 20402

H962-8

## SELECT COMMITTEE TO INVESTIGATE COVERT ARMS TRANSACTIONS WITH IRAN

LEE H. HAMILTON, Indiana, *Chairman*
DANTE B. FASCELL, Florida, *Vice Chairman*

THOMAS S. FOLEY, Washington
PETER W. RODINO, Jr., New Jersey
JACK BROOKS, Texas
LOUIS STOKES, Ohio
LES ASPIN, Wisconsin
EDWARD P. BOLAND, Massachusetts
ED JENKINS, Georgia

DICK CHENEY, Wyoming
WM. S. BROOMFIELD, Michigan
HENRY J. HYDE, Illinois
JIM COURTER, New Jersey
BILL McCOLLUM, Florida
MICHAEL DeWINE, Ohio

(II)

# RULES OF PROCEDURE OF THE HOUSE SELECT COMMITTEE TO INVESTIGATE COVERT ARMS TRANSACTIONS WITH IRAN

## RULE 1. RULES

1.1  The provisions of House Resolution 12, 100th Congress, 1st Session, establishing this committee, and the Rules of the House of Representatives where not inconsistent therewith, are the rules of the committee, together with these Rules.

1.2  These Rules may be modified, amended, or repealed by the committee, provided that a notice in writing of the proposed changes has been given to each member at least 48 hours prior to the meeting at which action thereon is to be taken. Notwithstanding the provisions of Rule 8, proxies may not be used in any vote to modify, amend, adopt, or repeal any rule of the committee. The changes shall become effective immediately and shall be published in the Congressional Record.

## RULE 2. CONVENING OF MEETINGS

2.1  The committee may schedule a regular day and hour to meet.

2.2  The chairman shall have authority, upon proper notice, to call such additional meetings of the committee as he may deem necessary, and to dispense with regular meetings when, in his judgment, there is no need therefor, and may delegate such authority to the vice chairman or to any other member of the committee.

2.3  A majority of the members of the committee may call a special meeting for a specific matter pursuant to the procedures specified in House Rule XI(2)(c)(2).

2.4  In the case of any meeting of the committee, other than a regularly scheduled meeting, the clerk of the committee shall notify every member of the committee of the time and place of the meeting and shall give reasonable notice which, except in extraordinary circumstances, shall be at least 24 hours in advance of any meeting held in Washington, D.C., and at least 48 hours in the case of any meeting held outside Washington, D.C.

## RULE 8. MEETING PROCEDURES

8.1  Five members of the select committee shall constitute a quorum for the transaction of business other than the reporting of a matter, which shall require a majority of the committee to be actually present, except that two members shall constitute a quorum for the purpose of hearings to take testimony.

8.2  All meetings or hearings of the committee shall be conducted in open session, unless a majority of members of the select com-

2

mittee voting, there being in attendance at least two members of the committee, vote to close a meeting or hearing.

8.3   When a quorum for any particular purpose is present, general proxies may be counted for that purpose. Proxies may be general or may be limited to specific matters. A vote by any member of the committee with respect to any matter being considered may be cast by proxy if the proxy authorization is in writing, asserts that the member is absent on official business or is otherwise unable to be present, and designates the member or alternate member who is to execute the proxy authorization. Each proxy to be effective shall be signed by the member assigning his vote and shall contain the date and time that the proxy is signed. Proxies shall be effective at the session for which they are provided, or if that session is rescheduled, at the rescheduled session. Proxies shall not reduce the quorum required for reporting contempt matters and will not be counted towards the two-thirds minimum requirement pursuant to 18 U.S.C. § 6005 needed to seek an immunity order.

8.4   It shall be the duty of a staff officer designated by the chairman to keep or cause to be kept a stenographic record of all committee proceedings. All transcripts, affidavits, and depositions, *and copies and extracts thereof,* shall be the property of the select committee, and not of the witnesses.

8.5   The chairman, or in his absence the vice chairman, or in their absence a member designated by the chairman, shall preside over all meetings and hearings of the committee.

## RULE 4. SUBPOENAS

4.1   Unless otherwise determined by the select committee the chairman, upon consultation with the ranking minority member, shall authorize and issue subpoenas. In addition, the select committee may itself vote to authorize and issue subpoenas. Subpoenas shall be issued under the seal of the House and attested by the Clerk, and may be served by any persons designated by the chairman or any member. Subpoenas shall be issued upon the chairman's signature or that of a member designated by him or by the committee.

