**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES, <br><br> 2138 Rayburn House Office Building <br> Washington, D.C. 20515, <br><br> *Plaintiff*, <br><br> v. <br><br> ELVIS CHAN, in his official capacity as Assistant Special Agent of the Federal Bureau of Investigation, <br><br> 450 Golden Gate Ave. <br> San Francisco, CA 94102, <br><br> *Defendant*. |

Case No. 1:24-cv-344

# Exhibit W

102D CONGRESS
2d Session } TASK FORCE PRINT

# U.S. HOUSE OF REPRESENTATIVES

---

# RULES

OF THE

# TASK FORCE TO INVESTIGATE CERTAIN ALLEGATIONS CONCERNING THE HOLDING OF AMERICAN HOSTAGES BY IRAN IN 1980 ("OCTOBER SURPRISE TASK FORCE")



## ADOPTED MARCH 11, 1992

Printed for the use of the October Surprise Task Force

---

U.S. GOVERNMENT PRINTING OFFICE

54-461                     WASHINGTON : 1992

For sale by the U.S. Government Printing Office
Superintendent of Documents, Congressional Sales Office, Washington, DC 20402
ISBN 0-16-038390-0

H382-17

TASK FORCE TO INVESTIGATE CERTAIN ALLEGATIONS CONCERNING THE HOLDING OF AMERICAN HOSTAGES BY IRAN IN 1980 ("OCTOBER SURPRISE TASK FORCE")

LEE H. HAMILTON, Indiana, *Chairman*
HENRY J. HYDE, Illinois, *Ranking Republican Member*

STEPHEN J. SOLARZ, New York
SAM GEJDENSON, Connecticut
MERVYN M. DYMALLY, California
ROBERT G. TORRICELLI, New Jersey
HOWARD L. BERMAN, California
EDWARD F FEIGHAN, Ohio
TED WEISS, New York

JIM LEACH, Iowa
OLYMPIA J. SNOWE, Maine
DOUG BEREUTER, Nebraska
PORTER J. GOSS, Florida

E. LAWRENCE BARCELLA, JR , *Chief Counsel*
RICHARD J. LEON, *Chief Minority Counsel*

(II)

# CONTENTS

| | Page |
|---|---|
| Part 1—House Resolution 258 | 1 |
| Part 2—Rules of procedure of the task force of members of the House Committee on Foreign Affairs to investigate certain allegations concerning the holding of Americans as hostages by Iran in 1980 | 9 |
| Rule 1. Rules | 9 |
| Rule 2. Convening of Meetings | 9 |
| Rule 3. Meeting Procedures | 9 |
| Rule 4. Subpoenas | 10 |
| Rule 5. Broadcasting, Television, and Photography | 11 |
| Rule 6. Taking of Testimony at Hearings | 12 |
| Rule 7. Affidavits and Depositions | 14 |
| Rule 8. Procedures for Handling of Classified or Sensitive Materials | 15 |
| Rule 9. Staff, Detailees, and Consultants | 17 |
| Part 3—Selected Rules of the House of Representatives | 19 |

(III)

IV

# House Calendar No. 81

102D CONGRESS
1ST SESSION

# H. RES. 258

## [Report No. 102–296, Parts I and II]

Creating a Task Force of Members of the Foreign Affairs Committee To Investigate Certain Allegations Concerning the Holding of Americans as Hostages by Iran in 1980.

———————————————

## IN THE HOUSE OF REPRESENTATIVES

### OCTOBER 23, 1991

Mr HAMILTON (for himself, Mr. GEPHARDT, Mr. FASCELL, and Mr. DER-RICK) submitted the following resolution, which was referred to the Committee on Rules

### NOVEMBER 8, 1991

Reported from the Committee on Rules with an amendment and referred to the Committee on House Administration for a period ending not later than November 15, 1991, for consideration of such provisions of the resolution and amendment as fall within the jurisdiction of that committee pursuant to clause 1(k) of rule X.

[Strike out all after the resolving clause and insert the part printed in italic]

### NOVEMBER 15, 1991

Referral to the Committee on House Administration extended for a period ending not later than November 19, 1991

### NOVEMBER 19, 1991

Reported from the Committee on House Administration with an amendment, referred to the House Calendar, and ordered to be printed

[Omit the part in black brackets and insert the part printed in boldface roman]

[For text of introduced resolution, see copy of resolution as introduced on October 23, 1991]

(1)

2

2

# RESOLUTION

Creating a Task Force of Members of the Foreign Affairs Committee To Investigate Certain Allegations Concerning the Holding of Americans as Hostages by Iran in 1980.

1    *Resolved, That (1) There is hereby created a Task*
2    *Force of Members of the House Committee on Foreign Af-*
3    *fairs to Investigate Certain Allegations Concerning the*
4    *Holding of Americans as Hostages by Iran in 1980, to be*
5    *composed of thirteen Members of the House Committee on*
6    *Foreign Affairs to be appointed by the Speaker, one of*
7    *whom he shall designate as chairman. The Speaker shall,*
8    *with respect to the Republican Members of the Task Force,*
9    *make such appointments upon consultation with the Repub-*
10   *lican Leader. Any vacancy occurring in the membership of*
11   *the Task Force shall be filled in the same manner in which*
12   *the original appointment was made. The Task Force is,*
13   *with respect to the matters described below, authorized and*
14   *directed to conduct a full and complete investigation and*
15   *study, and to make such findings as are warranted, includ-*
16   *ing, where appropriate, a finding that no credible evidence*
17   *can be found to support particular allegations. The Task*
18   *Force is further authorized and directed to make such rec-*
19   *ommendations to the Committee on Foreign Affairs as the*
20   *Task Force deems appropriate, including those concerning*
21   *the amendment of existing legislation or the enactment of*

**HRES 258 RH**

3

3

1 *new legislation. The Task Force shall fulfill these functions*

2 *with respect to the following matters:*

3      *(a) Communications by or on behalf of the 1980*

4      *Reagan Presidential Campaign, or individuals rep-*

5      *resenting or associated with that campaign, with any*

6      *person or persons representing or associated with the*

7      *Iranian Government or those persons with Iran hold-*

8      *ing Americans as Hostages during 1979 and 1980;*

9      *(b) Any attempt or proposal to attempt, by the*

10      *1980 Reagan Presidential Campaign or persons rep-*

11      *resenting or associated with that campaign, to delay*

12      *the release of the Americans held as hostages in Iran;*

13      *(c) Any activity by the 1980 Reagan Presi-*

14      *dential Campaign to acquire or disseminate any in-*

15      *formation relating to actions being taken or consid-*

16      *ered by the United States Government in an effort to*

17      *obtain the release of the Americans being held as hos-*

18      *tages in Iran;*

19      *(d) Any sale or other transmittal of arms, spare*

20      *parts or other assistance to Iran, in 1980 or there-*

21      *after, by any person or nation, intended to delay the*

22      *release of the American held as Hostages by Iran, and*

23      *any approval, acquiescence or knowledge of such sales*

24      *or transmittals by the 1980 Reagan Presidential*

4

4

1    *Campaign or persons representing or associated with*

2    *that campaign; and*

3        *(e) Any actions taken to keep any communica-*

4    *tions or actions as described above, if any such com-*

5    *munications or actions took place, from being re-*

6    *vealed to the Government of the United States or the*

7    *American people.*

8        *(2) One-third of the members of the Task Force shall*

9    *constitute a quorum for the transaction of business other*

10   *than the reporting of a matter, which shall require a major-*

11   *ity of the Task Force to be actually present, except that the*

12   *Task Force may designate a lesser number, but not less than*

13   *two, as a quorum for the purpose of holding hearings to*

14   *take testimony. When a quorum for any particular purpose*

15   *is present, general proxies may be counted for that purpose.*

16   *The Task Force may sit while the House is reading a meas-*

17   *ure for amendment under the five-minute rule. The rules*

18   *of the House shall govern the Task Force where not incon-*

19   *sistent with this resolution. The Task Force shall adopt ad-*

20   *ditional written rules, which shall be public, to govern its*

21   *procedures, which shall not be inconsistent with this resolu-*

22   *tion or the rules of the House. Such rules may govern the*

23   *conduct of the depositions, interviews, and hearings of the*

24   *Task Force, including the persons present. Such rules shall*

5

5

1 *provide for the protection of classified information from un-*

2 *authorized disclosure.*

3 *(3) The Task Force is authorized to sit and act during*

4 *the present Congress at such times and places within the*

5 *United States, including any Commonwealth or possession*

6 *thereof, or in any other country, whether the House is in*

7 *session, or has adjourned; to require, by subpoena or other-*

8 *wise, the attendance and testimony of such witnesses, the*

9 *furnishing of information by interrogatory, and the produc-*

10 *tion of such books, records, correspondence, memoranda, pa-*

11 *pers, documents, calendars, recordings, data compilations*

12 *from which information can be obtained, tangible objects,*

13 *and other things and information of any kind as it deems*

14 *necessary, including all intelligence materials however clas-*

15 *sified, White House materials, campaign materials, mate-*

16 *rials of present and former government officials and mate-*

17 *rials pertaining to unvouchered expenditures or concerning*

18 *communications interceptions or surveillance; and to obtain*

19 *evidence in other appropriate countries with the coopera-*

20 *tion of their governments and by letters rogatory, commis-*

21 *sions, field depositions and other appropriate mechanisms.*

22 *Unless otherwise determined by the Task Force the chair-*

23 *man, upon consultation with the ranking Republican mem-*

24 *ber, on the Task Force, shall authorize and issue subpoenas.*

25 *Subpoenas shall be issued under the seal of the House and*

6

6

1 *attested by the Clerk, and may be served by any person des-*

2 *ignated by the chairman or any member. The Task Force*

3 *may request investigations, reports, and other assistance*

4 *from any agency of the executive, legislative, and judicial*

5 *branches of the Federal Government.*

6     *(4) The chairman, or in his absence a member des-*

7 *ignated by the chairman, shall preside at all meetings and*

8 *hearings of the Task Force. All meetings and hearings of*

9 *the Task Force shall be conducted in open session, unless*

10 *a majority of members of the Task Force voting, there being*

11 *in attendance the requisite number required for the purpose*

12 *of hearings to take testimony, vote to close a meeting or*

13 *hearing.*

14     *(5) The Chairman, upon consultation with the ranking*

15 *Republican member, may employ and fix the compensation*

16 *of such clerks, experts, consultants, technicians, attorneys,*

17 *investigators, and clerical and stenographic assistants as*

18 *it considers necessary to carry out the purposes of this reso-*

19 *lution. The Task Force shall be deemed a committee of the*

20 *House for all purposes of law, including House Rule XI*

21 *(2)(n), and sections 6005, 1505, and 1621 of title 18, section*

22 *192 of title 2, 1754(b)(1)(B)(ii) of title 22, and section*

23 *734(a) of title 31, United States Code. The Task Force may*

24 *reimburse the members of its staff for travel, subsistence,*

25 *and other necessary expenses incurred by them in the per-*

7

7

1 formance of the duties vested in the Task Force, other than

2 expenses in connection with meetings of the Task Force held

3 in the District of Columbia.

4    (6) Unless otherwise determined by the Task Force the

5 chairman, upon consultation with the ranking Republican

6 member, or the Task Force, may authorize the taking of

7 affidavits, and of depositions pursuant to notice or sub-

8 poena, by a Member or by designated staff, under oath ad-

9 ministered by a Member or a person otherwise authorized

10 by law to administer oaths. Disposition and affidavit testi-

11 mony shall be deemed to have been taken in Washington,

12 DC, before the Task Force once filed there with the clerk

13 of the Task Force for the Task Force's use. Depositions shall

14 be deemed to be taken in Executive Session.

15    (7) The Task Force shall be authorized to respond to

16 any judicial or other process, or to make any applications

17 to court, upon consultation with the Speaker consistent with

18 rule L.

19    (8) The Task Force shall provide other committees and

20 Members of the House with access to information and pro-

21 ceedings, consistent with rule XLVIII(7)(c): Provided, That

22 the Task Force may direct that particular matters or classes

23 of matter shall not be made available to any person by its

24 members, staff, or others, or may impose any other restric-

25 tion. The Task Force may require its staff to enter

8

8

1   *nondisclosure agreements and its chairman, in consultation*

2   *with the ranking Republican member, may require others,*

3   *such as counsel for witnesses, to do so: Provided further,*

4   *That the Task Force shall, as appropriate, provide access*

5   *to information and proceedings to the Speaker, the Majority*

6   *Leader, the Republican Leader, and their appropriately*

7   *cleared and designated staff.*

8     *(9) Authorized expenses of the Task Force for investiga-*

9   *tions and studies, including for the procurement of the serv-*

10   *ices of individual consultants or organizations thereof, and*

11   *for training of staff, shall be paid from the contingent fund*

12   *of the House upon vouchers signed by the chairman and*

13   *approved by the* [*Speaker*] **Chairman of the Com-**

14   **mittee on House Administration***.*

15     *(10) By July 1, 1992, the Task Force shall report to*

16   *the House the status of its investigation. With respect to*

17   *this and any other report of the Task Force, including its*

18   *final report, the report shall be accompanied by supple-*

19   *mental or additional minority views.*

20     *(11) At the conclusion of the existence of the Task Force*

21   *all records of the Task Force shall become the records of*

22   *the Committee on Foreign Affairs except for those records*

23   *relating to intelligence matters which shall, upon the Task*

24   *Force's designation, become the records of the House Perma-*

25   *nent Select Committee on Intelligence.*

## PART 2—RULES OF PROCEDURE OF THE TASK FORCE OF MEMBERS OF THE HOUSE COMMITTEE ON FOREIGN AFFAIRS TO INVESTIGATE CERTAIN ALLEGATIONS CONCERNING THE HOLDING OF AMERICANS AS HOSTAGES BY IRAN IN 1980

### ["October Surprise Task Force"]

### Rule 1. Rules

1.1 The provisions of House Resolution 258, 102nd Congress, 2nd Session, establishing this Task Force, and the Rules of the House of Representatives where not inconsistent therewith, are the rules of the Task Force, together with these Rules.

1.2 These Rules may be modified, amended, or repealed by the Task Force, provided that a notice in writing of the proposed changes has been given to each member at least 48 hours prior to the meeting at which action thereon is to be taken. Notwithstanding the provisions of Rule 3, proxies may not be used in any vote to modify, amend, adopt, or repeal any rule of the Task Force. The changes shall become effective immediately and shall be published in the Congressional Record.