4.2   Orders for the furnishing of information by interrogatory, the inspecting of locations and systems of records upon notice except in exigent circumstances, the obtaining of evidence in other countries by means of letters rogatory or otherwise, and the other process for obtaining information available to the committee, shall be authorized and issued by the chairman, upon consultation with the ranking minority member, or by the select committee. Requests for investigations, reports, and other assistance from any agency of the executive, legislative, and judicial branches of the federal government, shall be made by the chairman, upon consultation with the ranking minority member, or by the committee.

4.3   Provisions may be included in the process of the committee to prevent the disclosure of committee demands for information, when deemed necessary for the security of information or the progress of the investigation by the chairman or member designated by him or the committee, such as requiring that companies re-

8

ceiving subpoenas for financial or toll records make no disclosure
to customers regarding the subpoena for ninety days or prohibiting
the revelation by witnesses and their counsel of committee inquir-
ies.

4.4   A subpoena duces tecum may be issued whose return shall
occur at a time and place other than that of a regularly scheduled
meeting. Upon the return of such a subpoena, the chairman or vice
chairman, or in their absence the ranking member of the majority
party who is present, on two hours' telephonic notice to all other
committee members, may convene a hearing for the sole purpose of
elucidating further information about the return on the subpoena
and deciding any objections to the subpoena.

### RULE 5. BROADCASTING, TELEVISION, AND PHOTOGRAPHY

5.1   Whenever any hearing or meeting conducted by the commit-
tee is open to the public, the committee may permit that hearing
or meeting to be covered, in whole or in part, by television broad-
cast, radio broadcast, and still photography, or by any of such
methods of coverage, under the following rules:

(1) If the television or radio coverage of the hearing or meet-
ing is to be presented to the public as live coverage, that cover-
age shall be conducted and presented without commercial
sponsorship.

(2) Broadcast and photographic coverage of testimony of sub-
poenaed witnesses will, at their request, not be permitted,
unless a majority of members of the committee voting, there
being in attendance the requisite number required for the con-
duct of business, vote otherwise.

(8) The chairman may set limits on the number of television
cameras, all operating from fixed positions, that shall be per-
mitted in a hearing room. The allocation among the television
media of the positions of the number of television cameras per-
mitted in a hearing room shall be in accordance with fair and
equitable procedures devised by the Executive Committee of
the Radio and Television Correspondents' Galleries.

(4) Television cameras shall be placed so as not to obstruct in
any way the space between any witness giving evidence or tes-
timony and any member of the committee, or the visibility of
that witness and that member to each other.

(5) Television cameras shall not be placed in positions which
obstruct unnecessarily the coverage of the hearing or meeting
by the other media.

(6) Equipment necessary for coverage by the television and
radio media shall not be installed in, or removed from the
hearing room while the committee is in session.

(7) Floodlights, spotlights, and flashguns shall not be used in
providing any method of coverage of the hearing or meeting,
except that the television media may install additional lighting
in the hearing room, without cost to the Government, in order
to raise the ambient lighting level in the hearing room to the
lowest level necessary to provide adequate television coverage
of the hearing at the current state of the art of television cov-
erage.

4

(8) The chairman may set limits on the number of press photographers permitted to cover a hearing or meeting by still photography. In the selection of these photographers, preference shall be given to photographers from Associated Press Photos and United Press International Newspictures. If request is made by more than the limit set by the chairman for coverage of the hearing by still photography, that coverage shall be made on the basis of a fair and equitable pool arrangement devised by the Standing Committee of Press Photographers.

(9) Photographers shall not position themselves, at any time during the course of the hearing or meeting, between the witness table and the committee members.

(10) Photographers shall not place themselves in positions which obstruct unnecessarily the coverage of the hearing or meeting by the other media.

(11) Personnel providing coverage by the television and radio media shall be then currently accredited to the Press Photographers' Gallery.

(12) Personnel providing coverage by still photography shall be then currently accredited to the Press Photographers' Gallery.

(13) Personnel providing coverage by the television and radio media and by still photography shall conduct themselves and their coverage activities in an orderly and unobtrusive manner.

## RULE 6. TAKING OF TESTIMONY AT HEARINGS

6.1   Witnesses required to appear before the committee shall be given, absent extraordinary circumstances, at least forty-eight hours' notice and all witnesses shall be furnished with a copy of these rules.

6.2   All witnesses at public or executive hearings who testify to matters of fact shall be sworn unless the committee provides otherwise.