### Rule 2. Convening of Meetings

2.1 The Task Force may schedule a regular day and hour to meet.

2.2 The chairman shall have authority, upon proper notice, to call such additional meetings of the Task Force as he may deem necessary, and to dispense with regular meetings when, in his judgment, there is no need therefore, and may delegate such authority to any other member of the Task Force.

2.3 A majority of the members of the Task Force may call a special meeting for a specific matter pursuant to the procedures specified in House Rule XI(2)(c)(2).

2.4 In the case of any meeting of the Task Force, other than a regularly scheduled meeting, the clerk of the Task Force shall notify each member of the Task Force of the time and place of the meeting and shall give reasonable notice which, except in extraordinary circumstances, shall be at least 24 hours in advance of any meeting held in Washington, D.C., and at least 48 hours in the case of any meeting held outside Washington, D.C.

### Rule 3. Meeting Procedures

3.1 One-third of the members of the Task Force shall constitute a quorum for the transaction of business other than the reporting of a matter, which shall require a majority of the Task Force, except that two members shall constitute a quorum for hearing testimony.

3.2 All meetings or hearings of the Task Force shall be conducted in open session, unless a majority of members of the Task Force voting, there being in attendance at least two members of the Task Force, vote to close a meeting or hearing.

3.3 When a quorum for any particular purpose is present, general proxies may be counted for that purpose. Proxies may be general or may be limited to specific matters. A vote by any member of the Task Force with respect to any matter being considered may be cast by proxy if the proxy authorization is in writing, asserts that the member is absent on official business or is otherwise unable to be present, and designates the member or alternate member who is to execute the proxy authorization. Each proxy to be effective shall be signed by the member assigning his vote and shall contain the date and time that the proxy is signed. Proxies shall be effective at the session for which they are provided, or if that session is rescheduled, at the rescheduled session. Proxies shall not reduce the quorum required for reporting contempt matters and will not be counted towards the two-thirds minimum requirement pursuant to 18 U.S.C. § 6005 needed to seek an immunity order.

3.4 It shall be the duty of a staff officer designated by the chairman to keep or cause to be kept a stenographic record of all Task Force proceedings. All transcripts, affidavits, and depositions, *and copies and extracts thereof*, shall be the property of the Task Force, and not of the witnesses, unless the Task Force determines otherwise.

3.5 The Chairman, or in his absence a member designated by the chairman, shall preside over all meetings and hearings of the Task Force.

### Rule 4. Subpoenas

4.1 The chairman, upon consultation with the ranking Republican member, shall authorize and issue subpoenas. In addition, the Task Force may itself vote to authorize and issue subpoenas. Subpoenas shall be issued under the seal of the House and attested by the Clerk, and may be served by any persons designated by the chairman. Subpoenas shall be issued upon the chairman's signature or that of a member designated by him or by the Task Force.

4.2 Orders for the furnishing of information by interrogatory, the inspecting of locations and systems of records upon notice except in exigent circumstances, the obtaining of evidence in other countries by means of letters rogatory or otherwise, and other processes for obtaining information available to the Task Force, shall be authorized and issued by the chairman, upon consultation with the ranking Republican member, or by the Task Force. In addition to the procedures provided for in Rule 4.1 and 4.4, requests for investigations, reports, and other assistance from any agency of the executive, legislative, and judicial branches of the federal government, may be made by the chairman, upon consultation with the ranking Republican member, or by the Task Force.

4.3 Provisions may be included in the process of the Task Force to prevent the disclosure of Task Force demands for information, when deemed necessary for the security of information or the progress of the investigation by the chairman or member designat-

ed by him or the Task Force, such as requiring that companies receiving subpoenas for financial or toll records make no disclosure to customers regarding the subpoena for ninety days or prohibiting the revelation by witnesses and their counsel of Task Force inquiries.

4.4 A subpoena duces tecum for documents may be issued whose return shall occur at a deposition or at another time and place other than at a hearing or meeting. When a return on such a subpoena or order is incomplete or accompanied by an objection, the chairman, upon consultation with the ranking Republican member or, if unavailable, the senior Republican member, may convene a meeting or hearing on shortened notice to determine the adequacy of the return and to rule on the objection or may refer the issues raised by the return for decision by poll of the Task Force. At a meeting or hearing for testimony on such a return, two members shall constitute a quorum.

### Rule 5. Broadcasting, Television, and Photography

5.1 Whenever any hearing or meeting conducted by the Task Force is open to the public, the Task Force may permit that hearing or meeting to be covered, in whole or in part, by television broadcast, radio broadcast, and still photography, or by any of such methods of coverage, under the following rules:

(1) If the television or radio coverage of the hearing or meeting is to be presented to the public as live coverage, that coverage shall be conducted and presented without commercial sponsorship.

(2) The chairman may set limits on the number of television cameras, all operating from fixed positions, that shall be permitted in a hearing room. The allocation among the television media of the positions of the number of television cameras permitted in a hearing room shall be in accordance with fair and equitable procedures devised by the Executive Committee of the Radio and Television Correspondents' Galleries.

(3) Television cameras shall be placed so as not to obstruct in any way the space between any witness giving evidence or testimony and any member of the committee, or the visibility of that witness and that member to each other.

(4) Television cameras shall not be placed in positions which obstruct unnecessarily the coverage of the hearing or meeting by the other media.

(5) Equipment necessary for coverage by the television and radio media shall not be installed in, or removed from the hearing room while the Task Force is in session.

(6) Floodlights, spotlights, and flashguns shall not be used in providing any method of coverage of the hearing or meeting, except that the television media may install additional lighting in the hearing room, without cost to the Government, in order to raise the ambient lighting level in the hearing room to the lowest level necessary to provide adequate television coverage of the hearing at the current state of the art of television coverage.

(7) The chairman may set limits on the number of press photographers permitted to cover a hearing or meeting by still photography. In the selection of these photographers, preference shall be given to photographers from Associated Press Photos and United Press International Newspictures. If request is made by more than the limit set by the chairman for coverage of the hearing by still photography, that coverage shall be made on the basis of a fair and equitable pool arrangement devised by the Standing Committee of Press Photographers.

(8) Photographers shall not position themselves, at any time during the course of the hearing or meeting, between the witness table and the Task Force members.

(9) Photographers shall not place themselves in positions which obstruct unnecessarily the coverage of the hearing or meeting by the other media.

(10) Personnel providing coverage by the television and radio media shall be then currently accredited to the Press Photographers' Gallery.

(11) Personnel providing coverage by still photography shall be then currently accredited to the Press Photographers' Gallery.

(12) Personnel providing coverage by the television and radio media and by still photography shall conduct themselves and their coverage activities in an orderly and unobtrusive manner.

## Rule 6. Taking of Testimony at Hearings

6.1 Witnesses required to appear before the Task Force shall be given, absent extraordinary circumstances, at least forty-eight hours' notice and all witnesses shall be furnished with a copy of these rules, House Rules X and XI and H. Res. 258.

6.2 All witnesses at public or executive hearings who testify to matters of fact shall be sworn unless the chairman authorizes waiver of the oath.

6.3 Members of the Task Force who so desire shall have not to exceed five minutes to interrogate each witness until such time as each member has had an opportunity to interrogate such witness. The presiding member, in consultation with the ranking Republican member present, may establish a format for additional or sustained questioning of any witness by the chair or by another member.

6.4 Counsel representing any witness and accompanying such witness shall be permitted to be present during the testimony of such witness at any public or executive hearing, and to advise such witness while he is testifying on his legal rights; provided, however, that in the case of any witness who is an officer or employee of the government, or of a corporation or association, or represented by counsel representing other witnesses, the chairman of the Task Force, upon consultation with the ranking Republican member, may rule that such representation creates a conflict of interest, and that the witness shall be represented by other counsel without

such conflict. Counsel shall not be permitted to make a statement, unless authorized to do so by the chairman.

6.5 The chairman, upon consultation with the ranking Republican member, if he deems it necessary to maintain the security of classified subjects being discussed at closed hearings, may require that any personal counsel be qualified by having appropriate clearance, and that the witness or counsel, or both, execute nondisclosure agreements with the Task Force.

6.6 A witness who is unable to obtain counsel, or to obtain counsel with requisite clearance, may inform the Task Force of such fact, and if, consistent with the notice given under section 6.1 hereof the Task Force is so informed at least 24 hours prior to the witness' appearance, the Task Force shall then endeavor to obtain voluntary counsel for the witness. Such counsel shall act solely for the witness and not the Task Force. Failure to obtain qualified counsel will not excuse the witness from appearing and testifying.

6.7 Counsel shall conduct themselves in an ethical and professional manner. The presiding member may punish breaches of order and decorum, and of professional ethics on the part of counsel, by censure and exclusion from the hearing, and the Task Force may cite the offender to the House for contempt. If counsel is excluded, the provisions of Rule 6.6 hereof for a witness who is unable to obtain qualified counsel shall apply.

6.8 Any witness desiring to make an introductory statement in executive or public hearings shall file a copy of such statement with the chairman or clerk of the Task Force 48 hours in advance of the hearings at which the statement is to be presented unless the Task Force by majority vote waives this requirement. The presiding member shall reduce the 48 hours proportionately for witnesses who receive less than 72 hours' notice of the hearing The presiding member shall determine whether such statement may be read or placed in the record of the hearing. Unless the Task Force determines otherwise, a witness who appears before the Task Force under a grant of immunity shall not be permitted to make a statement or testify except to respond directly to questions posed by members or staff.

6.9 An accurate stenographic record shall be kept of the testimony of all witnesses in executive and public hearings. A witness may obtain a transcript copy of his testimony given at a public session. If the witness testified at an executive session, the record of his testimony shall be made available for inspection by the witness and his counsel, and the chairman may authorize provision of a copy to the witness or his counsel if such testimony does not include classified information.

6.10 No evidence or testimony taken in executive session may be released or used in public sessions without the consent of the Task Force.

6.11 In the presiding member's discretion, witnesses may submit brief and pertinent sworn statements in writing for inclusion in the record. The presiding member may condition the filing of such a sworn statement upon the offeror's agreeing to appear personally before the Task Force and to testify concerning the matters contained in his sworn statement, as well as any other matters related to the subject of the investigation before the Task Force.

14

## Rule 7. Affidavits and Depositions

7.1 The chairman, upon consultation with the ranking Republican member, or the Task Force, may authorize the taking of affidavits, and of depositions pursuant to notice or subpoena. Such authorization may occur on a case-by-case basis, or by instructions to take a series of affidavits or depositions. The chairman may either issue the deposition notices himself, or direct the chief counsel to do so. Notices for the taking of depositions shall specify a time and place for examination. Affidavits and depositions shall be taken under oath administered by a member or a person otherwise authorized by law to administer oaths. Such depositions may, if deemed necessary by the chairman in consultation with the ranking Republican member, be taken by telephone.

7.2 The Task Force shall not initiate procedures leading to contempt proceedings in the event a witness fails to appear at a deposition unless the deposition notice was accompanied by a Task Force subpoena authorized and issued by the chairman or the Task Force pursuant to Rule 4 hereof regarding subpoenas.

7.3 Witnesses may be accompanied at a deposition by counsel representing the witness to advise them of their rights, subject to the provisions of Rules 6.4, 6.5, 6.6 and 6.7 hereof. Absent special permission or instructions from the chairman, no one may be present in depositions except members, chief counsel, chief minority counsel, staff designated by the chief counsel and chief minority counsel, an official reporter, the witness and counsel representing the witness; observers or counsel for other persons or for agencies may not attend.

7.4 Witnesses shall be examined in depositions by a member or members or by the chief counsel, chief minority counsel or staff designated by the chairman. Objections by the witness as to the form of questions shall be noted for the record. If a witness objects to a question and refuses to answer, the members or staff may proceed with the deposition, or may obtain, at the time or at a subsequent time, a ruling on the objection by telephone or otherwise from the chairman or his designee. The Task Force shall not initiate procedures leading to contempt for refusals to answer questions at a deposition unless the witness refuses to testify after his objection has been overruled and after he has been ordered and directed to answer by the chairman or a member designated by the chairman, upon consultation with the ranking Republican member or his member designee.

7.5 The staff shall insure that the testimony is either transcribed or electronically recorded, or both. If a witness' testimony is transcribed, he shall be furnished with an opportunity to review a copy. No later than five days thereafter, the staff shall enter the changes, if any, requested by the witness, with a statement of the witness' reasons for the changes, and the witness shall be instructed to sign the transcript. The individual administering the oath, if other than a Member, shall certify on the transcript that the witness was duly sworn in his presence, the transcriber shall certify that the transcript is a true record of the testimony, and the transcript shall be filed, together with any electronic recording, with the clerk of the Task Force in Washington, D.C. Affidavits and

depositions shall be deemed to have been taken in Washington, D.C. once filed there with the clerk of the Task Force for the Task Force's use.

7.6 All depositions, affidavits, and other materials received in the investigation shall be considered nonpublic until received by the Task Force. Once received by the Task Force, use of such materials shall be governed by the Task Force rules. Classified information or material shall not be used in open session except as permitted by the Task Force, which shall require a vote of a majority of the members of the Task Force.

7.7 Written interrogatories and requests for admission may be authorized and issued by the Task Force or chairman, in consultation with the ranking Republican member, and shall specify a date for filing an answer with the chief clerk. Written interrogatories and requests for admissions shall be answered under oath.

### Rule 8. Procedures for Handling of Classified or Sensitive Materials

8.1 Staff offices shall operate under strict security precautions. The chairman may request the Clerk and Sergeant at Arms to provide assistance necessary to insure strict security. Sensitive or classified documents and material shall be segregated and stored in an appropriately secure storage area. They may be examined only at secure reading facilities. Copying, duplicating, or removal from the offices of such documents and other materials are prohibited except as is necessary for authorized use in, or preparation for, interviews, depositions, or meetings or hearings.

8.2 The Task Force may direct that particular matters or classes of matter shall not be made available to any person by its members, staff, or others, or may impose any other restriction. Classified information or classified material possessed or controlled by the Task Force, or information deemed sensitive by the Task Force, shall not be made available to any person by its members or staff or anyone who has access to the material except by vote of the Task Force, which shall require a vote of the majority of the members of the Task Force.