6.3   Members of the committee who so desire shall have not to exceed five minutes to interrogate each witness until such time as each member has had an opportunity to interrogate such witness. The presiding member, in consultation with the ranking minority member present, may establish a format for additional or sustained questioning of any witness by the chair or otherwise.

6.4   Personal counsel retained by any witness and accompanying such witness shall be permitted to be present during the testimony of such witness at any public or executive hearing, and to advise such witness while he is testifying on his legal rights. The presiding member may require that the witness not be accompanied by anyone except such personal counsel.

6.5   The chairman, upon consultation with the ranking minority member, if he deems it necessary to maintain the security of classified subjects being discussed at closed hearings, may require that any personal counsel be qualified by having appropriate clearance, and that the witness or counsel, or both, execute nondisclosure agreements with the committee.

6.6  A witness who is unable to obtain counsel, or to obtain counsel with requisite clearance, may inform the committee of such fact, and if, consistent with the notice given under section 6.1 hereof the committee is so informed at least 24 hours prior to the witness' appearance, the committee shall then endeavor to obtain voluntary counsel for the witness. Such counsel shall act solely for the witness and not the committee. Failure to obtain qualified counsel will not excuse the witness from appearing and testifying.

6.7  Counsel shall conduct themselves in an ethical and professional manner. The presiding member may punish breaches of order and decorum, and of professional ethics on the part of counsel, by censure and exclusion from the hearings, and the committee may cite the offender to the House for contempt. If counsel is excluded, the provisions of Rule 6.6 hereof for a witness who is unable to obtain qualifed counsel shall apply.

6.8  Any witness desiring to make an introductory statement in executive or public hearings shall file a copy of such statement with the chairman or clerk of the committee 48 hours in advance of the hearings at which the statement is to be presented unless the presiding member waives this requirement. The presiding member shall reduce the 48 hours proportionately for witnesses who receive less than 72 hours' notice of the hearing. The presiding member shall determine whether such statement may be read or placed in the record of the hearing.

6.9  An accurate stenographic record shall be kept of the testimony of all witnesses in executive and public hearings. A witness may obtain a transcript copy of his testimony given at a public session. If the witness testified at an executive session, the record of his testimony shall be made available for inspection by the witness and his counsel, and the chairman may authorize provision of a copy to the witness or his counsel if such testimony does not include classified information.

6.10  Whenever it is asserted that the evidence or testimony at any investigatory hearings may tend to defame, degrade, or incriminate any person, the committee shall afford such person an opportunity voluntarily to appear as a witness, and receive and dispose of requests from such person to subpoena additional witnesses. Otherwise, the chairman shall receive and the committee shall dispose of requests to subpoena additional witnesses. In the case of persons so mentioned or identified at public sessions, a request to appear personally or to subpoena additional witnesses before the committee shall be considered untimely if it is not received by the chairman in writing on or before fifteen days subsequent to the day on which said person's name was mentioned or otherwise specifically identified during a public hearing held before the committee, unless the chairman waives this requirement.

6.11  No evidence or testimony taken in executive session may be released or used in public sessions without the consent of the committee, which shall require a vote, counting proxy votes, of a majority of the members of the committee.

6.12  In the presiding member's discretion, witnesses may submit brief and pertinent sworn statements in writing for inclusion in the record. The presiding member may condition the filing of such a sworn statement upon the offeror's agreeing to appear

6

personally before the committee and to testify concerning the matters contained in his sworn statement, as well as any other matters related to the subject of the investigation before the committee.

## RULE 7. AFFIDAVITS AND DEPOSITIONS

7.1  Unless otherwise determined by the select committee the chairman, upon consultation with the ranking minority member, or the select committee, may authorize the taking of affidavits, and of depositions pursuant to notice or subpoena. Such authorization may occur on a case-by-case basis, or by instructions to take a series of affidavits or depositions. The chairman may either issue the deposition notices himself, or direct the chief counsel to do so. Notices for the taking of depositions shall specify a time and place for examination. Affidavits and depositions shall be taken under oath administered by a member or a person otherwise authorized by law to administer oaths.

7.2  The committee shall not initiate procedures leading to contempt proceedings in the event a witness fails to appear at a deposition unless the deposition notice was accompanied by a committee subpoena authorized and issued by the chairman or the committee pursuant to Rule 4 hereof regarding subpoenas.

7.3  Witnesses may be accompanied at a deposition by personal counsel to advise them of their rights, subject to the provisions of Rules 6.4, 6.5, 6.6 and 6.7 hereof. Absent special permission or instructions from the chairman, no one may be present in depositions except members, staff designated by the chairman, an official reporter, the witness and any personal counsel; observers or counsel for other persons or for the agencies under investigation may not attend.