8.3 Each member of the Task Force shall at all times have access to all papers and other materials received from any source. The chief counsel, as designated by the chairman, shall be responsible for the control, under appropriate security procedures, of all classified papers and other classified materials in the possession of the Task Force, and for the maintenance, under such procedures, of a registry which will number and identify all such classified materials. Such registry shall be available to any member of the Task Force.

8.4 Access by staff to classified information shall be limited on a need-to-know basis, pursuant to instructions of the chairman, acting in consultation with the ranking Republican member, either on a case-by-case basis or by general instructions to the chief counsel and chief minority counsel. All staff with such access shall be required to have appropriate security clearance. The chief counsel shall maintain a list, available to chief minority counsel, of those

staff who may attend executive sessions and have access to classified materials.

8.5 The chairman, in consultation with the ranking Republican member, may limit staff attendance at certain executive sessions, and staff access to certain categories of classified materials, which involve matters of particularly high sensitivity.

8.6 Members who are not members of the Task Force shall be granted access to such hearings, records, data, charts and files of the Task Force and shall be admitted on a nonparticipatory basis to hearings of the Task Force, as the chairman deems appropriate, which involve classified material, apart from material otherwise restricted by the Task Force, on the basis of the following provisions:

(1) Members who desire to examine materials in the possession of the Task Force or to attend Task Force hearings on a nonparticipatory basis should notify the clerk of the Task Force in Writing.

(2) Each such request by a member must be considered by the Task Force, a quorum for the reporting of matter being present, at the earliest practicable opportunity. The Task Force must determine by record vote whatever action it deems necessary in light of all the circumstances of each individual request. The Task Force shall take into account in its deliberations, such considerations as the sensitivity of the information sought to the national defense or the confidential conduct of the foreign relations of the United States, the likelihood of its being directly or indirectly disclosed, the jurisdictional interest of the member making the request and such other concerns—constitutional or otherwise—as affect the public interest of the United States. Such actions as the Task Force may take include, but are not limited to: (i) approving the request, in whole or part; (ii) denying the request; (iii) providing in different form than requested information or material which is the subject of the request.

(3) In matters touching on such requests, the Task Force may, in its discretion, consult the Director of Central Intelligence and such other officials as it may deem necessary.

(4) In the event that the member making the request in question does not accede to the determination or any part thereof of the Task Force as regards the request, that member should notify the Task Force in writing of the grounds for such disagreement. The Task Force shall subsequently consider the matter and decide, by record vote, what further action or recommendation, if any, it will take.

(5) Members examining material pursuant to this rule are prohibited to disclose the material further, and every member shall be furnished a copy of this rule prior to examining such material.

8.7 Other than as provided for in rule 8.8 and 6.10, no member of the Task Force or its staff shall disclose, in whole or in part or by way of summary, to any person, governmental agency or official, outside the Task Force and its staff, for any purpose or in connection with any proceeding, judicial or otherwise, any testimony taken, including the identity of witnesses who have testified or will testify, or material presented or discussions had, in depositions or

17

at meetings and hearings held in executive session, or other materials or information designated as sensitive by the chairman, unless otherwise authorized by Task Force or the chairman. All members of the Task Force and its staff shall agree in writing to abide by the conditions of a non-disclosure oath promulgated by the Task Force consistent with that used by the House Permanent Select Committee on Intelligence.

8.8 The chairman and ranking Republican member shall be authorized to insure that the Speaker and Republican Leader are fully informed regarding the investigation, any other provisions of these rules notwithstanding.

### Rule 9. Staff, Detailees, and Consultants

9.1 The chairman, upon consultation with the ranking Republican member, may employ and fix the compensation of such clerks, experts, consultants, technicians, attorneys, investigators and clerical and stenographic assistants as are considered necessary to carry out the purposes of the Resolution. In addition, the chairman, upon consultation with the ranking Republican member, may designate various staff of the Congress, at the written recommendation of members of the Task Force, as associate staff to the Task Force. Upon termination of employment by the Task Force, each member of the staff, or consultant, shall surrender all classified and other material relating to the work of the Task Force which came into his possession while in the employ of the Task Force.

9.2 In the event of an unauthorized release of information or other violation, the chairman or the Task Force may refer the matter to the House Committee on Standards of Official Conduct. Nothing in these rules shall be construed to abridge the right of a Member to make or transmit a complaint to the Committee on the Standards of Official Conduct, or shall be construed to expand the authority of that committee, over matters related to the conduct of this Task Force's investigation pursuant to House Resolution 258, beyond what that resolution provides. The employment of any member of the staff or consultant who fails to conform to any of these Rules may be immediately terminated by the chairman upon consultation with the ranking Republican member.

9.3 The chairman, upon consultation with the ranking Republican member, shall have the authority to utilize the services, information, facilities, and personnel of the departments and agencies of the government. Requests by the chairman may specify by name, or describe otherwise, the personnel to be detailed.

9.4 For purposes of these Rules, Task Force staff shall include all employees hired pursuant to rule 9.1, all associate staff designated pursuant to Rule 9.1, and all staff of the Speaker, Majority Leader and the Republican Leader who are appropriately cleared and designated in writing.

9.5 The chairman, upon consultation with the ranking Republican member, shall have the authority to procure the temporary or intermittent services of experts or consultants or organizations thereof to make studies or assist or advise the Task Force with respect to any matter under investigation. Government personnel detailed to the Task Force, and consultants, shall be deemed staff of

18

the Task Force to the extent necessary for the purposes of their designated association, detail, or consultancy, including the purposes of interrogation of witnesses and security of information under Rules 5, 6, 7, 8 and 9 hereof.

9.6 The chairman, upon consultation with the ranking Republican member, may establish such additional personnel, physical, communications, and document security procedures, not inconsistent with these rules, as he deems necessary to safeguard classified information or materials possessed or controlled by the Task Force.

## PART 3—SELECTED RULES OF THE HOUSE OF REPRESENTATIVES

Following are selected Rules of the House of Representatives which are also a part of the Task Force rules and which affect its organization, administration, and operation. The Rules cited are not exclusive of other Rules of the House of Representatives applicable to the Task Force.

### Rule X. Establishment and Jurisdiction of Standing Committees

#### The Committees and Their Jurisdiction

1. There shall be in the House the following standing committees, each of which shall have the jurisdiction and related functions assigned to it by this clause and clauses 2, 3, and 4; and all bills, resolutions, and other matters relating to subjects within the jurisdiction of any standing committee as listed in this clause shall (in accordance with and subject to clause 5) be referred to such committees, as follows:

**(a) Committee on Agriculture.**

(1) Adulteration of seeds, insect pests, and protection of birds and animals in forest reserves.

(2) Agriculture generally.

(3) Agricultural and industrial chemistry.

(4) Agricultural colleges and experiment stations.

(5) Agricultural economics and research.

(6) Agricultural education extension services.

(7) Agricultural production and marketing and stabilization of prices of agricultural products, and commodities (not including distribution outside of the United States).

(8) Animal industry and diseases of animals.

(9) Crop insurance and soil conservation.

(10) Dairy industry.

(11) Entomology and plant quarantine.

(12) Extension of farm credit and farm security.

(13) Forestry in general, and forest reserves other than those created from the public domain.

(14) Human nutrition and home economics.

(15) Inspection of livestock and meat products.

(16) Plant industry, soils, and agricultural engineering.

(17) Rural electrification.

(18) Commodities exchanges.

(19) Rural development.

**(b) Committee on Appropriations.**

(19)

(1) Appropriation of the revenue for the support of the Government.

(2) Rescissions of appropriations contained in appropriation Acts.

(3) Transfers of unexpended balances.

(4) The amount of new spending authority (as described in the Congressional Budget Act of 1974) which is to be effective for a fiscal year, including bills and resolutions (reported by other committees) which provide new spending authority and are referred to the committee under clause 4(a).

The committee shall include separate headings for "Rescissions" and "Transfers of Unexpended Balances" in any bill or resolution as reported from the committee under its jurisdiction specified in subparagraph (2) or (3), with all proposed rescissions and proposed transfers listed therein; and shall include a separate section with respect to such rescissions or transfers in the accompanying committee report. In addition to its jurisdiction under the preceding provisions of this paragraph, the committee shall have the fiscal oversight function provided for in clause 2(b)(3) and the budget hearing function provided for in clause 4(a).

**(c) Committee on Armed Services.**

(1) Common defense generally.

(2) The Department of Defense generally, including the Departments of the Army, Navy, and Air Force generally.

(3) Ammunition depots; forts; arsenals; Army, Navy, and Air Force reservations and establishments.

(4) Conservation, development, and use of naval petroleum and oil shale reserves.

(5) Pay, promotion, retirement, and other benefits and privileges of members of the armed forces.

(6) Scientific research and development in support of the armed services.

(7) Selective service.

(8) Size and composition of the Army, Navy, and Air Force.

(9) Soldiers' and sailors' homes.

(10) Strategic and critical materials necessary for the common defense.

(11) Military applications of nuclear energy.

In addition to its legislative jurisdiction under the preceding provisions of this paragraph (and its general oversight function under clause 2(b)(1)), the committee shall have the special oversight function provided for in clause 3(a) with respect to international arms control and disarmament, and military dependents education.

**(d) Committee on Banking, Finance and Urban Affairs.**

(1) Banks and banking, including deposit insurance and Federal monetary policy.

(2) Money and credit, including currency and the issuance of notes and redemption thereof; gold and silver, including the coinage thereof; valuation and revaluation of the dollar.

(3) Urban development.

(4) Public and private housing.

(5) Economic stabilization, defense production, renegotiation, and control of the price of commodities, rents, and services.

(6) International finance.

21

(7) Financial aid to commerce and industry (other than transportation).

(8) International Financial and Monetary organizations.

(e)(1) **Committee on the Budget,** consisting of the following Members:

(A) Members who are members of other standing committees, including five Members who are members of the Committee on Appropriations, and five Members who are members of the Committee on Ways and Means;

(B) one Member from the leadership of the majority party; and

(C) one Member from the leadership of the minority party.

No Member other than the representative from the leadership of the majority party and the representative from the leadership of the minority party, shall serve as a member of the Committee on the Budget during more than three Congresses in any period of five successive Congresses (disregarding for this purpose any service performed as a member of such committee for less than a full session in any Congress), except that an incumbent chairman having served on the committee for three Congresses and having served as chairman of the committee for not more than one Congress shall be eligible for reelection to the committee as chairman for one additional Congress. Previous service on the Committee before the One Hundred Second Congress shall be disregarded, for the purposes of this prohibition during the One Hundred Second Congress, for the ranking minority member of the Committee (who is not the Member designated as the Member from the leadership of the minority party). A minority Member having served on the committee for three Congresses and having served as the ranking minority member in the last such Congress shall be eligible for reelection to the committee as ranking minority Member for one additional Congress. All selections of Members to serve on the committee shall be made without regard to seniority.

(2) All concurrent resolutions on the budget (as defined in section 3 of the Congressional Budget Act of 1974) and other matters required to be referred to the committee under titles III and IV of that Act.

(3) The committee shall have the duty—

(A) to report the matters required to be reported by it under titles III and IV of the Congressional Budget Act of 1974;

(B) to make continuing studies of the effect on budget outlays of relevant existing and proposed legislation and to report the results of such studies to the House on a recurring basis;

(C) to request and evaluate continuing studies of tax expenditures, to devise methods of coordinating tax expenditures, policies, and programs with direct budget outlays, and to report the results of such studies to the House on a recurring basis; and

(D) to review, on a continuing basis, the conduct by the Congressional Budget Office of its functions and duties.

(f) **Committee on the District of Columbia.**

(1) All measures relating to the municipal affairs of the District of Columbia in general, other than appropriations therefor, including—

(2) Adulteration of foods and drugs.

(3) Incorporation and organization of societies.

(4) Insurance, executors, administrators, wills, and divorce.

(5) Municipal code and amendments to the criminal and corporation laws.

(6) Municipal and juvenile courts.

(7) Public health and safety, sanitation, and quarantine regulations.

(8) Regulation of sale of intoxicating liquors.

(9) Taxes and tax sales.

(10) St. Elizabeths hospital.

**(g) Committee on Education and Labor.**

(1) Measures relating to education or labor generally.

(2) Child labor.

(3) Columbia Institution for the Deaf, Dumb, and Blind; Howard University; Freedmen's Hospital.

(4) Convict labor and the entry of goods made by convicts into interstate commerce.

(5) Labor standards.

(6) Labor statistics.

(7) Mediation and arbitration of labor disputes.

(8) Regulation or prevention of importation of foreign laborers under contract.

(9) Food programs for children in schools.

(10) United States Employees' Compensation Commission.

(11) Vocational rehabilitation.

(12) Wages and hours of labor.

(13) Welfare of miners.

(14) Work incentive programs.

In addition to its legislative jurisdiction under the preceding provisions of this paragraph (and its general oversight function under clause 2(b)(1)), the committee shall have the special oversight function provided for in clause 3(c) with respect to domestic educational programs and institutions, and programs of student assistance, which are within the jurisdiction of other committees.

**(h) Committee on Energy and Commerce.**

(1) Interstate and foreign commerce generally.

(2) National energy policy generally.

(3) Measures relating to the exploration, production, storage, supply, marketing, pricing, and regulation of energy resources, including all fossil fuels, solar energy, and other unconventional or renewable energy resources.

(4) Measures relating to the conservation of energy resources.

(5) Measures relating to the commercial application of energy technology.

(6) Measures relating to energy information generally.

(7) Measures relating to (A) the generation and marketing of power (except by federally chartered or Federal regional power marketing authorities), (B) the reliability and interstate transmission of, and ratemaking for, all power, and (C) the siting of generation facilities; except the installation of interconnections between Government waterpower projects.

(8) Interstate energy compacts.

23

(9) Measures relating to general management of the Department of Energy, and the management and all functions of the Federal Energy Regulatory Commission.

(10) Inland waterways.

(11) Railroads, including railroad labor, railroad retirement and unemployment, except revenue measures related thereto.

(12) Regulation of interstate and foreign communications.

(13) Securities and exchanges.

(14) Consumer affairs and consumer protection.

(15) Travel and tourism.

(16) Public health and quarantine.

(17) Health and health facilities, except health care supported by payroll deductions.