7.4  Witnesses shall be examined in depositions by a member or members or by staff designated by the chairman. Objections by the witness as to the form of questions shall be noted for the record. If a witness objects to a question and refuses to answer, the members or staff may proceed with the deposition, or may obtain, at that time or at a subsequent time, a ruling on the objection by telephone or otherwise from the chairman or his designee. The committee shall not initiate procedures leading to contempt for refusals to answer questions at a deposition unless the witness refuses to testify after his objection has been overruled and after he has been ordered and directed to answer by the chairman or his designee upon consultation with the ranking minority member or his designee.

7.5  The committee staff shall insure that the testimony is either transcribed or electronically recorded, or both. If a witness' testimony is transcribed, he shall be furnished with an opportunity to review a copy. No later than five days thereafter, the staff shall enter the changes, if any, requested by the witness, with a statement of the witness' reasons for the changes, and the witness shall be instructed to sign the transcript. The individual administering the oath, if other than a Member, shall certify on the transcript that the witness was duly sworn in his presence, the transcriber shall certify that the transcript is a true record of the testimony, and the transcript shall be filed, together with any electronic recording,

with the clerk of the committee in Washington, D.C. Affidavits and depositions shall be deemed to have been taken in Washington, D.C. once filed there with the clerk of the committee for the committee's use.

7.6   Unless otherwise directed by the committee, all depositions, affidavits, and other materials received in the investigation shall be considered nonpublic until received by the select committee. Once received by the select committee, use of such materials shall be governed by the select committee rules. All such material shall, unless otherwise directed by the committee, be available for use by the members of the select committee in open session; provided, that classified information or material shall not be used in open session except as permitted by the committee, which shall require a vote, counting proxy votes, of a majority of the members of the committee.

## RULE 8. PROCEDURES FOR HANDLING OF CLASSIFIED OR SENSITIVE MATERIALS

8.1   Committee staff offices shall operate under strict security precautions. The chairman shall request the Permanent Select Committee on Intelligence and the Clerk and Sergeant at Arms to provide assistance necessary to insure strict security. Sensitive or classified documents and material shall be segregated and stored in an appropriately secure storage area. They may be examined only at secure reading facilities. Copying, duplicating, or removal from the committee offices of such documents and other materials are prohibited except as is necessary for authorized use in, or preparation for, interviews, depositions, or committee meetings or hearings.

8.2   Each member of the committee shall at all times have access to all papers and other materials received from any source. The chief counsel or staff director, as designated by the chairman, shall be responsible for the control, under appropriate security procedures, of all classified papers and other classified materials in the possession of the committee, and for the maintenance, under such procedures, of a registry which will number and identify all such materials. Such registry shall be available to any member of the committee.

8.3   Access by staff to classified information supplied to the committee shall be limited on a need-to-know basis, pursuant to instructions of the chairman, acting in consultation with the ranking minority member, either on a case-by-case basis or by general instructions to the chief counsel or staff director. All staff with such access shall be required to have appropriate security clearance. The chief counsel or staff director shall maintain a list of those staff, including associate staff, who may attend executive sessions and have access to classified materials. The names of such associate staff shall be entered by the chief counsel or staff director on the list only after the committee member has designated the staff members in writing, and the staff members have been determined by the chairman, in consultation with the ranking minority member, to have an appropriate security clearance.

8

8.4   The chairman, in consultation with the ranking minority member, may limit staff attendance at certain executive sessions, and staff access to certain categories of classified materials, which involve matters of particularly high sensitivity.

8.5   Members who are not members of the committee shall be granted access to such hearings, records, data, charts and files of the committee and shall be admitted on a nonparticipatory basis to hearings of the committee which involve classified material, apart from material otherwise restricted by the committee, on the basis of the following provisions:

(1) Members who desire to examine materials in the possession of the committee or to attend committee hearings on a nonparticipatory basis should notify the clerk of the committee in writing.

(2) Each such request by a member must be considered by the committee, a quorum for the reporting of a matter being present, at the earliest practicable opportunity. The committee must determine by record vote whatever action it deems necessary in light of all the circumstances of each individual request. The committee shall take into account in its deliberations, such considerations as the sensitivity of the information sought to the national defense or the confidential conduct of the foreign relations of the United States, the likelihood of its being directly or indirectly disclosed, the jurisdictional interest of the member making the request and such other concerns—constitutional or otherwise—as affect the public interest of the United States. Such actions as the committee may take include, but are not limited to: (i) approving the request, in whole or part; (ii) denying the request; (iii) providing in different form than requested information or material which is the subject of the request.