(18) Biomedical research and development.

Such committee shall have the same jurisdiction with respect to regulation of nuclear facilities and of use of nuclear energy as it has with respect to regulation of nonnuclear facilities and of use of nonnuclear energy. In addition to its legislative jurisdiction under the preceding provisions of this paragraph (and its general oversight functions under clause 2(b)(1)), such committee shall have the special oversight functions provided for in clause (3)(h) with respect to all laws, programs, and Government activities affecting nuclear and other energy.

(i) **Committee on Foreign Affairs.**

(1) Relations of the United States with foreign nations generally.

(2) Acquisition of land and buildings for embassies and legations in foreign countries.

(3) Establishment of boundary lines between the United States and foreign nations.

(4) Foreign loans.

(5) International conferences and congresses.

(6) Intervention abroad and declarations of war.

(7) Measures relating to the diplomatic service.

(8) Measures to foster commercial intercourse with foreign nations and to safeguard American business interests abroad.

(9) Neutrality.

(10) Protection of American citizens abroad and expatriation.

(11) The American National Red Cross.

(12) United Nations Organizations.

(13) Measures relating to international economic policy.

(14) Export controls, including nonproliferation of nuclear technology and nuclear hardware.

(15) International commodity agreements (other than those involving sugar), including all agreements for cooperation in the export of nuclear technology and nuclear hardware.

(16) Trading with the enemy.

(17) International education.

In addition to its legislative jurisdiction under the preceding provisions of this paragraph (and its general oversight function under clause 2(b)(1)), the committee shall have the special oversight functions provided for in clause 3(d) with respect to customs administration, intelligence activities relating to foreign policy, international financial and monetary organizations, and international fishing agreements.

24

**(j) Committee on Government Operations.**

(1) Budget and accounting measures, other than appropriations.

(2) The overall economy and efficiency of Government operations and activities, including Federal procurement.

(3) Reorganizations in the executive branch of the Government.

(4) Intergovernmental relationships between the United States and the States and municipalities, and general revenue sharing.

(5) National archives.

(6) Measures providing for off-budget treatment of Federal agencies or programs.

(7) Measures providing exemption from reduction under any order issued under part C of the Balanced Budget and Emergency Deficit Control Act of 1985.

In addition to its legislative jurisdiction under the preceding provisions of this paragraph (and its oversight functions under clause 2(b) (1) and (2)), the committee shall have the function of performing the activities and conducting the studies which are provided for in clause 4(c).

**(k) Committee on House Administration.**

(1) Appropriations from the contingent fund.

(2) Auditing and settling of all accounts which may be charged to the contingent fund.

(3) Employment of persons by the House, including clerks for Members and committees, and reporters of debates.

(4) Except as provided in clause 1(p)(4), matters relating to the Library of Congress and the House Library; statuary and pictures; acceptance or purchase of works of art for the Capitol; the Botanic Gardens; management of the Library of Congress, purchase of books and manuscripts; erection of monuments to the memory of individuals.

(5) Except as provided in clause 1(p)(4), matters relating to the Smithsonian Institution and the incorporation of similar institutions.

(6) Expenditure of contingent fund of the House.

(7) Matters relating to printing and correction of the Congressional Record.

(8) Measures relating to accounts of the House generally.

(9) Measures relating to assignment of office space for Members and committees.

(10) Measures relating to the disposition of useless executive papers.

(11) Measures relating to the election of the President, Vice President, or Members of Congress; corrupt practices; contested elections; credentials and qualifications; and Federal elections generally.

(12) Measures relating to services to the House, including the House Restaurant, parking facilities and administration of the House Office Buildings and of the House wing of the Capitol.

(13) Measures relating to the travel of Members of the House.

(14) Measures relating to the raising, reporting and use of campaign contributions for candidates for office of Representative in the House of Representatives and of Resident Commissioner to the United States from Puerto Rico.

(15) Measures relating to the compensation, retirement and other benefits of the Members, officers, and employees of the Congress. In addition to its legislative jurisdiction under the preceding provisions of this paragraph (and its general oversight function under clause 2(b)(1)), the committee shall have the function of performing the duties which are provided for in clause 4(d).

**(l) Committee on Interior and Insular Affairs.**

(1) Forest reserves and national parks created from the public domain.

(2) Forfeiture of land grants and alien ownership, including alien ownership of mineral lands.

(3) Geological Survey.

(4) Interstate compacts relating to apportionment of waters for irrigation purposes.

(5) Irrigation and reclamation, including water supply for reclamation projects, and easements of public lands for irrigation projects, and acquisition of private lands when necessary to complete irrigation projects.

(6) Measures relating to the care and management of Indians, including the care and allotment of Indian lands and general and special measures relating to claims which are paid out of Indian funds.

(7) Measures relating generally to the insular possessions of the United States, except those affecting the revenue and appropriations.

(8) Military parks and battlefields; national cemeteries administered by the Secretary of the Interior, and parks within the District of Columbia.

(9) Mineral land laws and claims and entries thereunder.

(10) Mineral resources of the public lands.

(11) Mining interests generally.

(12) Mining schools and experimental stations.

(13) Petroleum conservation on the public lands and conservation of the radium supply in the United States.

(14) Preservation of prehistoric ruins and objects of interest on the public domain.

(15) Public lands generally, including entry, easements, and grazing thereon.

(16) Relations of the United States with the Indians and the Indian tribes.

(17) Regulation of the domestic nuclear energy industry, including regulation of research and development reactors and nuclear regulatory research.

In addition to its legislative jurisdiction under the preceding provisions of this paragraph (and its general oversight function under clause 2(b)(1)), the committee shall have the special oversight functions provided for in clause 3(e) with respect to all programs affecting Indians and nonmilitary nuclear energy and research and development including the disposal of nuclear waste.

**(m) Committee on the Judiciary.**

(1) Judicial proceedings, civil and criminal generally.

(2) Apportionment of Representatives.

(3) Bankruptcy, mutiny, espionage, and counterfeiting.

(4) Civil liberties.

(5) Constitutional amendments.

(6) Federal courts and judges.

(7) Immigration and naturalization.

(8) Interstate compacts generally.

(9) Local courts in the Territories and possessions.

(10) Measures relating to claims against the United States.

(11) Meetings of Congress, attendance of Members and their acceptance of incompatible offices.

(12) National penitentiaries.

(13) Patent Office.

(14) Patents, copyrights, and trademarks.

(15) Presidential succession.

(16) Protection of trade and commerce against unlawful restraints and monopolies.

(17) Revision and codification of the Statutes of the United States.

(18) State and territorial boundary lines.

(19) Communist and other subversive activities affecting the internal security of the United States.

**(n) Committee on Merchant Marine and Fisheries.**

(1) Merchant marine generally.

(2) Oceanography and Marine Affairs, including coastal zone management.

(3) Coast Guard, including lifesaving service, lighthouses, lightships, and ocean derelicts.

(4) Fisheries and wildlife, including research, restoration, refuges, and conservation.

(5) Measures relating to the regulation of common carriers by water (except matters subject to the jurisdiction of the Interstate Commerce Commission) and to the inspection of merchant marine vessels, lights and signals, lifesaving equipment, and fire protection on such vessels.

(6) Merchant marine officers and seamen.

(7) Navigation and the laws relating thereto, including pilotage.

(8) Panama Canal and the maintenance and operation of the Panama Canal, including the administration, sanitation, and government of the Canal Zone; and interoceanic canals generally.

(9) Registering and licensing of vessels and small boats.

(10) Rules and international arrangements to prevent collisions at sea.

(11) United States Coast Guard and Merchant Marine Academies, and State Maritime Academies.

(12) International fishing agreements.

**(o) Committee on Post Office and Civil Service.**

(1) Census and the collection of statistics generally.

(2) All Federal Civil Service, including intergovernmental personnel.

(3) Postal-savings banks.

(4) Postal service generally, including the railway mail service, and measures relating to ocean mail and pneumatic-tube service; but excluding post roads.

(5) Status of officers and employees of the United States, including their compensation, classification, and retirement.

(6) Hatch Act.

(7) Holidays and celebrations.

(8) Population and demography.

**(p) Committee on Public Works and Transportation.**

(1) Flood control and improvement of rivers and harbors.

(2) Measures relating to the Capitol Building and the Senate and House Office Buildings.

(3) Measures relating to the construction or maintenance of roads and post roads, other than appropriations therefor; but it shall not be in order for any bill providing general legislation in relation to roads to contain any provision for any specific road, nor for any bill in relation to a specific road to embrace a provision in relation to any other specific road.

(4) Measures relating to the construction or reconstruction, maintenance, and care of the buildings and grounds of the Botanic Gardens, the Library of Congress, and the Smithsonian Institution.

(5) Measures relating to the purchase of sites and construction of post offices, customhouses, Federal courthouses, and Government buildings within the District of Columbia.

(6) Oil and other pollution of navigable waters.

(7) Public buildings and occupied or improved grounds of the United States generally.

(8) Public works for the benefit of navigation, including bridges and dams (other than international bridges and dams).

(9) Water power.

(10) Transportation, including civil aviation except railroads, railroad labor and pensions.

(11) Roads and the safety thereof.

(12) Water transportation subject to the jurisdiction of the Interstate Commerce Commission.

(13) Related transportation regulatory agencies, except (A) the Interstate Commerce Commission as it relates to railroads; (B) Federal Railroad Administration; and (C) Amtrak.

**(q) Committee on Rules.**

(1) The rules and joint rules (other than rules or joint rules relating to the Code of Official Conduct), and order of business of the House.

(2) Recesses and final adjournments of Congress.

(3) The Committee on Rules is authorized to sit and act whether or not the House is in session.

**(r) Committee on Science, Space, and Technology.**

(1) Astronautical research and development, including resources, personnel, equipment, and facilities.

(2) Bureau of Standards, standardization of weights and measures and the metric system.

(3) National Aeronautics and Space Administration.

(4) National Aeronautics and Space Council.

(5) National Science Foundation.

(6) Outer space, including exploration and control thereof.

(7) Science Scholarships.

(8) Scientific research, development, and demonstration, and projects therefor, and all federally owned or operated nonmilitary energy laboratories.

(9) Civil aviation research and development.

(10) Environmental research and development.

(11) All energy research, development, and demonstration, and projects therefor, and all federally owned or operated nonmilitary energy laboratories.

(12) National Weather Service.

In addition to its legislative jurisdiction under the preceding provisions of this paragraph (and its general oversight function under clause 2(b)(1)), the committee shall have the special oversight function provided for in clause 3(f) with respect to all nonmilitary research and development.

(s) **Committee on Small Business.**

(1) Assistance to and protection of small business, including financial aid.

(2) Participation of small-business enterprises in Federal procurement and Government contracts.

In addition to its legislative jurisdiction under the preceding provisions of this paragraph and (its general oversight function under clause 2(b)(1)), the committee shall have the special oversight function provided for in clause 3(g) with respect to the problems of small business.

(t) **Committee on Standards of Official Conduct.**

(1) Measures relating to the Code of Official Conduct.

In addition to its legislative jurisdiction under the preceding provision of this paragraph (and its general oversight function under clause 2(b)(1)), the committee shall have the functions with respect to recommendations, studies, investigations, and reports which are provided for in clause 4(e), and the functions designated in titles I and V of the Ethics in Government Act of 1978 and sections 7342, 7351, and 7353 of title 5, United States Code.

(u) **Committee on Veterans' Affairs.**

(1) Veterans' measures generally.

(2) Cemeteries of the United States in which veterans of any war or conflict are or may be buried, whether in the United States or abroad, except cemeteries administered by the Secretary of the Interior.

(3) Compensation, vocational rehabilitation, and education of veterans.

(4) Life insurance issued by the Government on account of service in the Armed Forces.

(5) Pensions of all the wars of the United States, general and special.

(6) Readjustment of servicemen to civil life.

(7) Soldiers' and sailors' civil relief.

(8) Veterans' hospitals, medical care, and treatment of veterans.

(v) **Committee on Ways and Means.**

(1) Customs, collection districts, and ports of entry and delivery.

(2) Reciprocal trade agreements.

(3) Revenue measures generally.

(4) Revenue measures relating to the insular possessions.

(5) The bonded debt of the United States (subject to the last sentence of clause 4(g) of this rule).

(6) The deposit of public moneys.

(7) Transportation of dutiable goods.

(8) Tax exempt foundations and charitable trusts.

(9) National social security, except (A) health care and facilities programs that are supported from general revenues as opposed to payroll deductions and (B) work incentive programs.

## General Oversight Responsibilities

2. (a) In order to assist the House in—

(1) its analysis, appraisal, and evaluation of (A) the application, administration, execution, and effectiveness of the laws enacted by the Congress, or (B) conditions and circumstances which may indicate the necessity or desirability of enacting new or additional legislation, and

(2) its formulation, consideration, and enactment of such modifications of or changes in those laws, and of such additional legislation, as may be necessary or appropriate,

the various standing committees shall have oversight responsibilities as provided in paragraph (b).

(b)(1) Each standing committee (other than the Committee on Appropriations and the Committee on the Budget) shall review and study, on a continuing basis, the application, administration, execution, and effectiveness of those laws, or parts of laws, the subject matter of which is within the jurisdiction of that committee and the organization and operation of the Federal agencies and entities having responsibilities in or for the administration and execution thereof, in order to determine whether such laws and the programs thereunder are being implemented and carried out in accordance with the intent of the Congress and whether such programs should be continued, curtailed, or eliminated. In addition, each such committee shall review and study any conditions or circumstances which may indicate the necessity or desirability of enacting new or additional legislation within the jurisdiction of that committee (whether or not any bill or resolution has been introduced with respect thereto), and shall on a continuing basis undertake future research and forecasting on matters within the jurisdiction of that committee. Each such committee having more than twenty members shall establish an oversight subcommittee, or require its subcommittees, if any, to conduct oversight in the area of their respective jurisdiction, to assist in carrying out its responsibilities under this subparagraph. The establishment of oversight subcommittees shall in no way limit the responsibility of the subcommittees with legislative jurisdiction from carrying out their oversight responsibilities.

(2) The Committee on Government Operations shall review and study, on a continuing basis, the operation of Government activities at all levels with a view to determining their economy and efficiency.