(3) In matters touching on such requests, the committee may, in its discretion, consult the Director of Central Intelligence and such other officials as it may deem necessary.

(4) In the event that the member making the request in question does not accede to the determination or any part thereof of the committee as regards the request, that member should notify the committee in writing of the grounds for such disagreement. The committee shall subsequently consider the matter and decide, by record vote, what further action or recommendation, if any, it will take.

(5) Members examining material pursuant to this rule shall be prohibited to disclose the material further, and every member shall be furnished a copy of this rule prior to examining such material.

8.6   The committee may direct that particular matters or classes of matter shall not be made available to any person by its members, staff, or others, or may impose any other restriction. Classified information or classified material possessed or controlled by the committee, or information deemed sensitive by the committee shall not be made available to any person by its members or staff except by vote of the committee, which shall require a vote, counting proxy votes, of a majority of the members of the committee.

9

8.7 The chairman and ranking minority member shall be authorized to insure that the Speaker and Minority Leader are fully informed regarding the investigation, any other provisions of these rules notwithstanding.

## RULE 9. STAFF, DETAILEES, AND CONSULTANTS

9.1 All staff of the committee shall be appointed by the chairman, either by hiring, contracting, detailing, or pursuant to Rule 9.4. Upon termination of employment by the committee, each member of the staff, or consultant, shall surrender all classified and other material relating to the work of the committee which came into his possession while in the employ of the committee.

9.2 In the event of an unauthorized release of information or other violation the chairman or the committee may refer the matter to the House Committee on Standards of Official Conduct. Nothing in these rules shall be construed to abridge the right of a Member to make or transmit a complaint to the Committee on the Standards of Official Conduct, or shall be construed to expand the authority of that committee, over matters related to the conduct of this committee's investigation pursuant to House Resolution 12, beyond what that resolution provides. The employment of any member of the staff or consultant who fails to conform to any of these Rules may be immediately terminated.

9.3 The chairman shall have the authority to utilize the services, information, facilities, and personnel of the departments and agencies of the government, including personnel of the General Accounting Office pursuant to section 784(a) of Title 31, United States Code. Requests by the chairman may specify by name, or describe otherwise, the personnel to be detailed.

9.4 Upon request of the chairman, staff of the House, or of House or joint committees, at the direction of their members, committee chairmen, or the Speaker, as appropriate, may serve as associate staff to the select committee for designated purposes starting with their appointment by the chairman.

9.5 All travel, including foreign travel, shall be approved by the chairman.

9.6 The chairman shall have the authority to procure the temporary or intermittent services of experts or consultants or organizations thereof to make studies or assist or advise the subcommittee with respect to any matter under investigation. Associate staff, government personnel detailed to the subcommittee, and consultants, shall be deemed staff of the select committee to the extent necessary for the purposes of their designated association, detail, or consultancy, including the purposes of interrogation of witnesses and security of information under Rules 5, 6, 7, 8 and 9 hereof.

9.7 The chairman, upon consultation with the ranking minority member, may establish such additional personnel, physical, communications, and document security procedures, not inconsistent with these rules, as he deems necessary to safeguard classified information or materials possessed or controlled by the select committee.

9.8 No member of the committee staff shall be employed by or detailed or otherwise assigned to the committee unless and until he

10

agrees in writing, as a condition of employment, with regard to any
classified information which comes into such person's possession
either while a member of the committee staff or by virtue of such
position:

    (a) not to disclose such information oither while a member of
the committee staff or at any time thereafter;

    (b) in response to any request for testimony about such infor-
mation, to provide notice to, and not to disclose such informa-
tion

except as directed by the committee in accordance with these rules,
or after the committee's termination, in such manner as may be
determined by the House.

## RULE 10. JOINT HEARINGS

10.1  The Select Committee may conduct hearings jointly with
the Senate Select Committee on Secret Military Assistance to Iran
and the Nicaraguan Opposition.

10.2  Rules 1.3, 2, and 5 of the Senate Select Committee, to the
extent that they are inconsistent with the rules of this Committee,
shall govern hearings conducted jointly by the two Committees,
when such hearings are held in facilities provided by the Senate.

10.3  Notwithstanding Rule 10.2, all such joint hearings shall for
all purposes be considered hearings of the House Select Committee.

O