(3) The Committee on Appropriations shall conduct such studies and examinations of the organization and operation of executive departments and other executive agencies (including any agency the majority of the stock of which is owned by the Government of the United States) as it may deem necessary to assist it in the determination of matters within its jurisdiction.

(c) Each standing committee of the House shall have the function of reviewing and studying on a continuing basis the impact or prob-

able impact of tax policies affecting subjects within its jurisdiction as described in clauses 1 and 3.

## Special Oversight Functions

3. (a) The Committee on Armed Services shall have the function of reviewing and studying, on a continuing basis, all laws, programs, and Government activities dealing with or involving international arms control and disarmament and the education of military dependents in schools.

(b) The Committee on the Budget shall have the function of—

(1) making continuing studies of the effect on budget outlays of relevant existing and proposed legislation, and reporting the results of such studies to the House on a recurring basis; and

(2) requesting and evaluating continuing studies of tax expenditures, devising methods of coordinating tax expenditures, policies, and programs with direct budget outlays, and reporting the results of such studies to the House on a recurring basis.

(c) The Committee on Education and Labor shall have the function of reviewing, studying, and coordinating, on a continuing basis, all laws, programs, and Government activities dealing with or involving domestic educational programs and institutions, and programs of student assistance, which are within the jurisdiction of other committees.

(d) The Committee on Foreign Affairs shall have the function of reviewing and studying, on a continuing basis, all laws, programs, and Government activities dealing with or involving customs administration, intelligence activities relating to foreign policy, international financial and monetary organizations, and international fishing agreements.

(e) The Committee on Interior and Insular Affairs shall have the function of reviewing and studying, on a continuing basis, all laws, programs, and Government activities dealing with Indians and nonmilitary nuclear energy and research and development including the disposal of nuclear waste.

(f) The Committee on Science, Space, and Technology shall have the function of reviewing and studying, on a continuing basis, all laws, programs, and Government activities dealing with or involving nonmilitary research and development.

(g) The Committee on Small Business shall have the function of studying and investigating, on a continuing basis, the problems of all types of small business.

(h) The Committee on Energy and Commerce shall have the function of reviewing and studying on a continuing basis, all laws, programs and Government activities relating to nuclear and other energy.

(i) The Committee on Rules shall have the function of reviewing and studying, on a continuing basis, the congressional budget process, and the committee shall, from time to time, report its findings and recommendations to the House.

## Additional Functions of Committees

4. (a)(1)(A) The Committee on Appropriations shall, within 30 days after the transmittal of the Budget to the Congress each year, hold hearings on the Budget as a whole with particular reference to—

    (i) the basic recommendations and budgetary policies of the President in the presentation of the Budget; and

    (ii) the fiscal, financial, and economic assumptions used as bases in arriving at total estimated expenditures and receipts.

(B) In holding hearings pursuant to subdivision (A), the committee shall receive testimony from the Secretary of the Treasury, the Director of the Office of Management and Budget, the Chairman of the Council of Economic Advisers, and such other persons as the committee may desire.

(C) Hearings pursuant to subdivision (A), or any part thereof, shall be held in open session, except when the committee, in open session and with a quorum present, determines by roll call vote that the testimony to be taken at that hearing on that day may be related to a matter of national security: *Provided, however,* That the committee may by the same procedure close one subsequent day of hearing. A transcript of all such hearings shall be printed and a copy thereof furnished to each Member, Delegate, and the Resident Commissioner from Puerto Rico.

(D) Hearings pursuant to subdivision (A), or any part thereof, may be held before joint meetings of the committee and the Committee on Appropriations of the Senate in accordance with such procedures as the two committees jointly may determine.

(2) Whenever any bill or resolution which provides new spending authority described in section 401(c)(2)(C) of the Congressional Budget Act of 1974 is reported by a committee of the House and the amount of new budget authority which will be required for the fiscal year involved if such bill or resolution is enacted as so reported exceeds the appropriate allocation of new budget authority reported as described in clause 4(h) in connection with the most recently agreed to concurrent resolution on the budget for such fiscal year, such bill or resolution shall then be referred to the Committee on Appropriations with instructions to report it, with the committee's recommendations and (if the committee deems it desirable) with an amendment limiting the total amount of new spending authority provided in the bill or resolution, within 15 calendar days (not counting any day on which the House is not in session) beginning with the day following the day on which it is so referred. If the Committee on Appropriations fails to report the bill or resolution within such 15-day period, the committee shall be automatically discharged from further consideration of the bill or resolution and the bill or resolution shall be placed on the appropriate calendar.

(3) In addition, the Committee on Appropriations shall study on a continuing basis those provisions of law which (on the first day of the first fiscal year for which the congressional budget process is effective) provide spending authority of permanent budget authority, and shall report to the House from time to time its recommendations for terminating or modifying such provisions.

(b) The Committee on the Budget shall have the duty—

(1) to review on a continuing basis the conduct by the Congressional Budget Office of its functions and duties;

(2) to hold hearings, and receive testimony from Members of Congress and such appropriate representatives of Federal departments and agencies, the general public, and national organizations as it deems desirable, in developing the concurrent resolutions on the budget for each fiscal year;

(3) to make all reports required of it by the Congressional Budget Act of 1974, including the reporting of reconciliation bills and resolutions when so required;

(4) to study on a continuing basis those provisions of law which exempt Federal agencies or any of their activities or outlays from inclusion in the Budget of the United States Government, and to report to the House from time to time its recommendations for terminating or modifying such provisions; and

(5) to study on a continuing basis proposals designed to improve and facilitate methods of congressional budget-making, and to report to the House from time to time the results of such study together with its recommendations.

(c)(1) The Committee on Government Operations shall have the general function of—

(A) receiving and examining reports of the Comptroller General of the United States and of submitting such recommendations to the House as it deems necessary or desirable in connection with the subject matter of such reports;

(B) evaluating the effects of laws enacted to reorganize the legislative and executive branches of the Government; and

(C) studying intergovernmental relationships between the United States and the States and municipalities, and between the United States and international organizations of which the United States is a member.

(2) In addition to its duties under subparagraph (1), the Committee on Government Operations may at any time conduct investigations of any matter without regard to the provisions of clause 1, 2, or 3 (or this clause) conferring jurisdiction over such matter upon another standing committee. The committee's findings and recommendations in any such investigation shall be made available to the other standing committee or committees having jurisdiction over the matter involved (and included in the report of any such other committee when required by clause 2(l)(3) of Rule XI).

(d) The Committee on House Administration shall have the function of—

(1) examining all bills, amendments, and joint resolutions after passage by the House and, in cooperation with the Senate, examining all bills and joint resolutions which shall have passed both Houses to see that they are correctly enrolled, forthwith presenting those which originated in the House to the President of the United States in person after their signature by the Speaker of the House and the President of the Senate and reporting the fact and date of such presentation to the House;

(2) reporting to the Sergeant-at-Arms of the House concerning the travel of Members of the House; and

**33**

(3) providing, through the House Information Systems, a scheduling service which shall be used by all the committees and subcommittees of the House to eliminate, insofar as possible, any meeting and scheduling conflicts.

(e)(1) The Committee on Standards of Official Conduct is authorized: (A) to recommend to the House from time to time such administrative actions as it may deem appropriate to establish or enforce standards of official conduct for Members, officers, and employees of the House, and any letter of reproval or other administrative action of the committee pursuant to an investigation under subdivision (B) shall only be issued or implemented as a part of a report required by such subdivision; (B) to investigate, subject to subparagraph (2) of this paragraph, any alleged violation, by a Member, officer, or employee of the House, of the Code of Official Conduct or of any law, rule, regulation, or other standard of conduct applicable to the conduct of such Member, officer, or employee in the performance of his duties or the discharge of his responsibilities, and after notice and hearing (unless the right to a hearing is waived by the Member, officer, or employee), shall report to the House its findings of fact and recommendations, if any, upon the final disposition of any such investigation, and such action as the committee may deem appropriate in the circumstances; (C) to report to the appropriate Federal or State authorities, with the approval of the House, any substantial evidence of a violation, by a Member, officer, or employee of the House, of any law applicable to the performance of his duties or the discharge of his responsibilities, which may have been disclosed in a committee investigation; (D) to give consideration to the request of any Member, officer, or employee of the House for an advisory opinion with respect to the general propriety of any current or proposed conduct of such Member, officer, or employee and, with appropriate deletions to assure the privacy of the individual concerned, to publish such opinion for the guidance of other Members, officers, and employees of the House; and (E) to give consideration to the request of any Member, officer, or employee of the House for a written waiver in exceptional circumstances with respect to clause 4 of rule XLIII.

(2)(A) No resolution, report, recommendation, or advisory opinion relating to the official conduct of a Member, officer, or employee of the House shall be made by the Committee on Standards of Official Conduct, and no investigation of such conduct shall be undertaken by such committee, unless approved by the affirmative vote of a majority of the members of the committee.

(B) Except in the case of an investigation undertaken by the committee on its own initiative, the committee may undertake an investigation relating to the official conduct of an individual Member, officer, or employee of the House of Representatives only—

(i) upon receipt of a complaint, in writing and under oath, made by or submitted to a Member of the House and transmitted to the committee by such Member, or

(ii) upon receipt of a complaint, in writing and under oath, directly from an individual not a Member of the House if the committee finds that such complaint has been submitted by such individual to not less than three Members of the House

who have refused, in writing, to transmit such complaint to the committee.

(C) No investigation shall be undertaken by the committee of any alleged violation of a law, rule, regulation, or standard of conduct not in effect at the time of the alleged violation; nor shall any investigation be undertaken by the committee of any alleged violation which occurred before the third previous Congress unless the committee determines that the alleged violation is directly related to any alleged violation which occurred in a more recent Congress.

(D) A member of the committee shall be ineligible to participate, as a member of the committee, in any committee proceeding relating to his or her official conduct. In any case in which a member of the committee is ineligible to act as a member of the committee under the preceding sentence, the Speaker of the House shall designate a Member of the House from the same political party as the ineligible member of the committee to act as a member of the committee in any committee proceeding relating to the official conduct of such ineligible member.

(E) A member of the committee may disqualify himself from participating in any investigation of the conduct of a Member, officer, or employee of the House upon the submission in writing and under oath of an affidavit of disqualification stating that he cannot render an impartial and unbiased decision in the case in which he seeks to disqualify himself. If the committee approves and accepts such affidavit of disqualification, the chairman shall so notify the Speaker and request the Speaker to designate a Member of the House from the same political party as the disqualifying member of the committee to act as a member of the committee in any committee proceeding relating to such investigation.

(F) No information or testimony received, or the contents of a complaint or the fact of its filing, shall be publicly disclosed by any committee or staff member unless specifically authorized in each instance by a vote of the full committee.

(f)(1) Each standing committee of the House shall, in its consideration of all bills and joint resolutions of a public character within its jurisdiction, insure that appropriations for continuing programs and activities of the Federal Government and the District of Columbia government will be made annually to the maximum extent feasible and consistent with the nature, requirements, and objectives of the programs and activities involved. For the purposes of this paragraph a Government agency includes the organizational units of government listed in clause 7(c) of Rule XIII.

(2) Each standing committee of the House shall review, from time to time, each continuing program within its jurisdiction for which appropriations are not made annually in order to ascertain whether such program could be modified so that appropriations therefor would be made annually.

(g) Each standing committee of the House shall, on or before February 25 of each year, submit to the Committee on the Budget (1) its views and estimates with respect to all matters to be set forth in the concurrent resolution on the budget for the ensuing fiscal year which are within its jurisdiction or functions, and (2) an estimate of the total amounts of new budget authority, and budget outlays resulting therefrom, to be provided or authorized in all bills

and resolutions within its jurisdiction which it intends to be effective during that fiscal year. The views and estimates submitted by the Committee on Ways and Means under the preceding sentence shall include a specific recommendation, made after holding public hearings, as to the appropriate level of the public debt which should be set forth in the concurrent resolution on the budget referred to in such sentence and serve as the basis for an increase or decrease in the statutory limit on such debt under the procedures provided by rule XLIX.

(h) As soon as practicable after a concurrent resolution on the budget for any fiscal year is agreed to, each standing committee of the House (after consulting with the appropriate committee or committees of the Senate) shall subdivide any allocations made to it in the joint explanatory statement accompanying the conference report on such resolution, and promptly report such subdivisions to the House, in the manner provided by section 302 or section 602 (in the case of fiscal years 1991 through 1995) of the Congressional Budget Act of 1974.

(i) Each standing committee of the House which is directed in a concurrent resolution on the budget to determine and recommend changes in laws, bills, or resolutions under the reconciliation process shall promptly make such determination and recommendations, and report a reconciliation bill or resolution (or both) to the House or submit such recommendations to the Committee on the Budget, in accordance with the Congressional Budget Act of 1974.

## Referral of Bills, Resolutions, and Other Matters to Committees

5. (a) Each bill, resolution, or other matter which relates to a subject listed under any standing committee named in clause 1 shall be referred by the Speaker in accordance with the provisions of this clause.

(b) Every referral of any matter under paragraph (a) shall be made in such manner as to assure to the maximum extent feasible that each committee which has jurisdiction under clause 1 over the subject matter of any provision thereof will have responsibility for considering such provision and reporting to the House with respect thereto. Any precedents, rulings, and procedures in effect prior to the Ninety-Fourth Congress shall be applied with respect to referrals under this clause only to the extent that they will contribute to the achievement of the objectives of this clause.

(c) In carrying out paragraphs (a) and (b) with respect to any matter, the Speaker may refer the matter simultaneously to two or more committees for concurrent consideration or for consideration in sequence (subject to appropriate time limitations in the case of any committee), or divide the matter into two or more parts (reflecting different subjects and jurisdictions) and refer each such part to a different committee, or refer the matter to a special ad hoc committee appointed by the Speaker with the approval of the House (from the members of the committees having legislative jurisdiction) for the specific purpose of considering that matter and reporting to the House thereon, or make such other provision as may be considered appropriate.

### Election and Membership of Committees; Chairman; Vacancies; Select and Conference Committees

6. (a)(1) The standing committees specified in clause 1 shall be elected by the House within the seventh calendar day beginning after the commencement of each Congress, from nominations submitted by the respective party caucuses. It shall always be in order to consider resolutions recommended by the respective party caucuses to change the composition of standing committees.

(2) One-half of the members of the Committee on Standards of Official Conduct shall be from the majority party and one-half shall be from the minority party. No Member shall serve as a member of the Committee on Standards of Official Conduct during more than 3 Congresses in any period of 5 successive Congresses (disregarding for this purpose any service performed as a member of such committee for less than a full session in any Congress).

(b) Membership on standing committees during the course of a Congress shall be contingent on continuing membership in the party caucus or conference that nominated Members for election to such committees. Should a Member cease to be a member of a particular party caucus or conference, said Member shall automatically cease to be a member of a standing committee to which he was elected on the basis of nomination by that caucus or conference. The chairman of the relevant party caucus or conference shall notify the Speaker whenever a Member ceases to be a member of a party caucus or conference and the Speaker shall notify the chairman of each standing committee on which said Member serves, that in accord with this rule, the Member's election to such committee is automatically vacated.

(c) One of the members of each standing committee shall be elected by the House, from nominations submitted by the majority party caucus, at the commencement of each Congress, as chairman thereof. In the temporary absence of the chairman, the member next in rank in the order named in the election of the committee, and so on, as often as the case shall happen, shall act as chairman; and in case of a permanent vacancy in the chairmanship of any such committee the House shall elect another chairman.

(d) Each standing committee of the House of Representatives, except the Committee on the Budget, that has more than twenty members shall establish at least four subcommittees.

(e) All vacancies in standing committees shall be filled by election by the House from nominations, submitted by the respective party caucus or conference.

(f) The Speaker shall appoint all select and conference committees which shall be ordered by the House from time to time. In appointing members to conference committees the Speaker shall appoint no less than a majority of members who generally supported the House position as determined by the Speaker. The Speaker shall name Members who are primarily responsible for the legislation and shall, to the fullest extent feasible, include the principal proponents of the major provisions of the bill as it passed the House.

(g) Membership on select and joint committees during the course of a Congress shall be contingent on continuing membership in the

party caucus or conference the Member was a member of at the time of his appointment to a select or joint committee. Should a Member cease to be a member of that caucus or conference, said Member shall automatically cease to be a member of any select or joint committee to which he is assigned. The chairman of the relevant party caucus or conference shall notify the Speaker whenever a Member ceases to be a member of a party caucus or conference and the Speaker shall notify the chairman of each select or joint committee on which said Member serves, that in accord with this rule, the Member's appointment to such committee is automatically vacated.

(h) The Speaker may appoint the Resident Commissioner from Puerto Rico and Delegates to the House to any select committee and to any conference committee that is considering legislation reported from a committee on which they serve.

(i) There shall be in the House the permanent Select Committee on Aging, which shall not have legislative jurisdiction but which shall have jurisdiction—

(1) to conduct a continuing comprehensive study and review of the problems of the older American, including but not limited to income maintenance, housing, health (including medical research), welfare, employment, education, recreation, and participation in family and community life as self-respecting citizens;

(2) to study the use of all practicable means and methods of encouraging the development of public and private programs and policies which will assist the older American in taking a full part in national life and which will encourage the utilization of the knowledge, skills, special aptitudes, and abilities of older Americans to contribute to a better quality of life for all Americans;

(3) to develop policies that would encourage the coordination of both governmental and private programs designed to deal with problems of aging; and

(4) to review any recommendations made by the President or by the White House Conference on Aging relating to programs or policies affecting older Americans.

### Rule XI. Rules of Procedure for Committees

### In General

1. (a)(1) The Rules of the House are the rules of its committees and subcommittees so far as applicable, except that a motion to recess from day to day, and a motion to dispense with the first reading (in full) of a bill or resolution, if printed copies are available, are nondebatable motions of high privilege in committees and subcommittees.

(2) Each subcommittee of a committee is a part of that committee, and is subject to the authority and direction of that committee and to its rules so far as applicable.

(b) Each committee is authorized at any time to conduct such investigations and studies as it may consider necessary or appropriate in the exercise of its responsibilities under Rule X, and (subject

to the adoption of expense resolutions as required by clause 5) to incur expenses (including travel expenses) in connection therewith.

(c) Each committee is authorized to have printed and bound testimony and other data presented at hearings held by the committee. All costs of stenographic services and transcripts in connection with any meeting or hearing of a committee shall be paid from the contingent fund of the House.

(d) Each committee shall submit to the House, not later than January 2 of each odd-numbered year, a report on the activities of that committee under this rule and Rule X during the Congress ending at noon on January 3 of such year.

## Committee Rules

### *Adoption of written rules*

2. (a) Each standing committee of the House shall adopt written rules governing its procedure. Such rules—

(1) shall be adopted in a meeting which is open to the public unless the committee, in open session and with a quorum present, determined by roll call vote that all or part of the meeting on that day is to be closed to the public;

(2) shall be not inconsistent with the Rules of the House or with those provisions of law having the force and effect of Rules of the House; and

(3) shall in any event incorporate all of the succeeding provisions of this clause to the extent applicable.

Each committee's rules specifying its regular meeting days, and any other rules of a committee which are in addition to the provisions of this clause, shall be published in the Congressional Record not later than thirty days after the committee is elected in each odd-numbered year. Each select or joint committee shall comply with the provisions of this paragraph unless specifically prohibited by law.

### *Regular meeting days*

(b) Each standing committee of the House shall adopt regular meeting days, which shall be not less frequent than monthly, for the conduct of its business. Each such committee shall meet, for the consideration of any bill or resolution pending before the committee or for the transaction of other committee business, on all regular meeting days fixed by the committee, unless otherwise provided by written rule adopted by the committee.

### *Additional and special meetings*

(c)(1) The Chairman of each standing committee may call and convene, as he or she considers necessary, additional meetings of the committee for the consideration of any bill or resolution pending before the committee or for the conduct of other committee business. The committee shall meet for such purpose pursuant to that call of the chairman.

(2) If at least three members of any standing committee desire that a special meeting of the committee be called by the chairman, those members may file in the offices of the committee their written request to the chairman for that special meeting. Such request

shall specify the measure or matter to be considered. Immediately upon the filing of the request, the clerk of the committee shall notify the chairman of the filing of the request. If, within three calendar days after the filing of the request, the chairman does not call the requested special meeting, to be held within seven calendar days after the filing of the request, a majority of the members of the committee may file in the offices of the committee their written notice that a special meeting of the committee will be held, specifying the date and hour of, and the measure or matter to be considered at, that special meeting. The committee shall meet on that date and hour. Immediately upon the filing of the notice, the clerk of the committee shall notify all members of the committee that such special meeting will be held and inform them of its date and hour and the measure or matter to be considered; and only the measure or matter specified in that notice may be considered at that special meeting.

### *Vice chairman or ranking majority member to preside in absence of chairman*

(d) The member of the majority party on any standing committee or subcommittee thereof ranking immediately after the chairman shall be vice chairman of the committee or subcommittee, as the case may be, and shall preside at any meeting during the temporary absence of the chairman. If the chairman and vice chairman of the committee or subcommittee are not present at any meeting of the committee or subcommittee, the ranking member of the majority party who is present shall preside at that meeting.

### *Committee records*

(e)(1) Each committee shall keep a complete record of all committee action which shall include a record of the votes on any question on which a roll call vote is demanded. The result of each such roll call vote shall be made available by the committee for inspection by the public at reasonable times in the offices of the committee. Information so available for public inspection shall include a description of the amendment, motion, order, or other proposition and the name of each Member voting for and each Member voting against such amendment, motion, order, or proposition, and whether by proxy or in person, and the names of those Members present but not voting.

(2) All committee hearings, records, data, charts, and files shall be kept separate and distinct from the congressional office records of the Member serving as chairman of the committee; and such records shall be the property of the House and all Members of the House shall have access thereto, except that in the case of records in the Committee on Standards of Official Conduct respecting the conduct of any Member, officer, or employee of the House, no Member of the House (other than a member of such committee) shall have access thereto without the specific, prior approval of the committee.

(3) Each committee shall include in its rules standards for availability of records of the committee delivered to the Archivist of the United States under rule XXXVI. Such standards shall specify procedures for orders of the committee under clause 3(b)(3) and clause

40

4(b) of rule XXXVI, including a requirement that nonavailability of a record for a period longer than the period otherwise applicable under that rule shall be approved by vote of the committee.

*Proxies*

(f) No vote by any member of any committee or subcommittee with respect to any measure or matter may be cast by proxy unless such committee, by written rule adopted by the committee, permits voting by proxy and requires that the proxy authorization shall be in writing, shall assert that the member is absent on official business or is otherwise unable to be present at the meeting of the committee, shall designate the person who is to execute the proxy authorization, and shall be limited to a specific measure or matter and any amendments or motions pertaining thereto; except that a member may authorize a general proxy only for motions to recess, adjourn or other procedural matters. Each proxy to be effective shall be signed by the member assigning his or her vote and shall contain the date and time of day that the proxy is signed. Proxies may not be counted for a quorum.

*Open meetings and hearings*

(g)(1) Each meeting for the transaction of business, including the markup of legislation, of each standing committee or subcommittee thereof shall be open to the public except when the committee or subcommittee, in open session and with a majority present, determines by roll call vote that all or part of the remainder of the meeting on that day shall be closed to the public: *Provided, however, That* no person other than members of the committee and such congressional staff and such departmental representatives as they may authorize shall be present at any business or markup session which has been closed to the public. This paragraph does not apply to open committee hearings which are provided for by clause 4(a)(1) of Rule X or by subparagraph (2) of this paragraph, or to any meeting that relates solely to internal budget or personnel matters.

(2) Each hearing conducted by each committee or subcommittee thereof shall be open to the public except when the committee or subcommittee, in open session and with a majority present, determines by roll call vote that all or part of the remainder of that hearing on that day shall be closed to the public because disclosure of testimony, evidence, or other matters to be considered would endanger the national security or would violate any law or rule of the House of Representatives. Notwithstanding the requirements of the preceding sentence, a majority of those present, there being in attendance the requisite number required under the rules of the committee to be present for the purpose of taking testimony,

(A) may vote to close the hearing for the sole purpose of discussing whether testimony or evidence to be received would endanger the national security or violate clause 2(k)(5) of Rule XI; or

(B) may vote to close the hearing, as provided in clause 2(k)(5) of Rule XI.

No Member may be excluded from nonparticipatory attendance at any hearing of any committee or subcommittee, with the exception of the Committee on Standards of Official Conduct, unless the House of Representatives shall by majority vote authorize a par-

ticular committee or subcommittee, for purposes of a particular series of hearings on a particular article of legislation or on a particular subject of investigation, to close its hearings to Members by the same procedures designated in this subparagraph for closing hearings to the public: *Provided, however,* That the committee or subcommittee may by the same procedure vote to close one subsequent day of hearing except that the Committee on Appropriations, the Committee on Armed Services, and the Permanent Select Committee on Intelligence and the subcommittees therein may, by the same procedure, vote to close up to five additional consecutive days of hearings.

(3) Each committee of the House (except the Committee on Rules) shall make public announcement of the date, place and subject matter of any committee hearing at least one week before the commencement of the hearing. If the committee determines that there is good cause to begin the hearing sooner, it shall make the announcement at the earliest possible date. Any announcement made under this subparagraph shall be promptly published in the Daily Digest and promptly entered into the committee scheduling service of the House Information Systems.

(4) Each committee shall, insofar as is practicable, require each witness who is to appear before it to file with the committee (in advance of his or her appearance) a written statement of the proposed testimony and to limit the oral presentation at such appearance to a brief summary of his or her argument.

(5) No point of order shall lie with respect to any measure reported by any committee on the ground that hearings on such measure were not conducted in accordance with the provisions of this clause; except that a point of order on that ground may be made by any member of the committee which reported the measure if, in the committee, such point of order was (A) timely made and (B) improperly overruled or not properly considered.

(6) The preceding provisions of this paragraph do not apply to the committee hearings which are provided for by clause 4(a)(1) of Rule X.

### *Quorum for taking testimony and certain other action*

(h)(1) Each committee may fix the number of its members to constitute a quorum for taking testimony and receiving evidence which shall be not less than two.

(2) Each committee (except the Committee on Appropriations, the Committee on the Budget, and the Committee on Ways and Means) may fix the number of its members to constitute a quorum for taking any action other than the reporting of a measure or recommendation which shall be not less than one-third of the members.

### *Prohibition against committee meetings during five-minute rule and during joint sessions and joint meetings*

(i)(1) No committee of the House (except the Committee on Appropriations, the Committee on the Budget, the Committee on House Administration, the Committee on Rules, the Committee on Standards of Official Conduct, and the Committee on Ways and Means) may sit, without special leave, while the House is reading a measure for amendment under the five-minute rule. For purposes

of this subparagraph special leave will be granted unless 10 or more Members object.

(2) No committee of the House may sit during a joint session of the House and Senate or during a recess when a joint meeting of the House and Senate is in progress.

### Calling and interrogation of witnesses

(j)(1) Whenever any hearing is conducted by any committee upon any measure or matter, the minority party members on the committee shall be entitled, upon request to the chairman by a majority of them before the completion of the hearing, to call witnesses selected by the minority to testify with respect to that measure or matter during at least one day of hearing thereon.

(2) Each committee shall apply the five-minute rule in the interrogation of witnesses in any hearing until such time as each member of the committee who so desires has had an opportunity to question each witness.

### Investigative hearing procedures

(k)(1) The chairman at an investigative hearing shall announce in an opening statement the subject of the investigation.

(2) A copy of the committee rules and this clause shall be made available to each witness.

(3) Witnesses at investigative hearings may be accompanied by their own counsel for the purpose of advising them concerning their constitutional rights.

(4) The chairman may punish breaches of order and decorum, and of professional ethics on the part of counsel, by censure and exclusion from the hearings; and the committee may cite the offender to the House for contempt.

(5) Whenever it is asserted that the evidence or testimony at an investigatory hearing may tend to defame, degrade, or incriminate any person,

(A) such testimony or evidence shall be presented in executive session, notwithstanding the provisions of clause 2(g)(2) of this Rule, if by a majority of those present, there being in attendance the requisite number required under the rules of the committee to be present for the purpose of taking testimony, the committee determines that such evidence or testimony may tend to defame, degrade, or incriminate any person; and

(B) the committee shall proceed to receive such testimony in open session only if a majority of the members of the committee, a majority being present, determine that such evidence or testimony will not tend to defame, degrade, or incriminate any person.

In either case the committee shall afford such person an opportunity voluntarily to appear as a witness, and receive and dispose of requests from such person to subpoena additional witnesses.

(6) Except as provided in subparagraph (5), the chairman shall receive and the committee shall dispose of requests to subpoena additional witnesses.

(7) No evidence or testimony taken in executive session may be released or used in public sessions without the consent of the committee.

(8) In the discretion of the committee, witnesses may submit brief and pertinent sworn statements in writing for inclusion in the record. The committee is the sole judge of the pertinency of testimony and evidence adduced at its hearing.

(9) A witness may obtain a transcript copy of his testimony given at a public session or, if given at an executive session, when authorized by the committee.

### Committee procedures for reporting bills and resolutions

(l)(1)(A) It shall be the duty of the chairman of each committee to report or cause to be reported promptly to the House any measure approved by the committee and to take or cause to be taken necessary steps to bring a matter to a vote.

(B) In any event, the report of any committee on a measure which has been approved by the committee shall be filed within seven calendar days (exclusive of days on which the House is not in session) after the day on which there has been filed with the clerk of the committee a written request, signed by a majority of the members of the committee, for the reporting of that measure. Upon the filing of any such request, the clerk of the committee shall transmit immediately to the chairman of the committee notice of the filing of that request. This subdivision does not apply to the reporting of a regular appropriation bill by the Committee on Appropriations prior to compliance with subdivision (C) and does not apply to a report of the Committee on Rules with respect to the rules, joint rules, or order of business of the House or to the reporting of a resolution of inquiry addressed to the head of an executive department.

(2)(A) No measure or recommendation shall be reported from any committee unless a majority of the committee was actually present.

(B) With respect to each roll call vote on a motion to report any bill or resolution of a public character, the total number of votes cast for, and the total number of votes cast against, the reporting of such bill or resolution shall be included in the committee report.

(3) The report of any committee on a measure which has been approved by the committee (A) shall include the oversight findings and recommendations required pursuant to clause 2(b)(1) of Rule X separately set out and clearly identified; (B) the statement required by section 308(a)(1) of the Congressional Budget Act of 1974, separately set out and clearly identified, if the measure provides new budget authority (other than continuing appropriations), new spending authority described in section 401(c)(2) of such Act, new credit authority, or an increase or decrease in revenues or tax expenditures; (C) the estimate and comparison prepared by the Director of the Congressional Budget Office under section 403 of such Act, separately set out and clearly identified, whenever the Director (if timely submitted prior to the filing of the report) has submitted such estimate and comparison to the committee; and (D) a summary of the oversight findings and recommendations made by the Committee on Government Operations under clause 4(c)(2) of Rule X separately set out and clearly identified whenever such findings and recommendations have been submitted to the legislative committee in a timely fashion to allow an opportunity to consider such

findings and recommendations during the committee's deliberations on the measure.

(4) Each report of a committee on each bill or joint resolution of a public character reported by such committee shall contain a detailed analytical statement as to whether the enactment of such bill or joint resolution into law may have an inflationary impact on prices and costs in the operation of the national economy.

(5) If, at the time of approval of any measure or matter by any committee, other than the Committee on Rules, any member of the committee gives notice of intention to file supplemental, minority, or additional views, that member shall be entitled to not less than three calendar days (excluding Saturdays, Sundays, and legal holidays) in which to file such views, in writing and signed by that member, with the clerk of the committee. All such views so filed by one or more members of the committee shall be included within, and shall be a part of, the report filed by the committee with respect to that measure or matter. The report of the committee upon that measure or matter shall be printed in a single volume which—

(A) shall include all supplemental, minority, or additional views which have been submitted by the time of the filing of the report, and

(B) shall bear upon its cover a recital that any such supplemental, minority, or additional views (and any material submitted under subdivisions (C) and (D) of subparagraph (3)) are included as part of the report.

This subparagraph does not preclude—

(i) the immediate filing or printing of a committee print unless timely request for the opportunity to file supplemental, minority, or additional views has been made as provided by this subparagraph; or

(ii) the filing by any such committee of any supplemental report upon any measure or matter which may be required for the correction of any technical error in a previous report made by that committee upon that measure or matter.

(6) A measure or matter reported by any committee (except the Committee on Rules in the case of a resolution making in order the consideration of a bill, resolution, or other order of business), shall not be considered in the House until the third calendar day, excluding Saturdays, Sundays, and legal holidays on which the report of that committee upon that measure or matter has been available to the Members of the House, or as provided by section 305(a)(1) of the Congressional Budget Act of 1974 in the case of a concurrent resolution on the budget: *Provided, however*, That it shall always be in order to call up for consideration, notwithstanding the provisions of clause 4(b), Rule XI, a report from the Committee on Rules specifically providing for the consideration of a reported measure or matter notwithstanding this restriction. If hearings have been held on any such measure or matter so reported, the committee reporting the measure or matter shall make every reasonable effort to have such hearings printed and available for distribution to the Members of the House prior to the consideration of such measure or matter in the House. This subparagraph shall not apply to—

(A) any measure for the declaration of war, or the declaration of a national emergency, by the Congress; or

(B) any decision, determination, or action by a Government agency which would become or continue to be, effective unless disapproved or otherwise invalidated by one or both Houses of Congress.

For the purposes of the preceding sentence, a Government agency includes any department, agency, establishment, wholly owned Government corporation, or instrumentality of the Federal Government or the government of the District of Columbia.

(7) If, within seven calendar days after a measure has, by resolution, been made in order for consideration by the House, no motion has been offered that the House consider that measure, any member of the committee which reported that measure may be recognized in the discretion of the Speaker to offer a motion that the House shall consider that measure, if that committee has duly authorized that member to offer that motion.

### Power to sit and act; subpoena power

(m)(1) For the purpose of carrying out any of its functions and duties under this rule and Rule X (including any matters referred to it under clause 5 of Rule X), any committee, or any subcommittee thereof, is authorized (subject to subparagraph (2)(A) of this paragraph)—

(A) to sit and act at such times and places within the United States, whether the House is in session, has recessed, or has adjourned, and to hold such hearings, and

(B) to require, by subpoena or otherwise, the attendance and testimony of such witnesses and the production of such books, records, correspondence, memorandums, papers, and documents as it deems necessary.

The chairman of the committee, or any member designated by such chairman, may administer oaths to any witness.

(2)(A) A subpoena may be authorized and issued by a committee or subcommittee under subparagraph (1)(B) in the conduct of any investigation or series of investigations or activities, only when authorized by a majority of the members voting, a majority being present. The power to authorize and issue subpoenas under subparagraph (1)(B) may be delegated to the chairman of the committee pursuant to such rules and under such limitations as the committee may prescribe. Authorized subpoenas shall be signed by the chairman of the committee or by any member designated by the committee.

(B) Compliance with any subpoena issued by a committee or subcommittee under subparagraph (1)(B) may be enforced only as authorized or directed by the House.

### Use of committee funds for travel

(n)(1) Funds authorized for a committee under clause 5 are for expenses incurred in the committee's activities; however, local currencies owned by the United States shall be made available to the committee and its employees engaged in carrying out their official duties outside the United States, its territories or possessions. No appropriated funds, including those authorized under clause 5,

shall be expended for the purpose of defraying expenses of members of the committee or its employees in any country where local currencies are available for this purpose; and the following conditions shall apply with respect to travel outside the United States or its territories or possessions:

(A) No member or employee of the committee shall receive or expend local currencies for subsistence in any country for any day at a rate in excess of the maximum per diem set forth in applicable Federal law, or if the Member or employee is reimbursed for any expenses for such day, then the lesser of the per diem or the actual, unreimbursed expenses (other than for transportation) incurred by the Member or employee during that day.

(B) Each member or employee of the committee shall make to the chairman of the committee an itemized report showing the dates each country was visited, the amount of per diem furnished, the cost of transportation furnished, any funds expended for any other official purpose and shall summarize in these categories the total foreign currencies and/or appropriated funds expended. All such individual reports shall be filed no later than sixty days following the completion of travel with the chairman of the committee for use in complying with reporting requirements in applicable Federal law and shall be open for public inspection.

(2) In carrying out the committee's activities outside of the United States in any country where local currencies are unavailable, a member or employee of the committee may not receive reimbursement for expenses (other than for transportation) in excess of the maximum per diem set forth in applicable Federal law, or if the member or employee is reimbursed for any expenses for such day, then the lesser of the per diem or the actual unreimbursed expenses (other than for transportation) incurred, by the member or employee during any day.

(3) A member or employee of a committee may not receive reimbursement for the cost of any transportation in connection with travel outside of the United States unless the member or employee has actually paid for the transportation.

(4) The restrictions respecting travel outside of the United States set forth in subparagraphs (2) and (3) shall also apply to travel outside the United States by Members, officers, and employees of the House authorized under clause 8 of Rule I, clause 1(b) of this rule, or any other provision of these Rules of the House of Representatives.

(5) No local currencies owned by the United States may be made available under this paragraph for the use outside of the United States for defraying the expenses of a member of any committee after—

(A) the date of the general election of Members in which the Member has not been elected to the succeeding Congress; or

(B) in the case of a Member who is not a candidate in such general election, the earlier of the date of such general election or the adjournment sine die of the last regular session of the Congress.

## Broadcasting of Committee Hearings

3. (a) It is the purpose of this clause to provide a means, in conformity with acceptable standards of dignity, propriety, and decorum, by which committee hearings, or committee meetings, which are open to the public may be covered, by television broadcast, radio broadcast, and still photography, or by any of such methods of coverage—

(1) for the education, enlightenment, and information of the general public, on the basis of accurate and impartial news coverage, regarding the operations, procedures, and practices of the House as a legislative and representative body and regarding the measures, public issues, and other matters before the House and its committees, the consideration thereof, and the action taken thereon; and

(2) for the development of the perspective and understanding of the general public with respect to the role and function of the House under the Constitution of the United States as an organ of the Federal Government.

(b) In addition, it is the intent of this clause that radio and television tapes and television film of any coverage under this clause shall not be used, or made available for use, as partisan political campaign material to promote or oppose the candidacy of any person for elective public office.

(c) It is, further, the intent of this clause that the general conduct of each meeting (whether of a hearing or otherwise) covered, under authority of this clause, by television broadcast, radio broadcast, and still photography, or by any of such methods of coverage, and the personal behavior of the committee members and staff, other Government officials and personnel, witnesses, television, radio, and press media personnel, and the general public at the hearing or other meeting shall be in strict conformity with and observance of the acceptable standards of dignity, propriety, courtesy, and decorum traditionally observed by the House in its operations and shall not be such as to—

(1) distort the objects and purposes of the hearing or other meeting or the activities of committee members in connection with that hearing or meeting or in connection with the general work of the committee or of the House; or

(2) cast discredit or dishonor on the House, the committee, or any Member or bring the House, the committee, or any Member into disrepute.

(d) The coverage of committee hearings and meetings by television broadcast, radio broadcast, or still photography is a privilege made available by the House and shall be permitted and conducted only in strict conformity with the purposes, provisions, and requirements of this clause.

(e) Whenever any hearing or meeting conducted by any committee of the House is open to the public, that committee may permit, by majority vote of the committee, that hearing or meeting to be covered, in whole or in part, by television broadcast, radio broadcast, and still photography, or by any of such methods of coverage, but only under such written rules as the committee may adopt in accordance with the purposes, provisions, and requirements of this

clause: *Provided, however,* Each committee or subcommittee chairman shall determine, in his discretion, the number of television and still cameras permitted in a hearing or meeting room.

(f) The written rules which may be adopted by a committee under paragraph (e) of this clause shall contain provisions to the following effect:

(1) If the television or radio coverage of the hearing or meeting is to be presented to the public as live coverage, that coverage shall be conducted and presented without commercial sponsorship.

(2) No witness served with a subpoena by the committee shall be required against his or her will to be photographed at any hearing or to give evidence or testimony while the broadcasting of that hearing, by radio or television, is being conducted. At the request of any such witness who does not wish to be subjected to radio, television, or still photography coverage, all lenses shall be covered and all microphones used for coverage turned off. This subparagraph is supplementary to clause 2(k)(5) of this rule, relating to the protection of the rights of witnesses.

(3) The allocation among the television media of the positions of the number of television cameras permitted by a committee or subcommittee chairman in a hearing or meeting room shall be in accordance with fair and equitable procedures devised by the Executive Committee of the Radio and Television Correspondents' Galleries.

(4) Television cameras shall be placed so as not to obstruct in any way the space between any witness giving evidence or testimony and any member of the committee or the visibility of that witness and that member to each other.

(5) Television cameras shall operate from fixed positions but shall not be placed in positions which obstruct unnecessarily the coverage of the hearing or meeting by the other media.

(6) Equipment necessary for coverage by the television and radio media shall not be installed in, or removed from, the hearing or meeting room while the committee is in session.

(7) Floodlights, spotlights, strobelights, and flashguns shall not be used in providing any method of coverage of the hearing or meeting, except that the television media may install additional lighting in the hearing or meeting room, without cost to the Government, in order to raise the ambient lighting level in the hearing or meeting room to the lowest level necessary to provide adequate television coverage of the hearing or meeting at the then current state of the art of television coverage.

(8) In the allocation of the number of still photographers permitted by a committee or subcommittee chairman in a hearing or meeting room, preference shall be given to photographers from Associated Press Photos and United Press International Newspictures. If requests are made by more of the media than will be permitted by a committee or subcommittee chairman for coverage of the hearing or meeting by still photography, that coverage shall be made on the basis of a fair and equitable pool arrangement devised by the Standing Committee of Press Photographers.

(9) Photographers shall not position themselves, at any time during the course of the hearing or meeting, between the witness table and the members of the committee.

(10) Photographers shall not place themselves in positions which obstruct unnecessarily the coverage of the hearing by the other media.

(11) Personnel providing coverage by the television and radio media shall be then currently accredited to the Radio and Television Correspondents' Galleries.

(12) Personnel providing coverage by still photography shall be then currently accredited to the Press Photographers' Gallery.

(13) Personnel providing coverage by the television and radio media and by still photography shall conduct themselves and their coverage activities in an orderly and unobtrusive manner.

### Privileged Reports and Amendments

4. (a) The following committees shall have leave to report at any time on the matters herein stated, namely: The Committee on Appropriations—on general appropriation bills and on joint resolutions continuing appropriations for a fiscal year if reported after September 15 preceding the beginning of such fiscal year; the Committee on the Budget—on the matters required to be reported by such committee under Titles III and IV of the Congressional Budget Act of 1974; the Committee on House Administration—on enrolled bills, contested elections, and all matters referred to it of printing for the use of the House or the two Houses, and on all matters of expenditure of the contingent fund of the House, and on all matters relating to preservation and availability of noncurrent records of the House under rule XXXVI; the Committee on Rules—on rules, joint rules, and the order of business; and the Committee on Standards of Official Conduct—on resolutions recommending action by the House of Representatives with respect to an individual Member, officer, or employee of the House of Representatives as a result of any investigation by the committee relating to the official conduct of such Member, officer, or employee of the House of Representatives.

(b) It shall always be in order to call up for consideration a report from the Committee on Rules on a rule, joint rule, or the order of business (except it shall not be called up for consideration on the same day it is presented to the House, unless so determined by a vote of not less than two-thirds of the Members voting, but this provision shall not apply during the last three days of the session), and, pending the consideration thereof, the Speaker may entertain one motion that the House adjourn; but after the result is announced the Speaker shall not entertain any other dilatory motion until the report shall have been fully disposed of. The Committee on Rules shall not report any rule or order which provides that business under clause 7 of Rule XXIV shall be set aside by a vote of less than two-thirds of the Members present; nor shall it report any rule or order which would prevent the motion to recommit from being made as provided in clause 4 of Rule XVI.

(c) The Committee on Rules shall present to the House reports concerning rules, joint rules, and order of business, within three legislative days of the time when the bill or resolution involved is ordered reported by the committee. If any such rule or order is not considered immediately, it shall be referred to the calendar and, if not called up by the Member making the report within seven legislative days thereafter, any member of the Rules Committee may call it up as a question of privilege (but only on the day after the calendar day on which such Member announces to the House his intention to do so) and the Speaker shall recognize any member of the Rules Committee seeking recognition for that purpose. If the Committee on Rules makes an adverse report on any resolution pending before the committee, providing for an order of business for the consideration by the House of any public bill or joint resolution, on days when it shall be in order to call up motions to discharge committees it shall be in order for any Member of the House to call up for consideration by the House such adverse report, and it shall be in order to move the adoption by the House of such resolution adversely reported notwithstanding the adverse report of the Committee on Rules, and the Speaker shall recognize the Member seeking recognition for that purpose as a question of the highest privilege.

(d) Whenever the Committee on Rules reports a resolution repealing or amending any of the Rules of the House of Representatives or part thereof it shall include in its report or in an accompanying document—

(1) the text of any part of the Rules of the House of Representatives which is proposed to be repealed; and

(2) a comparative print of any part of the resolution making such an amendment and any part of the Rules of the House of Representatives to be amended, showing by an appropriate typographical device the omissions and insertions proposed to be made.

### Committee Expenses

5. (a) Whenever any committee, commission or other entity (except the Committee on Appropriations and the Committee on the Budget) is to be granted authorization for the payment, from the contingent fund of the House, of its expenses in any year, other than those expenses to be paid from appropriations provided by statute, such authorization initially shall be procured by one primary expense resolution for the committee, commission or other entity providing funds for the payment of the expenses of the committee, commission or other entity for that year from the contingent fund of the House. Any such primary expense resolution reported to the House shall not be considered in the House unless a printed report on that resolution has been available to the Members of the House for at least one calendar day prior to the consideration of that resolution in the House. Such report shall, for the information of the House—

(1) state the total amount of the funds to be provided to the committee, commission or other entity under the primary ex-

pense resolution for all anticipated activities and programs of the committee, commission or other entity; and

(2) to the extent practicable, contain such general statements regarding the estimated foreseeable expenditures for the respective anticipated activities and programs of the committee, commission or other entity as may be appropriate to provide the House with basic estimates with respect to the expenditure generally of the funds to be provided to the committee, commission or other entity under the primary expense resolution.

(b) After the date of adoption by the House of any such primary expense resolution for any such committee, commission or other entity for any year, authorization for the payment from the contingent fund of additional expenses of such committee, commission or other entity in that year, other than those expenses to be paid from appropriations provided by statute, may be procured by one or more supplemental expense resolutions for that committee, commission or other entity as necesssary. Any such supplemental expense resolution reported to the House shall not be considered in the House unless a printed report on that resolution has been available to the Members of the House for at least one calendar day prior to the consideration of that resolution in the House. Such report shall, for the information of the House—

(1) state the total amount of additional funds to be provided to the committee, commission or other entity under the supplemental expense resolution and the purpose or purposes for which those additional funds are to be used by the committee, commission or other entity; and

(2) state the reason or reasons for the failure to procure the additional funds for the committee, commission or other entity by means of the primary expense resolution.

(c) The preceding provisions of this clause do not apply to—

(1) any resolution providing for the payment from the contingent fund of the House of sums necessary to pay compensation for staff services performed for, or to pay other expenses of, any committee, commission or other entity at any time from and after the beginning of any year and before the date of adoption by the House of the primary expense resolution providing funds to pay the expenses of that committee, commission or other entity for that year; or

(2) any resolution providing in any Congress, for all of the standing committees of the House, additional office equipment, airmail and special delivery postage stamps, supplies, staff personnel, or any other specific item for the operation of the standing committees, and containing an authorization for the payment from the contingent fund of the House of the expenses of any of the foregoing items provided by that resolution, subject to and until enactment of the provisions of the resolution as permanent law.

(d) From the funds provided for the appointment of committee staff pursuant to primary and additional expense resolutions—

(1) The chairman of each standing subcommittee of a standing committee of the House is authorized to appoint one staff member who shall serve at the pleasure of the subcommittee chairman.

(2) The ranking minority party member of each standing subcommittee on each standing committee of the House is authorized to appoint one staff person who shall serve at the pleasure of the ranking minority party member.

(3) The staff members appointed pursuant to the provisions of subparagraphs (1) and (2) shall be compensated at a rate determined by the subcommittee chairman not to exceed (A) 75 per centum of the maximum established in paragraph (c) of clause 6 or (B) the rate paid the staff member appointed pursuant to subparagraph (1) of this paragraph.

(4) For the purpose of this paragraph, (A) there shall be no more than six standing subcommittees of each standing committee of the House, except for the Committee on Appropriations, and (B) no member shall appoint more than one person pursuant to the above provisions.

(5) The staff positions made available to the subcommittee chairman and ranking minority party members pursuant to subparagraphs (1) and (2) of this paragraph shall be made available from the staff positions provided under clause 6 of Rule XI unless such staff positions are made available pursuant to a primary or additional expense resolution.

(e) No primary expense resolution or additional expense resolution of a committee may provide for the payment or reimbursement of expenses incurred by any member of the committee for travel by the member after the date of the general election of Members in which the Member is not elected to the succeeding Congress, or in the case of a Member who is not a candidate in such general election, the earlier of the date of such general election or the adjournment sine die of the last regular session of the Congress.

(f)(1) For continuance of necessary investigations and studies by—

(A) each standing committee and select committee established by these rules; and

(B) except as provided in subparagraph (2), each select committee established by resolution;

there shall be paid out of the contingent fund of the House such amounts as may be necessary for the period beginning at noon on January 3 and ending at midnight on March 31 of each year.

(2) In the case of the first session of a Congress, amounts shall be made available under this paragraph for a select committee established by resolution in the preceding Congress only if—

(A) a reestablishing resolution for such select committee is introduced in the present Congress; and

(B) no resolution of the preceding Congress provided for termination of funding of investigations and studies by such select committee at or before the end of the preceding Congress.

(3) Each committee receiving amounts under this paragraph shall be entitled, for each month in the period specified in subparagraph (1), to 9 percentum (or such lesser percentum as may be determined by the Committee on House Administration) of the total annualized amount made available under expense resolutions for such committee in the preceding session of Congress.

(4) Payments under this paragraph shall be made on vouchers authorized by the committee involved, signed by the chairman of such committee, except as provided in subparagraph (5), and approved by the Committee on House Administration.

(5) Notwithstanding any provision of law, rule of the House, or other authority, from noon on January 3 of the first session of a Congress, until the election by the House of the committee involved in that Congress, payments under this paragraph shall be made on vouchers signed by—

(A) the chairman of such committee as constituted at the close of the preceding Congress; or

(B) if such chairman is not a Member in the present Congress, the ranking majority party member of such committee as constituted at the close of the preceding Congress who is a Member in the present Congress.

(6)(A) The authority of a committee to incur expenses under this paragraph shall expire upon agreement by the House to a primary expense resolution for such committee.

(B) Amounts made available under this paragraph shall be expended in accordance with regulations prescribed by the Committee on House Administration.

(C) The provisions of this paragraph shall be effective only insofar as not inconsistent with any resolution, reported by the Committee on House Administration and adopted after the date of adoption of these rules.

### Committee Staffs

6. (a)(1) Subject to subparagraph (2) of this paragraph and paragraph (f) of this clause, each standing committee may appoint, by majority vote of the committee, not more than eighteen professional staff members. Each professional staff member appointed under this subparagraph shall be assigned to the chairman and the ranking minority party member of such committee, as the committee considers advisable.

(2) Subject to paragraph (f) of this clause, whenever a majority of the minority party members of a standing committee (except the Committee on Standards of Official Conduct and the Permanent Select Committee on Intelligence) so request, not more than six persons may be selected, by majority vote of the minority party members, for appointment by the committee as professional staff members from among the number authorized by subparagraph (1) of this paragraph. The committee shall appoint any persons so selected whose character and qualifications are acceptable to a majority of the committee. If the committee determines that the character and qualifications of any person so selected are unacceptable to the committee, a majority of the minority party members may select other persons for appointment by the committee to the professional staff until such appointment is made. Each professional staff member appointed under this subparagraph shall be assigned to such committee business as the minority party members of the committee consider advisable.

(3) The professional staff members of each standing committee—

(A) shall not engage in any work other than committee business during congressional working hours; and

(B) shall not be assigned any duties other than those pertaining to committee business.

(4) Services of the professional staff members of each standing committee may be terminated by majority vote of the committee.

(5) The foregoing provisions of this paragraph do not apply to the Committee on Appropriations and to the Committee on the Budget and the provisions of subparagraphs (3) (B) and (C) do not apply to the Committee on Rules.

(b)(1) The clerical staff of each standing committee shall consist of not more than twelve clerks, to be attached to the office of the chairman, to the ranking minority party members, and to the professional staff, as the committee considers advisable. Subject to subparagraph (2) of this paragraph and paragraph (f) of this clause, the clerical staff shall be appointed by majority vote of the committee. Except as provided by subparagraph (2) of this paragraph the clerical staff shall handle committee correspondence and stenographic work both for the committee staff and for the chairman and the ranking minority party member on matters related to committee work.

(2) Subject to paragraph (f) of this clause, whenever a majority of the minority party members of a standing committee (except the Committee on Standards of Official Conduct and the Permanent Select Committee on Intelligence) so request, four persons may be selected, by majority vote of the minority party members, for appointment by the committee to positions on the clerical staff from among the number of clerks authorized by subparagraph (1) of this paragraph. The committee shall appoint to those positions any person so selected whose character and qualifications are acceptable to a majority of the committee. If the committee determines that the character and qualifications of any person so selected are unacceptable to the committee, a majority of the minority party members, may select other persons for appointment by the committee to the position involved on the clerical staff until such appointment is made. Each clerk appointed under this subparagraph shall handle committee correspondence and stenographic work for the minority party members of the committee and for any members of the professional staff appointed under subparagraph (2) of paragraph (a) of this clause on matters related to committee work.

(3) Services of the clerical staff members of each standing committee may be terminated by majority vote of the committee.

(4) The foregoing provisions of this paragraph do not apply to the Committee on Appropriations and the Committee on the Budget.

(c) Each employee on the professional, clerical and investigating staff of each standing committee shall be entitled to pay at a single gross per annum rate, to be fixed by the chairman, which does not exceed the maximum rate of pay, as in effect from time to time, under applicable provisions of law.

(d) Subject to appropriations hereby authorized, the Committee on Appropriations and the Committee on the Budget may appoint such staff, in addition to the clerk thereof and assistants for the minority, as it determines by majority vote to be necessary, such

personnel, other than minority assistants, to possess such qualifications as the committee may prescribe.

(e) No committee shall appoint to its staff any experts or other personnel detailed or assigned from any department or agency of the Government, except with the written permission of the Committee on House Administration.

(f) If a request for the appointment of a minority professional staff member under paragraph (a), or a minority clerical staff member under paragraph (b), is made when no vacancy exists to which that appointment may be made, the committee nevertheless shall appoint, under paragraph (a) or paragraph (b), as applicable, the person selected by the minority and acceptable to the committee. The person so appointed shall serve as an additional member of the professional staff or the clerical staff, as the case may be, of the committee, and shall be paid from the contingent fund, until such a vacancy (other than a vacancy in the position of head of the professional staff, by whatever title designated) occurs, at which time that person shall be deemed to have been appointed to that vacancy. If such vacancy occurs on the professional staff when seven or more persons have been so appointed who are eligible to fill that vacancy, a majority of the minority party members shall designate which of those persons shall fill that vacancy.

(g) Each staff member appointed pursuant to a request by minority party members under paragraph (a) or (b) of this clause, and each staff member appointed to assist minority party members of a committee pursuant to an expense resolution described in paragraph (a) or (b) of clause 5, shall be accorded equitable treatment with respect to the fixing of his or her rate of pay, the assignment to him or her of work facilities, and the accessibility to him or her of committee records.

(h) Paragraphs (a) and (b) of this clause shall not be construed to authorize the appointment of additional professional or clerical staff members of a committee pursuant to a request under either of such paragraphs by the minority party members of that committee if six or more professional staff members or four or more clerical staff members, provided for in paragraph (a)(1) or paragraph (b)(1) of this clause, as the case may be, who are satisfactory to a majority of the minority party members, are otherwise assigned to assist the minority party members.

(i) Notwithstanding paragraphs (a)(2) and (b)(2), a committee may employ nonpartisan staff, in lieu of or in addition to committee staff designated exclusively for the majority or minority party, upon an affirmative vote of a majority of the members of the majority party and a majority of the members of the minority party.

○